UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X

BRIANNA CAMPBELL and SHAKEIM ROBINSON, on : behalf of themselves and all others similarly situated, :

:
                                         Plaintiff,   :  Case No. 22 Civ. 2813

       - against -               :

:
BUKHARI GROUP LLC, NEES BUKHARI, an individual, : CLASS AND COLLECTIVE
AR GROUP OF RESTAURANTS, INC., ALI BUTT, an : ACTION COMPLAINT
individual, 4399 BRONX CHICKEN LLC, BAYCHESTER :
CHICKEN INC., BAYCHESTER CHICKEN BG INC., 3555 :
WHITE PLAINS BG LLC, 3411 JEROME AVE CORP., :
CONEY FOOD OF NY LLC, 9400 LIBERTY CHICKEN :
LLC, 21903 N CONDUIT CHICKEN LLC, ATLANTIC 107 :
CHICKEN LLC, CRISPY FOOD CORP., and LIBERTY :
CHICKEN, INC., :

:
                                 Defendants.   :

---------------------------------------------------------------------- X

       Plaintiffs Briana Campbell and Shakeim Robinson, on behalf of themselves and all others

similarly situated ("Plaintiffs" or "Class Representatives"), through their attorneys Kessler Matura

P.C. and the Law Office of Delmas A. Costin, Jr., PC, complaining of the above-named Defendants

allege as follows:

## **INTRODUCTION**

      1.     Nees Bukhari ("Bukhari") and Ali Butt ("Butt") (collectively, "Individual

Defendants") own and operate at least 10 Popeyes Louisiana Kitchen's fast-food restaurants in

New York.

      2.     The Individual Defendants, whether as business partners or separately, own and

operate the Popeyes located at the following addresses:

          a.   4397 White Plains Road, Bronx, New York ("4397 White Plains Road");

          b.   1201 E. 233 Street, Bronx, New York ("1201 E. 233 Street");

          c.   3555 White Plains Road, Bronx, New York ("3555 White Plains Road");

    d.  3411 Jerome Avenue, Bronx, New York ("3411 Jerome Avenue");

    e.  815 Hutchinson River Parkway, Bronx, New York ("815 Hutchinson River");

    f.  9400 Liberty Avenue, Ozone Park, New York ("9400 Liberty Avenue");

    g.  21903 N. Conduit Avenue, Springfield Gardens, New York ("21903 N. Conduit");

    h.  107-20 Atlantic Avenue, Jamaica, New York ("107-20 Atlantic Avenue");

    i.  1220 Surf Avenue, Brooklyn, New York ("1220 Surf Avenue"); and

    j.  16525 Liberty Ave, Jamaica, New York ("16525 Liberty Avenue") (collectively, "Popeyes Locations").

3.    Within the last six years, Bukhari has controlled various corporations to operate these Popeyes, including Bukhari Group LLC and the other following "Corporate Defendants" named in this action:

    a.  4399 Bronx Chicken LLC for 4397 White Plains Road;

    b.  Baychester Chicken Inc. and Baychester Chicken BG Inc. for 1201 E. 233 Street;

    c.  3555 White Plains BG LLC for 3555 White Plains Road;

    d.  3411 Jerome Ave Corp. for 3411 Jerome Avenue;

    e.  Coney Food of NY LLC for 815 Hutchinson River;

    f.  9400 Liberty Chicken LLC for 9400 Liberty Avenue;

    g.  21903 N Conduit Chicken LLC for 21903 N. Conduit;

    h.  Atlantic 107 Chicken LLC for 107-20 Atlantic Avenue;

    i.  Crispy Food Corp. for 1200 Surf Avenue; and

    j. Liberty Chicken, Inc. for 16525 Liberty Avenue (collectively, "Restaurant

Defendants").

4. Butt also controls various corporations to operate these Popeyes, including AR

Restaurant Group LLC and the other following "Corporate Defendants" named in this action:

    a. 4399 Bronx Chicken LLC for 4397 White Plains Road; and

    b. Baychester Chicken Inc. for 1201 E. 233 Street.

5. The Popeyes operated by Defendants have a common policy of denying proper

wages to their employees in violation of the Fair Labor Standard Act ("FLSA"), 29 U.S.C. § 201,

*et seq*. and the New York Labor Law ("NYLL"), Articles 9 and 16.

6. Specifically, Defendants fail to pay their employees overtime wages, non-overtime

wages, and spread-of-hours pay.

7. And, Defendants do not provide their employees with accurate wage notices and

wage statements, as required by the NYLL.

8. Because, as explained below, Defendants' violations are systemic and have

continued uncorrected for years, Plaintiffs ask that the Court conditionally certify this matter as a

collective action under Section 216(b) of the FLSA at the earliest possible time.

9. Likewise, Plaintiffs seek to certify a class of affected employees under Rule 23 of

the Federal Rules of Civil Procedure ("Rule 23") for the NYLL violations.

## JURISDICTION & VENUE

10. Jurisdiction of the Court over this controversy is based upon 29 U.S.C. § 201, *et

seq*., 28 U.S.C. § 1331, and the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

11. This Court has jurisdiction over all state law claims brought in this action pursuant

to 28 U.S.C. § 1367.

12.     Defendants are authorized to do business in New York State and do business in Nassau and Kings Counties.

13.     Defendant Bukhari is a resident of Kings County and Defendant Bukhari Group LLC's headquarters are believed to be in Nassau County.

14.     Accordingly, this action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391.

## THE PARTIES

### *Plaintiffs*

**Plaintiff Briana Campbell**

15.     Plaintiff Campbell is an individual who resides in Bronx, New York.

16.     At all times relevant to the Complaint, Campbell was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e) and N.Y. Lab. Law §§ 190(2), 651(5).

17.     At all times relevant to the Complaint, Campbell was an "employee" within the meaning of 12 N.Y.C.R.R. § 146-3.2.

18.     At all times relevant to the Complaint, Campbell was a "fast food employee" within the meaning of 12 N.Y.C.R.R. § 146-3.13(a).

19.     Specifically, Campbell was employed by Defendants as a non-exempt employee from about August 2019 through May 2020.

20.     Campbell worked for Defendants at 4397 White Plains Road as a cashier from about August 2019 through January 2020.

21.     She then was transferred to 1201 E. 233 Street, where she worked for Defendants from February 2020 through her termination in May 2020.

22.     At relevant times, Campbell worked under the direction and control of Defendants.

*Plaintiff Shakeim Robinson*

23.     Plaintiff Robinson is an individual who resides in Bronx, New York.

24.     At all times relevant to the Complaint, Robinson was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e) and N.Y. Lab. Law §§ 190(2), 651(5).

25.     At all times relevant to the Complaint, Robinson was an "employee" within the meaning of 12 N.Y.C.R.R. § 146-3.2.

26.     At all times relevant to the Complaint, Robinson was a "fast food employee" within the meaning of 12 N.Y.C.R.R. § 146-3.13(a).

27.     Specifically, Robinson was employed by Defendants as an non-exempt employee from about October 2017 through March 2020.

28.     Robinson started working for Defendants in or about October 2017, working as a cook at 1201 E. 233 Street.

29.     In about September 2018, Defendants promoted Robinson to a non-exempt, non-exempt manager position.

30.     He then started working at 355 White Plains Road.

31.     In September 2019, he was transferred to 3411 Jerome Avenue.

32.     He also filled in at 815 Hutchinson River at or about the end of September 2019.

33.     At relevant times, Robinson worked under the direction and control of Defendants.

### Defendants

*Popeyes Locations*

34.     At all times relevant to this Complaint, Defendants' Popeyes Locations are "fast food establishments" within the meaning of 12 N.Y.C.R.R. § 146-3.13(b).

35.     Restaurant Defendants' primary purpose is serving food or drink items.

36.     The customers at Defendants' Popeyes Locations order and pay before eating their food and drinks.

37.     The customers at Defendants' Popeyes Locations purchase their food and beverage for on-premises and take-out consumption.

38.     To these ends, Defendants' Popeyes Locations have tables and seating inside of the restaurants for customers to sit and eat their food.

39.     The customers at Defendants' Popeyes Locations are not full-service restaurants. That is, Defendants do not offer table, counter, or booth service and a wait staff.

40.     The customers at Defendants' Popeyes Locations, including those locations in which Plaintiffs were employed, are part of the chain.

41.     According to the store locator map on Popeyes.com, there are over 50 within the Eastern District of New York alone.

42.     As of 2016, Butt and AR Group of Restaurants, Inc., operate 25 Popeyes restaurants in five states.  *See* Helen Bond, American Dreamer: Team Work Makes the Dream Work, Multi-Unit Franchisee Magazine: Issue 3 (2016), www.franchising.com/articles/american_dreamer_team_work_makes_the_dream_work.html (last accessed Nov. 15, 2021).

43.     Defendants' Popeyes Locations have standardized décor, marketing, packaging, products, and services, pursuant to the contracts, called "Franchise Agreements," Defendants entered into with AFC Enterprises, Inc. d/b/a Popeyes Louisiana Kitchen.

***Defendant Bukhari Group LLC***

44.     Upon information and belief, Bukhari Group LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

45.    Upon information and belief, Bukhari Group LLC's principal place of business is located at 13 Kearney Avenue, Bethpage, New York 11714.

46.    Bukhari Group LLC lists its address to which the Department of State will mail process if accepted on its behalf as 13 Kearney Avenue, Bethpage, New York 11714.

47.    Upon information and belief, Bukhari Group LLC is the restaurant-management business.

48.    At all times hereinafter mentioned, Bukhari Group LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d), and N.Y. Lab. Law §§ 190(3), 651(6).

49.    At all times hereinafter mentioned, the activities of Bukhari Group LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

50.    Upon information and belief, Bukhari Group LLC maintains control, oversight, and direction over its operations and employment practices.

51.    At all times hereinafter mentioned, Bukhari Group LLC employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

52.    Bukhari Group LLC's annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

### Defendant Nees Bukhari

53.    Upon information and belief, Nees Bukhari has an ownership interest in:

    a.    Bukhari Group LLC;

    b.    4399 Bronx Chicken LLC;

    c.    Baychester Chicken Inc.;

d.  Baychester Chicken BG Inc.;

e.  3555 White Plains BG LLC

f.  3411 Jerome Ave Corp;

g.  Coney Food of NY LLC;

h.  9400 Liberty Chicken LLC

i.  21903 N Conduit Chicken LLC;

j.  Atlantic 107 Chicken LLC;

k.  Crispy Food Corp.; and

l.  Liberty Chicken, Inc.

54.  Upon information and belief, Bukhari is the President of:

a.  Bukhari Group LLC;

b.  Baychester Chicken BG Inc.;

c.  3555 White Plains BG LLC

d.  3411 Jerome Ave Corp;

e.  Coney Food of NY LLC;

f.  9400 Liberty Chicken LLC

g.  21903 N Conduit Chicken LLC;

h.  Atlantic 107 Chicken LLC;

i.  Crispy Food Corp.; and

j.  Liberty Chicken, Inc.

55.  Upon information and belief, Bukhari is a shareholder of:

k.  Bukhari Group LLC;

l.  4399 Bronx Chicken LLC;

m.  Baychester Chicken Inc.;

    n.  Baychester Chicken BG Inc.;

    o.  3555 White Plains BG LLC

    p.  3411 Jerome Ave Corp;

    q.  Coney Food of NY LLC;

    r.  9400 Liberty Chicken LLC

    s.  21903 N Conduit Chicken LLC;

    t.  Atlantic 107 Chicken LLC;

    u.  Crispy Food Corp.; and

    v.  Liberty Chicken, Inc.

56.    Upon information and belief, Bukhari is a corporate officer of:

    a.  Bukhari Group LLC;

    b.  4399 Bronx Chicken LLC;

    c.  Baychester Chicken Inc.;

    d.  Baychester Chicken BG Inc.;

    e.  3555 White Plains BG LLC

    f.  3411 Jerome Ave Corp;

    g.  Coney Food of NY LLC;

    h.  9400 Liberty Chicken LLC

    i.  21903 N Conduit Chicken LLC;

    j.  Atlantic 107 Chicken LLC;

    k.  Crispy Food Corp.; and

    l.  Liberty Chicken, Inc.

57.    Upon information and belief, Bukhari is the Chief Executive Officer of:

    a.  Bukhari Group LLC;

    b.   Baychester Chicken BG Inc.;

    c.   3555 White Plains BG LLC

    d.   3411 Jerome Ave Corp;

    e.   Coney Food of NY LLC;

    f.   9400 Liberty Chicken LLC

    g.   21903 N Conduit Chicken LLC;

    h.   Atlantic 107 Chicken LLC;

    i.   Crispy Food Corp.; and

    j.   Liberty Chicken, Inc.

58.    Upon information and belief, Bukhari is an agent of:

    a.   Bukhari Group LLC;

    b.   Baychester Chicken BG Inc.;

    c.   3555 White Plains BG LLC

    d.   3411 Jerome Ave Corp;

    e.   Coney Food of NY LLC;

    f.   9400 Liberty Chicken LLC

    g.   21903 N Conduit Chicken LLC;

    h.   Atlantic 107 Chicken LLC;

    i.   Crispy Food Corp.; and

    j.   Liberty Chicken, Inc.

59.    Upon information and belief, Bukhari has the authority over personnel decisions for Bukhari Group LLC and the Restaurant Defendants.

60.     Upon information and belief, Bukhari has the authority over payroll decisions for Bukhari Group LLC and the Restaurant Defendants.

61.     Upon information and belief, Bukhari supervises employees of Bukhari Group LLC and the Restaurant Defendants.

62.     Bukhari supervises District Manager Kabir Humayan ("DM Humayan").

63.     Bukhari has the power to approve or veto DM Humayan's personnel decisions and proposals as they relate to the for Bukhari Group LLC and the Restaurant Defendants.

64.     Bukhari has the power to terminate DM Humayan's employment with for Bukhari Group LLC and the Restaurant Defendants.

65.     Upon information and belief, Bukhari has the authority to hire and fire employees for Bukhari Group LLC and the Restaurant Defendants.

66.     Bukhari has the power to make binding decisions for Bukhari Group LLC and the Restaurant Defendants.

67.     Bukhari has the power to transfer the assets or liabilities of Bukhari Group LLC and the Restaurant Defendants.

68.     Bukhari has the power to enter into contracts on behalf of Bukhari Group LLC and the Restaurant Defendants.

69.     For example, on March 26, 2022, Nafees Bukhari signed sworn Affidavits of Judgement by Confession and a settlement agreement admitting that he is the owner and principal of 3555 White Plains BG LLC, 21903 N Conduit Chicken LLC, Atlantic 107 Chicken LLC, Liberty Chicken, Inc., and Coney Food of NY LLC.  *See Tec Choc v. 3555 White Plains BG LLC, et al.* No. 1:21 Civ. 2416 (E.D.N.Y.) (ECF No. 42-1).

70.    Bukhari oversees the day-to-day operations of Bukhari Group LLC and the Restaurant Defendants.

71.    Bukhari has entered into contracts, the Franchise Agreements, with AFC Enterprises, Inc. d/b/a Popeyes Louisiana Kitchen, so as to open and operate, or take over the operation of, the Popeyes locations.

72.    To operate those locations, under the Franchise Agreements, Bukhari has agreed to "hire[] and train[] a staff in accordance with the requirements" of the agreements.

73.    Bukhari agreed, as the Operating Principal, to "remain active in overseeing the operations of the" Popeyes locations at issue.

74.    Bukhari agreed to hire "all employees" of the Popeyes.

75.    Bukhari agreed to "exclusively responsible for the terms of the[] employment and compensation" of the employees.

76.    Bukhari has held himself out as an owner and president of Crispy Food Corp. to AFC Enterprises, Inc.

77.    Bukhari has held himself out as an owner and president of other Restaurant Defendants to AFC Enterprises, Inc.

78.    Bukhari is the Operating Principal of Crispy Food Corp.

79.    Bukhari is the Operating Principal of other Restaurant Defendants.

80.    Bukhari has entered into leases on behalf of Restaurant Defendants, including 9400 Liberty Chicken LLC.

81.    Restaurant Defendants' managers and supervisor report to Bukhari and are under his supervision.

82.     Gulraiz Iqbal, the CFO of 3555 White Plains BG LLC, 21903 N Conduit Chicken LLC, Atlantic 107 Chicken LLC, Liberty Chicken, Inc., and Coney Food of NY LLC reports to Bukhari.

83.     At all times hereinafter mentioned, Bukhari was and still is an "employer" within the meaning of 29 U.S.C. § 203(d), and N.Y. Lab. Law §§ 190(3), 651(5).

**Defendant AR Group of Restaurants, Inc.**

84.     Upon information and belief, AR Group of Restaurants, Inc. was and still is a foreign corporation, incorporated in accordance with the laws of New Jersey.

85.     Upon information and belief, AR Group of Restaurants, Inc.'s principal place of business is located at New Jersey.

86.     Upon information and belief, AR Group of Restaurants, Inc. is the restaurant-management business.

87.     At all times hereinafter mentioned, AR Group of Restaurants, Inc. was and still is an "employer" within the meaning of 29 U.S.C. § 203(d), and N.Y. Lab. Law §§ 190(3), 651(6).

88.     At all times hereinafter mentioned, the activities of AR Group of Restaurants, Inc. constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

89.     Upon information and belief, AR Group of Restaurants, Inc. maintains control, oversight, and direction over its operations and employment practices.

90.     Upon information and belief, AR Group of Restaurants, Inc. maintains control, oversight, and direction over the operations and employment practices of 4399 Bronx Chicken LLC and Baychester Chicken Inc.

91.     At all times hereinafter mentioned, AR Group of Restaurants, Inc. employed employees, who regularly engaged in commerce or in the production of goods for commerce or in

handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

*92.* AR Group of Restaurants, Inc.'s annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

**Defendant Ali Butt**

93. Upon information and belief, Butt has an ownership interest in:

   a. AR Group of Restaurants, Inc.;

   b. 4399 Bronx Chicken LLC; and

   c. Baychester Chicken Inc. (collectively, "AR Corporations")

94. Upon information and belief, Butt is the President of AR Group of Restaurants, Inc.

95. Upon information and belief, Butt is the President of:

   a. 4399 Bronx Chicken LLC; and

   b. Baychester Chicken Inc.

96. Upon information and belief, Butt is a shareholder of:

   a. AR Group of Restaurants, Inc.;

   b. 4399 Bronx Chicken LLC; and

   c. Baychester Chicken Inc.

97. Upon information and belief, Butt is a corporate officer of:

   a. AR Group of Restaurants, Inc.;

   b. 4399 Bronx Chicken LLC; and

   c. Baychester Chicken Inc.

98. Upon information and belief, Butt is the Chief Executive Officer of:

   a. AR Group of Restaurants, Inc.;

14

      b.   4399 Bronx Chicken LLC; and

      c.   Baychester Chicken Inc.

99.     Upon information and belief, Butt is an agent of:

      a.   AR Group of Restaurants, Inc.;

      b.   4399 Bronx Chicken LLC; and

      c.   Baychester Chicken Inc.

100.   Upon information and belief, Butt has the authority over personnel decisions for AR Corporations.

101.   Upon information and belief, Butt has the authority over payroll decisions for the AR Corporations.

102.   Upon information and belief, Butt supervises employees of the AR Corporations.

103.   Butt has the power to and does supervise DM Humayan.

104.   Butt has the power to approve or veto DM Humayan's personnel decisions and proposals as they relate to the AR Corporations.

105.   Butt has the power to terminate DM Humayan's employment with the AR Corporations.

106.   Upon information and belief, Butt has the authority to hire and fire employees for AR Corporations.

107.   Butt has the power to make binding decisions for AR Corporations.

108.   Butt has the power to transfer the assets or liabilities of AR Corporations.

109.   Butt has the power to enter into contracts on behalf AR Corporations.

110.   Butt oversees the day-to-day operations of AR Corporations.

111.    Upon information and belief, Butt has entered into contracts, Franchise Agreements, with AFC Enterprises, Inc. d/b/a Popeyes Louisiana Kitchen, so as to open and operate, or take over the operation of, *inter alia*, 4397 White Plains Road and 1201 E. 233 Street.

112.    Upon information and belief, to operate Butt's Popeyes locations, under the Franchise Agreements, Butt has agreed to hire and train a staff in accordance with the requirements of the agreements.

113.    Upon information and belief, Butt has agreed, as the Operating Principal, to remain active in overseeing the operations of, *inter alia*, 4397 White Plains Road and 1201 E. 233 Street.

114.    Upon information and belief, Butt agreed to hire all employees of, *inter alia*, 4397 White Plains Road and 1201 E. 233 Street.

115.    Upon information and belief, Butt agreed to exclusively responsible for the terms of the employment and compensation of the employees.

116.    Restaurant Defendants' managers and supervisors report to Butt and are under his supervision.

117.    Butt entered into a settlement agreement on behalf of 4339 Bronx Chick LLC, as a "Member" on June 21, 2021.  *See Dunbar v. 4399 Bronx Chicken LLC*, No. 1:20 Civ. 7884 (S.D.N.Y.) (ECF No. 22-1).

118.    At all times hereinafter mentioned, Butt was and still is an "employer" within the meaning of 29 U.S.C. § 203(d), and N.Y. Lab. Law §§ 190(3), 651(5).

***Defendant 4399 Bronx Chicken LLC***

119.    Upon information and belief, 4399 Bronx Chicken LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

120.    Upon information and belief, 4399 Bronx Chicken LLC is the fast-food restaurant business.

121.    At all times hereinafter mentioned, 4399 Bronx Chicken LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

122.    At all times hereinafter mentioned, the activities of 4399 Bronx Chicken LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

123.    Upon information and belief, 4399 Bronx Chicken LLC maintains control, oversight, and direction over its operations and employment practices.

124.    At all times hereinafter mentioned, 4399 Bronx Chicken LLC employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

***Defendant Baychester Chicken Inc.***

125.    Upon information and belief, Baychester Chicken Inc. was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

126.    Upon information and belief, Baychester Chicken Inc. is the fast-food restaurant business.

127.    At all times hereinafter mentioned, Baychester Chicken Inc. was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

128.    At all times hereinafter mentioned, the activities of Baychester Chicken Inc. constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

129.    Upon information and belief, Baychester Chicken Inc. maintains control, oversight, and direction over its operations and employment practices.

130.    At all times hereinafter mentioned, Baychester Chicken Inc. employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

**Defendant Baychester Chicken BG Inc.**

131.    Upon information and belief, Baychester Chicken BG Inc. was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

132.    Upon information and belief, Baychester Chicken BG Inc. is the fast-food restaurant business.

133.    At all times hereinafter mentioned, Baychester Chicken BG Inc. was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

134.    At all times hereinafter mentioned, the activities of Baychester Chicken BG Inc. constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

135.    Upon information and belief, Baychester Chicken BG Inc. maintains control, oversight, and direction over its operations and employment practices.

136.    At all times hereinafter mentioned, Baychester Chicken BG Inc. employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

**Defendant 3555 White Plains BG LLC**

137.    Upon information and belief, 3555 White Plains BG LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

138.    Upon information and belief, 3555 White Plains BG LLC is the fast-food restaurant business.

139.    At all times hereinafter mentioned, 3555 White Plains BG LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

140.    At all times hereinafter mentioned, the activities of 3555 White Plains BG LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

141.    Upon information and belief, 3555 White Plains BG LLC maintains control, oversight, and direction over its operations and employment practices.

142.    At all times hereinafter mentioned, 3555 White Plains BG LLC employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

### Defendant 3411 Jerome Ave Corp.

143.    Upon information and belief, 3411 Jerome Ave Corp. was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

144.    Upon information and belief, 3411 Jerome Ave Corp. is the fast-food restaurant business.

145.    At all times hereinafter mentioned, 3411 Jerome Ave Corp. was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

146.    At all times hereinafter mentioned, the activities of 3411 Jerome Ave Corp. constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

147.    Upon information and belief, 3411 Jerome Ave Corp. maintains control, oversight, and direction over its operations and employment practices.

148.    At all times hereinafter mentioned, 3411 Jerome Ave Corp. employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

**Defendant Coney Food of NY LLC**

149.    Upon information and belief, Coney Food of NY LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

150.    Upon information and belief, Coney Food of NY LLC is the fast-food restaurant business.

151.    At all times hereinafter mentioned, Coney Food of NY LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

152.    At all times hereinafter mentioned, the activities of Coney Food of NY LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

153.    Upon information and belief, Coney Food of NY LLC maintains control, oversight, and direction over its operations and employment practices.

154.    At all times hereinafter mentioned, Coney Food of NY LLC employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

**Defendant 9400 Liberty Chicken LLC**

155.    Upon information and belief, 9400 Liberty Chicken LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

156.    Upon information and belief, 9400 Liberty Chicken LLC is the fast-food restaurant business.

157.    At all times hereinafter mentioned, 9400 Liberty Chicken LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

158.    At all times hereinafter mentioned, the activities of 9400 Liberty Chicken LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

159.    Upon information and belief, 9400 Liberty Chicken LLC maintains control, oversight, and direction over its operations and employment practices.

160.    At all times hereinafter mentioned, 9400 Liberty Chicken LLC employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

### Defendant 21903 N Conduit Chicken LLC

161.    Upon information and belief, 21903 N Conduit Chicken LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

162.    Upon information and belief, 21903 N Conduit Chicken LLC is the fast-food restaurant business.

163.    At all times hereinafter mentioned, 21903 N Conduit Chicken LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

164.    At all times hereinafter mentioned, the activities of 21903 N Conduit Chicken LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

165.    Upon information and belief, 21903 N Conduit Chicken LLC maintains control, oversight, and direction over its operations and employment practices.

166.    At all times hereinafter mentioned, 21903 N Conduit Chicken LLC employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

**Defendant Atlantic 107 Chicken LLC**

167.    Upon information and belief, Atlantic 107 Chicken LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

168.    Upon information and belief, Atlantic 107 Chicken LLC is the fast-food restaurant business.

169.    At all times hereinafter mentioned, Atlantic 107 Chicken LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

170.    At all times hereinafter mentioned, the activities of Atlantic 107 Chicken LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

171.    Upon information and belief, Atlantic 107 Chicken LLC maintains control, oversight, and direction over its operations and employment practices.

172.    At all times hereinafter mentioned, Atlantic 107 Chicken LLC employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

**Defendant Crispy Food Corp.**

173.    Upon information and belief, Crispy Food Corp. was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

174.    Upon information and belief, Crispy Food Corp. is the fast-food restaurant business.

175.    At all times hereinafter mentioned, Crispy Food Corp. was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

176.    At all times hereinafter mentioned, the activities of Crispy Food Corp. constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

177.    Upon information and belief, Crispy Food Corp. maintains control, oversight, and direction over its operations and employment practices.

178.    At all times hereinafter mentioned, Crispy Food Corp. employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

***Defendant Liberty Chicken, Inc.***

179.    Upon information and belief, Liberty Chicken, Inc. was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

180.    Upon information and belief, Liberty Chicken, Inc. is the fast-food restaurant business.

181.    At all times hereinafter mentioned, Liberty Chicken, Inc. was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

182.    At all times hereinafter mentioned, the activities of Liberty Chicken, Inc. constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

183.    Upon information and belief, Liberty Chicken, Inc. maintains control, oversight, and direction over its operations and employment practices.

184.    At all times hereinafter mentioned, Liberty Chicken, Inc. employed employees, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

***Corporate Defendants***

185.    Corporate Defendants constitute a unified operation.

186.    Corporate Defendants constitute a common enterprise.

187.    Corporate Defendants have interrelated operations.

188.    Corporate Defendants have common management.

189.    DM Humayan is one such manager.

190.    DM Humayan oversees the operations of personnel matters of the Restaurant Defendants, as discussed in more detailed below.

191.    Corporate Defendants have a centralized control of labor relations.

192.    Corporate Defendants have common ownership, including Bukhari and Butt.

193.    Corporate Defendants share employees.

194.    Corporate Defendants commingled funds with each other.

195.    Corporate Defendants share the same physical addresses in the State of New York.

196.    Corporate Defendants constitute a single employer.

197.    Corporate Defendants constitute an integrated enterprise.

198.    Corporate Defendants maintain control, oversight, and direction over their commission-paid employees and other employees, including timekeeping, payroll and other employment practices that applied to them.

199.    At all times hereinafter mentioned, Corporate Defendants individually and collectively were and still are "employers" within the meaning of 29 U.S.C. § 203(d), and N.Y. Lab. Law §§ 190(3), 651(5).

200.    At all times hereinafter mentioned, the activities of Corporate Defendants constituted an "enterprise" within the meaning of 29 U.S.C. § 203(r) & (s).

201.    At all times hereinafter mentioned, Corporate Defendants employed employees, including Plaintiffs, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

202.    Corporate Defendants collective annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

## CLASS AND COLLECTION ACTION CLAIMS

*FLSA Collective Action Allegations*

203.    Plaintiffs seek to proceed as a collective action for the First Cause of Action, pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following class of persons:

> All non-exempt employees, however titled, working a Popeyes restaurant in the State of New York, employed by Defendants at any time in the three years prior to the filing of this Complaint (the "FLSA Collective").

204.    Upon information and belief, there are approximately more than 100 current and former employees that are similarly situated to Plaintiffs who were denied overtime wages at the proper rate and for all hours worked.

205.    Plaintiffs represent other employees and are acting on behalf of Defendants' current and former employees' interests as well as their own interests in bringing this action.

206.    Defendants unlawfully required Plaintiffs and the FLSA Collective to work workweeks in which they earned less than the proper overtime wages.

207.    Defendants knew that the law required it to pay Plaintiffs and the FLSA Collective proper overtime wages each week.

208.    The FLSA Collective is readily identifiable and locatable through the use of Defendants' records.  The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).  Unless the Court promptly issues such a notice, the FLSA Collective, who have been unlawfully deprived of overtime wages in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

### Class Action Allegations

209.    Plaintiffs brings the Second through Seventh Causes of Action on their behalf and as a class action, pursuant Rule 23(a) and (b), on behalf of the following class of persons:

> All non-exempt employees, however titled, working a Popeyes restaurant in the State of New York, employed by Defendants at any time in the six years prior to the filing of this Complaint (the "Class").

210.    The persons in the Class are so numerous that joinder of all members is impracticable.  Although, the precise number of such persons is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendants.

211.    Upon information and belief, the size of the Class exceeds 100, given the number of employees working at each location and turnover through the six-year period.

212.    Over the course of a year, any given location may employ a dozen or more employees.

213.    Causes of Action Two through Seven are properly maintainable as a class action under Rule 23(b)(3).  There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

a.  whether Defendants failed to pay overtime wages in all weeks to the Class Representatives and the Class in violation of and within the meaning of the N.Y. Lab. Law § 650, *et seq.* and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 146;

b.  whether Defendants failed to pay minimum wages in all weeks to the Class Representatives and the Class in violation of and within the meaning of the N.Y. Lab. Law § 650, *et seq.* and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 146;

c.  whether Defendants failed to pay non-overtime wages in all weeks to the Class Representatives and the Class in violation of and within the meaning of the N.Y. Lab. Law § 650, *et seq.* and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 146;

d.  whether Defendants failed to pay spread-of-hours wages in all weeks to the Class Representatives and the Class in violation of and within the meaning of the N.Y. Lab. Law § 650, *et seq.* and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 146;

e.  whether Defendants failed to provide the Class Representatives and the Class with proper wage statements (i.e., paystubs) in violation of and within the meaning of the N.Y. Lab. Law § 195;

f.  whether Defendants failed to provide the Class Representatives and the Class with proper wage notices at the time of hiring in violation of and within the meaning of the N.Y. Lab. Law § 195;

g.  whether Defendants acted in good faith when failing to pay the Class Representatives and the Class;

h.  whether Defendants acted in good faith when failing to provide wage notices to the Class Representative and the Class;

i.  whether Defendants acted in good faith when failing to provide accurate paystubs to the Class Representative and the Class; and

j.  the nature and extent of class-wide injury and the measure of damages for those injuries.

214.   The Class Representatives fairly and adequately protect the interests of the Class and have no interests antagonistic to the class.

215.   The Class Representatives are represented by attorneys who are experienced and competent in both class litigation and employment litigation.

216.   The Class Representatives and the Class have been equally affected by Defendants' failure to pay proper wages.  Moreover, members of the Class still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

217.   Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

218.   Plaintiffs' claims are typical of those of the Class.  Plaintiffs and the Class were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay proper wages and the failure to keep adequate records. Plaintiffs' job duties are typical of those of the Class.

219.   A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The Class has been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. Although the relative damages suffered by individual members of the Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## FACTUAL ALLEGATIONS

### Defendants Failed to Pay Overtime and Non-Overtime Wages

220.    Plaintiff and the members of the FLSA Collective and Class (collectively, "Class Members") are victims of Defendants' common policy and plan that violated their rights under the FLSA and NYLL by paying Class Members overtime pay.

221.    Defendants failed to pay their employees all of the overtime wages they earned in several ways.

222.    First, Defendants paid their employees the same hourly wage for all hours worked.

223.    Robinson, when employed as a non-exempt manager, was, at times, responsible for handing out the Class Members' pay at his stores.

224.    He handed out these wages, in cash, based on specific instructions from DM Humayan.

225.    The Class Members at Robinson's Popeyes, like Robinson himself and the Class Members at Defendants' other locations, were paid their regular hourly wage for all hours paid.

226.    As a result, Defendants did not pay Class Members for the hours they worked in excess of 40 at the rate of one and one-half their regular rate.

227.    For example, when Robinson worked at 201 E. 233 Street, starting in October 2017 through September 2018, he regularly worked five shifts lasting 10 to 12 each.  As a result, on average, he worked 50 to 60 hours a week.

228.    Likewise, while working as a manager at 3555 White Plains Road he was required to work six shifts per week, including shifts last 12 or more hours.  On average, Robinson worked about 72 hours a week.

229.    While employed at 3411 Jerome Avenue, Defendants required him to work five 12-hour shifts per week.  As a result, on average, he worked over 60 hours a week.

29

230.    When reporting primarily to 815 Hutchinson River, starting in December 2019, Defendants required Robinson to work 60 to 70 hours a week, on average, by scheduling him for 10 or more hours per shift six times a week.

231.    Throughout his employment, Robinson was only paid at his regular hourly rate and was not paid any wages at the rate at one and one-half times his regular rate.

232.    Prior to 2020, Defendants paid Campbell exclusively in cash.

233.    Despite regularly being scheduled for six days a week, each lasting 8 to 10 or more hours a week, Defendants only paid Campbell for those hours over 40 at her regular hourly rate.

234.    Additionally, Defendants failed to pay Plaintiffs and other Class Members for all of their hours worked, whether at the regular rate or at the proper overtime rate.

235.    That is, Defendants paid Class Members according to their scheduled hours – not the hours they worked.

236.    For example, Plaintiffs were not paid the time spent working after the end of their shifts.

237.    Plaintiffs and Class Members often worked beyond the end of their shifts because of, *inter alia*, changes to their colleagues' schedules, understaffing, and work needing to be completed.

238.    Defendants regularly did not permit Class Members to take bona-fide meal breaks in which they were fully relieved of duties for 20 or more minutes per shift.

239.    By way of example, when Popeyes rolled out its new chicken sandwich in August 2019, the stores were too busy for Class Members to take full meal breaks.

240.    Despite not being able to take a full break, Defendants did not pay Class Members for this time.

30

241.    For example, in about April 2020, Campbell's manager automatically deducted 30 minutes per day for meal breaks that Campbell did not take.  As a result, during these weeks, she was not paid for this time – whether at her hourly rate or overtime rate.

242.    Defendants paid Plaintiffs an hourly wage of $15.00, the minimum hourly wage permitted by New York law for fast-food workers.

243.    Defendants paid other Class Members an hourly wage at the minimum wage rate.

244.    By failing to pay Plaintiffs and Class Members for all hours worked, their hourly wages fell below the required minimum wage rate.

245.    Defendants failed to pay Plaintiffs and Class Members the required minimum wage.

***Defendants Failed to Pay Spread-of-Hours Wages***

246.    Class Members regularly work shifts lasting over 10 hours.

247.    Defendants schedule Class Members for double shifts or require them to fill in for individuals who call out, resulting in Class Members working shifts lasting 10 to 12 or more hours in the day.

248.    As described above, Plaintiffs were regularly scheduled to work 10 or more hours per shift.

249.    Defendants did not pay Plaintiffs spread-of-hours pay when he worked 10 or more hours.

250.    Defendants did not pay Class Members when they worked over 10 hours in a day.

***Defendants Failed to Provide Hiring Notices and Accurate Wage Statements***

251.    Defendants are required to provide Class Members with a notice at the time of hiring, in accordance with the NYLL.

252.    Defendants did not provide Plaintiffs with hiring notices when hired.

253.    Defendants did not provide Class Members with such hiring notices.

254.    Defendants failed to provide Class Members with accurate paystubs.

255.    That is, Defendants: (a) paid Class Members in cash and did not provide them with any wage statements; or (b) issued Class Members paystubs that did not list all of the hours they worked.

256.    Starting in 2020, Defendants issued Campbell paystubs that did not list all of the hours she actually worked.

257.    Prior to 2020, Defendants failed to provide her with any such paystub.

258.    Likewise, throughout 2019, Defendants issued paystubs to Robinson that failed to list all of the hours he worked on them.

259.    As a result of these failures, Plaintiffs and the Class were denied the information necessary to contest any inaccurate information, underpayment of wages, or undisclosed changes to their pay structure.

### *Defendants' History of Failing to Abide by the FLSA and NYLL*

260.    Defendants have evaded their obligations under the FLSA and NYLL for years.

261.    In June of 2017, an hourly worker, Tamoy Maddix filed a putative class and collective lawsuit, like this one, against Baychester Chicken, Inc.  *See Maddix v. Baychester Chicken, Inc.*, No. 17 Civ. 4658 (S.D.N.Y.).

262.    Maddix alleged that while was employed as a cashier from March 31, 2015 until about November 2016, she was not paid overtime wages and spread-of-hours-pay.  She also alleged that all cashiers and chefs were treated the same.

263.    In March 2018, Baychester Chicken, Inc. made an offer of judgement on Maddix's individual claims only, which was ultimately accepted and the case was closed.

264.    Then, on September 24, 2020, another cashier, Krystal Dunbar, filed a lawsuit against 4399 Bronx Chicken, LLC, Butt, DM Humayan, and a manager.  *See Dundar v. 4399 Bronx Chicken LLC, et al*., No. 1:20 Civ. 7884 (S.D.N.Y.).

265.    Dunbar alleged that she worked for the defendants from March 2020 through June 2020.  She alleged, *inter alia*, that throughout her employment she was not paid overtime at the proper rate, was denied non-overtime wages, and was not given accurate wage statement or a wage notice.  The parties reached a settlement, which was approved on June 23, 2021.  Butt had executed the settlement agreement on behalf of himself and on behalf of "4399 Bronx Chicken LLC, as a Member."

266.    While *Dunbar* was still pending, another employee, Alison Schlanger filed a putative class and collective action lawsuit under the FLSA and NYLL against 9400 Liberty Chicken LLC, 12515 Chicken Corp., and Bukhari Group LLC.  *See Schlanger v. 9400 Liberty Chicken LLC*, *et al*., No. 1:21 Civ. 2146 (E.D.N.Y.).  Schlanger alleged, *inter alia*, that throughout the course of her employment with the defendants as at their Popeyes, from about December 2019 through August 2020, she was not paid overtime and her paystubs were inaccurate. She also alleged that these violations occurred at all of the defendants' locations and were carried out, in part, by the district manager.  The matter was dismissed after the plaintiff accepted an individual offer of judgment.  As a result, the case was closed on August 3, 2021.

267.    Despite the steady stream of lawsuits over obvious FLSA and NYLL violations, Defendants continued to shirk their responsibilities under the FLSA and NYLL to pay proper wages and issue accurate wage notices and statements.

268.    Moreover, Defendants perpetrated these systemic violations in the face of heightened scrutiny over the payment of wages to fast-food workers from New York State and the

media.  *See, e.g.*, Andrew M. Cuomo, <u>Andrew M. Cuomo: Fast-Food Workers Deserve a Raise</u>, N.Y. Times (May 6, 2015) (announcing and justifying convening of a wage board for fast-food workers).

269.    As a result, Defendants' violations are willful and not based on a reasonable belief that Defendants were abiding by the wage laws.

**FIRST CAUSE OF ACTION**
**FLSA – Unpaid Overtime Wages**
**(On behalf of Plaintiffs and the FLSA Collective)**

270.    Plaintiffs incorporate by reference all preceding allegations.

271.    Defendants employed Plaintiffs and members of the FLSA Collective for workweeks longer than 40 hours and willfully failed to compensate them at a rate of at least one and one-half times the regular rate for all hours over 40, in violation of FLSA.

272.    Defendants failed to make a good faith effort to comply with the FLSA with respect to compensating Plaintiffs and the FLSA Collective.

273.    Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

274.    Because the willful underpayment of wages, alleged above, Plaintiffs and members of the FLSA Collective incurred damages and Defendants are indebted to them in the amount of the unpaid overtime wages, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**NYLL – Unpaid Overtime Wages**
**(On behalf of Plaintiffs and the Class)**

275.    Plaintiffs incorporate by reference all preceding allegations.

276.    Defendants employed Plaintiffs and Class Members for workweeks longer than 40 hours and willfully failed to compensate Plaintiffs at a rate of at least one and one-half times the applicable minimum wage rate for all hours over 40, in violation of the requirements of the NYLL.

277.    By the course of conduct set forth above, Defendants violated N.Y. Lab. Law § 650, *et seq*.; 12 N.Y.C.R.R. §§ 146-1.4.

278.    Defendants had a policy and practice of refusing to pay overtime compensation at the proper rate and for all hours worked to Plaintiffs and the Class.

279.    Defendants' failure to pay overtime compensation at the proper rate to Plaintiffs and the Class was willful or otherwise lacked sufficient good faith within the meaning of N.Y. Lab. Law § 663.

280.    Because of the underpayment of wages, alleged above, Plaintiffs and Class Members incurred damages and Defendants are indebted to them in the amount of the unpaid overtime compensation, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**NYLL – Minimum Wages**
**(On behalf of Plaintiffs and the Class)**

281.    Plaintiffs incorporate by reference all preceding allegations.

282.    Plaintiffs and Class Members are employees entitled to be paid no less than the applicable minimum wage.

283.    Defendants employed Plaintiffs and Class Members for workweeks in which Plaintiff and Class Members were paid at a rate of less than the applicable minimum wage.

284.    By the course of conduct set forth above, Defendants violated N.Y. Lab. Law § 650, *et seq.*; 12 N.Y.C.R.R. 146-1.2(a)(2)(i).

285.    Defendants had a policy and practice of refusing to pay the minimum wage for all hours worked by Plaintiffs and the Class.

286.    Defendants' failure to pay overtime compensation at the proper rate to Plaintiffs and the Class was willful or otherwise lacked sufficient good faith within the meaning of N.Y. Lab. Law § 663.

287.    Because of the underpayment of wages, alleged above, Plaintiffs and Class Members incurred damages and Defendants are indebted to them in the amount of the unpaid minimum wages, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

### FORTH CAUSE OF ACTION
**NYLL – Unpaid Non-Overtime Wages**
**(On behalf of Plaintiffs and the Class)**

288.    Plaintiffs incorporate by reference all preceding allegations.

289.    Plaintiffs and Class Members are employees entitled to be paid for all hours worked.

290.    Defendants failed to pay Plaintiffs and the Class non-overtime wages to which they are entitled under the N.Y. Lab. Law §§ 650, *et seq.*, specifically N.Y. Lab. Law § 661(3), and the supporting New York State Department of Labor Regulations.

291.    Defendants had a policy and practice of refusing to pay non-overtime compensation for all hours worked to Plaintiffs and the Class.

292.    Defendants' failure to pay non-overtime compensation to Plaintiffs and the Class was willful or otherwise lacked sufficient good faith within the meaning of N.Y. Lab. Law § 663.

293.    Due to Defendants' violations of the NYLL, Plaintiffs and members of the Class are entitled to recover from Defendant their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**FIFTH CAUSE OF ACTION**
**NYLL – Failure to Pay Spread-of-Hours Wages**
**(On behalf of Plaintiffs and the Class)**

294.     Plaintiffs incorporate by reference all preceding allegations.

295.     Plaintiffs and Class Members worked shifts in which the spread of hours exceeded 10 hours, as defined by 12 N.Y.C.R.R. § 146-1.6.

296.     Plaintiffs and Class Members were entitled to an additional hour of pay at the "basic minimum hourly rate," as defined by 12 N.Y.C.R.R. §§ 146-1.2(1)-(2), by virtue of working shifts that exceeded 10 hours.

297.     Defendants failed to pay Plaintiffs and Class Members one additional hour pay at the basic minimum wage rate before allowances for each day Plaintiff's spread of hours exceeded 10 hours, in violation of N.Y. Lab. Law §§ 650, *et seq*., as codified by 12 N.Y.C.R.R. § 146-1.6.

298.     Defendants' failure to pay Plaintiffs and the Class an additional hour of pay for each day where the spread of hours exceeded 10 was willful within the meaning of N.Y. Lab. Law § 663.

299.     As a result, Defendants owe Plaintiffs and the Class their unpaid spread-of-hours pay, together with liquidated damages, interest, attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**NYLL – Failure to Provide Wage Statement**
**(Brought on behalf of Plaintiffs and the Class)**

300.     Plaintiffs incorporate by reference all preceding allegations.

301.     Defendants failed to supply Plaintiffs and members of the Class with an accurate statement of wages as required by N.Y. Lab. Law § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of

pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

302.    Due to Defendants violations of N.Y. Lab. Law § 195, for each workweek that Defendants failed to provide a proper wage statement from April 9, 2011 through February 26, 2015, Plaintiffs and members of the Class are each entitled to damages of $100 per work week, or a total of $2,500 per class member, as provided for by N.Y. Lab. Law § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

303.    Due to Defendants' violations of N.Y. Lab. Law § 195, for each workweek that Defendant failed to provide a proper wage statement from February 26, 2015 through the present, Plaintiff and members of the Class are each entitled to damages of $250 per work day, or a total of $5,000 per class member, as provided for by N.Y. Lab. Law § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
**NYLL – Failure to Provide Wage Notices**
**(Brought on behalf of Plaintiffs and the Class)**

304.    Plaintiffs incorporate by reference all preceding allegations.

305.    Defendants failed to supply Plaintiffs and Class Members notice as required by N.Y. Lab. Law § 195, in English or in the language identified by them as their primary language, containing their rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; hourly rate or rates of pay and overtime rate or rate of pay if applicable, the regular pay day designated by the employer in accordance with N.Y. Lab. Law § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

306.    Accordingly, for each day that Defendants failed to provide proper wage notice each Class Member is entitled to damages of $50 per workday, up to a total of $5,000, together with costs of the action, reasonable attorneys' fees, any other relief that the court may deem necessary and appropriate, pursuant to N.Y. Lab. Law § 198(1-b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seek for the following relief:

A.    That, at the earliest possible time, Plaintiffs be allowed to give notice to the FLSA Collective, or that the Court issue such notice.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.    Unpaid overtime wages under the FLSA and NYLL;

C.    Unpaid minimum wage pay under the NYLL;

D.    Unpaid non-overtime pay under the NYLL;

E.    Unpaid spread-of-hours pay under the NYLL;

F.    Statutory damages for failure to provide wage statements under the NYLL;

G.    Liquidated damages;

H.    Certification of this case as a class action pursuant to Rule 23;

I.    Designation of Plaintiffs as representative of the Class, and counsel of record as Class Counsel;

J.    Pre-judgment interest and post-judgment interest as provided by law;

K.    Appropriate equitable and injunctive relief to remedy violations;

L.    Attorneys' fees and costs of the action;

M.      Issuance of a declaratory judgment that the practices complained of in this action

are unlawful under FLSA and NYLL;

N.      Reasonable incentive awards for Plaintiffs to compensate them for the time he spent

attempting to recover wages for the Class and for the risks they took in doing so; and

O.      Such other relief as this Court shall deem just and proper.

Dated: Melville, New York
      May 13, 2022

                                Respectfully submitted,

                                By: /s/ *Garrett Kaske*
                                      Garrett Kaske

                                Troy L. Kessler
                                Garrett Kaske
                                **KESSLER MATURA P.C.**
                                534 Broadhollow Road, Suite 275
                                Melville, NY 11747
                                Telephone: (631) 499-9100
                                tkessler@kesslermatura.com
                                gkaske@kesslermatura.com

                                Delmas A. Costin, Jr.
                                **THE LAW OFFICE OF**
                                **DELMAS A. COSTIN, JR., PC**
                                930 Grand Concourse, Suite 1F
                                Bronx, NY 10451
                                Telephone: (718) 618-0589
                                dacostin@dacostinlaw.com

                                *Attorneys for Plaintiffs and the*
                                *Putative FLSA Collective and Class*