UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

BRIANNA CAMPBELL, SHAKEIM ROBINSON, and   :
KEVAUGHN ROBINSON on behalf of themselves and   :
others similarly situated,   :   Case No. 22 Civ. 2813 (PK)

                                  Plaintiffs,   :
  :
  - against -   :
  :
BUKHARI GROUP LLC, NAFEES BUKHARI, an   :
individual, ALI BUTT, an individual, 4399 BRONX   :
CHICKEN LLC, BAYCHESTER CHICKEN BG LLC.,   :
3555 WHITE PLAINS BG LLC, 3411 JEROME AVE   :
CORP., and CONEY FOOD OF NY LLC,   :
  :
                               Defendants.   :

------------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

KESSLER MATURA P.C.
Troy L. Kessler
Garrett Kaske
534 Broadhollow Rd., Ste 275
Melville, NY 11747
Phone: (631) 499-9100
tkessler@kesslermatura.com
gkaske@kesslermatura.com

THE LAW OFFICE OF
DELMAS A. COSTIN, JR., PC
Delmas A. Costin, Jr.
930 Grand Concourse, Suite 1B
Bronx, NY 10451
Telephone: (718) 618-0589
dacostin@dacostinlaw.com

*Attorneys for Plaintiffs and the Putative FLSA Collective and Class*

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................ iv

Glossary of Defined Terms ............................................................................................ ix

Introduction....................................................................................................................1

Factual and Procedural Background ...............................................................................1

I.    Overview of the Litigation and Negotiations .........................................................1

      A.  The Claims. ....................................................................................................1

      B.  Procedural Overview .....................................................................................2

II.   The Settlement Agreement ....................................................................................3

      A.  The Settlement Payment ................................................................................3

      B.  Notice to Class Members and Putative FLSA Collective Members.............4

      C.  Releases..........................................................................................................5

      D.  Allocation Formula ........................................................................................5

      E.  Attorneys' Fees and Costs .............................................................................5

      F.  Service Payments ...........................................................................................5

      G.  Settlement Administrator ...............................................................................5

Argument .......................................................................................................................6

I.    This Motion is the First Step of the Class Action Settlement Procedure. .............6

II.   Preliminary Approval of the Settlement is Warranted Under Rule 23...................6

      A.  The Settlement Is Procedurally Fair (Rule 23(e)(2)(A)-(B)) .........................7

      B.  The Settlement Allocation and Distribution Plan Satisfy the Rule 23 Factors..............8

            1.  Distribution of the Notice and Settlement Checks by Mail Is Reasonably Calculated to Reach the Class Members (Rule 23(e)(2)(C)(ii)) .......................8

            2.  The Notices are Well Crafted and Informative (Rule 23(c)(2)(B)) ....................

            3.  The Attorneys' Fees Sought Are Reasonable and There Are No Other Agreements Between the Parties (Rule 23(e)(2)(C)(iii)-(iv))..........................10

4. The Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D)) and Otherwise Fairly Distributes the Funds.................................10

C. The Settlement Is Substantively Fair. ..........................................................................12

    1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1 & Rule 23(e)(2)(C)(i)) .................................................................12

    2. The Court Cannot Yet Assess the Class's Reaction (*Grinnell* Factor 2).........12

    3. Discovery Advanced Far Enough to Settle Dutifully (*Grinnell* Factor 3).......12

    4. Continuing to Litigate is Risky (*Grinnell* Factors 4 and 5) ............................13

    5. Maintaining a Class Through Trial is Risky (*Grinnell* Factor 6)....................14

    6. A Much Greater Judgment May Not Be Possible (*Grinnell* Factor 7) ...........14

    7. The Settlement Fund Is Substantial, Even Considering the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)...15

D. Conditional Certification of the Settlement Class Is Appropriate ...............................16

    1. Numerosity: The Class Exceeds 40 Members .................................................16

    2. Commonality & Typicality: The Wage Payment and Scheduling Issues Applied Across the Class Members, Including Plaintiffs.................................17

    3. Adequacy: The Plaintiffs' Interests Are Aligned with Those of the Class and Counsel Is Experienced in Wage-and-Hour Litigation....................................17

    4. Predominance & Superiority: Common Questions Predominate, Which Renders the Class Action Devise Superior to Piecemeal Litigation................17

III. The Settlement Meets the FLSA Approval Standard ............................................................18

IV. KM and DAC Should be Appointed as Class Counsel ........................................................18

V. Xpand Legal's Experience and Reasonable Fee Supports its Appointment .........................19

VI. The Service Payments to Plaintiffs are Fair, Supporting Preliminary Approval .................19

VII. Class Counsel's Attorneys' Fees and Costs are Reasonable, Appropriate, and Likely to Be Approved at the Final-Approval Stage.................................................................................21

A. The Requested Attorneys' Fee of One Third is Consistent with Local Norms ...........21

B. The Lodestar Cross-Check Demonstrates that the Fee is Reasonable.........................22

C. The Fee's Reasonableness is Highlighted by Alternative Calculation Methods .........24

Conclusion ................................................................................................................25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Almond v. PJ Far Rockaway, Inc.*,
2018 WL 922184 (E.D.N.Y. Feb. 15, 2018) ........................................................... 23

*Amigon v. Safeway Constr. Enters. LLC*,
2024 WL 5040436 (E.D.N.Y. Dec. 9, 2024) ....................................................... *passim*

*Ballinger v. Adv. Mag. Publishers, Inc.*,
2014 WL 7495092 (S.D.N.Y. Dec. 29, 2014) ......................................................... 15

*Barsa v. Beacon Health Options, Inc.*,
2020 WL 7240346 ................................................................................................. 21

*Baudin v. Resource Mktg. Corp., LLC*,
2020 WL 4732083 (N.D.N.Y. Aug. 13, 2020) ......................................................... 7

*Benoskie v. Kerry Foods, Inc.*,
2020 WL 5769488 (E.D. Wis. Sept. 28, 2020) ........................................................ 6

*Bondi v. DeFalco*,
2020 WL 2476006 (S.D.N.Y. May 13, 2020) ......................................................... 21

*Briggs v. PNC Fin. Servs. Grp.*,
2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) ........................................................... 6

*Buchanan v. Pay-O-Matic Check Cashing Corp.*,
2021 WL 3008480 (E.D.N.Y. June 15, 2021) ......................................................... 19

*Burns v. FalconStor Software, Inc.*,
2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ....................................................... 10

*Cano v. Nineteen Twenty Four Inc.*,
2017 WL 11507654 (E.D.N.Y. Apr. 24, 2017) ....................................................... 18

*In re Canon U.S.A. Data Breach Litig.*,
2024 WL 3650611 (E.D.N.Y. Aug. 5, 2024) ........................................................... 22

*Chavarria v. New York Airport Serv., LLC*,
875 F. Supp. 2d 164 (E.D.N.Y. 2012) .................................................................... 15

*Chodkowski v. Cnty. of Nassau*,
2021 WL 3774187 (E.D.N.Y. Aug. 25, 2021) ......................................................... 24

*Cohan v. Columbia Sussex Mgmt., LLC,*
  2018 WL 4861391 (E.D.N.Y. Sept. 28, 2018) ............................................... 20, 21, 22

*Cymbalista v. JPMorgan Chase Bank, N.A.,*
  2021 WL 7906584 (E.D.N.Y. May 25, 2021) ........................................................ 10

*Delijanin v. Wolfgang's Steakhouse Inc.,*
  2021 WL 535635 (S.D.N.Y. Feb. 12, 2021) ...................................................... 20, 21

*Dupler v. Costco Wholesale Corp.,*
  705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................................................................... 20

*Ferrara v. CMR Cont. LLC,*
  848 F.Supp.2d 304 (E.D.N.Y. 2012) .................................................................... 24

*Fisher v. SD Prot. Inc.,*
  948 F.3d 593 (2d Cir. 2020) .............................................................................. 22

*Flores v. Mamma Lombardi's of Holbrook, Inc.,*
  104 F. Supp. 3d 290 (E.D.N.Y. 2015) .................................................................. 14

*Frank v. Eastman Kodak Co.,*
  228 F.R.D. 174 (W.D.N.Y. 2005) ............................................................... 15, 20, 21

*Garcia v. Pancho Villa's of Huntington Vill., Inc.,*
  281 F.R.D. 100 (E.D.N.Y. 2011) ......................................................................... 19

*Gayle v. Harry's Nurses Registry, Inc.,*
  2020 WL 4381809 (E.D.N.Y. July 31, 2020) ..................................................... 23, 24

*Gen. Tel. Co. of the Sw. v. Falcon,*
  457 U.S. 147 (1982) ........................................................................................ 17

*Grice v. Pepsi Beverages Co.,*
  2019 WL 340714 (S.D.N.Y. Jan. 28, 2019) ........................................................... 10

*Guallpa v. N.Y. Pro Signs Inc.,*
  2014 WL 2200393 (S.D.N.Y. May 27, 2014) ......................................................... 11

*Guevoura Fund Ltd. v. Sillerman,*
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .......................................................... 7

*Hall v. ProSource Techs., LLC,*
  2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ..................................................... 23, 24

*Hernandez v. Norm Int'l LLC,*
  2021 WL 4260490 (E.D.N.Y. Sept. 20, 2021) ........................................................ 23

*Karic v. Major Auto. Cos.*,
    2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016) ................................................... 12, 15

*Kreisler v. Second Ave. Diner Corp.*,
    2013 WL 3965247 (S.D.N.Y. July 31, 2013) ......................................................... 23

*Kurtz v. Kimberly-Clark Corp.*,
    2024 WL 184375 (E.D.N.Y. Jan. 17, 2024) ........................................................... 24

*McLaughlin v. IDT Energy*,
    2018 WL 3642627 ................................................................................................. 24

*Meo v. Lane Bryant, Inc.*,
    2020 WL 4047897 (E.D.N.Y. July 17, 2020) ............................................. 21, 22, 23

*Merino v. Beverage Plus Am. Corp.*, No. 10 Civ.,
    2012 WL 4468182 (S.D.N.Y. Sept. 25, 2012) ...................................................... 11

*Mikhlin v. Oasmia Pharm. AB*,
    2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ............................................................. 8

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) .................................................................... 13

*Moses v. New York Times Co.*,
    79 F.4th 235 (2d Cir. 2023) ..................................................................................... 7

*Muhammad v. Alto Pharmacy LLC*,
    2024 WL 4042479 (S.D.N.Y. Sept. 4, 2024) ........................................................ 15

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ................................................................................... 14

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020) .................................................................... 10

*Nieto v. Izzo Constr. Corp.*,
    2018 WL 2227989 (E.D.N.Y. May 14, 2018) ........................................................ 18

*Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*,
    2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ....................................................... 20, 21

*Perez v. Allstate Ins. Co.*,
    2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014) .................................................. 16, 17

*In re PPDAI Grp. Inc. Sec. Litig.*,
    2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ........................................................... 13

*Puglisi v. TD Bank, N.A.*,
    2015 WL 574280 (E.D.N.Y. Feb. 9, 2015) .......................................................... 19

*Ramirez v. Riverbay Corp.*,
    39 F. Supp. 3d 354 (S.D.N.Y. 2014) .................................................................. 17

*Rasulev v. Good Care Agency, Inc.*,
    2017 WL 11507653 (E.D.N.Y. Apr. 19, 2017) ................................................... 12

*Reyes v. Buddha-Bar NYC*,
    2010 WL 2545859 (S.D.N.Y. June 18, 2010) .................................................... 11

*Rosenfeld v. Lenich*,
    2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) ........................................................ 8

*Sajvin v. Singh Farm Corp.*,
    2018 WL 4214335 (E.D.N.Y. Aug. 13, 2018) .................................................... 23

*Sewell v. Bovis Lend Lease, Inc.*,
    2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) .................................................... 13

*Story v. SEFCU*,
    2021 WL 736962 (N.D.N.Y. Feb. 25, 2021) ...................................................... 16

*Tanski v. AvalonBay Communities, Inc.*,
    2020 WL 2733989 (E.D.N.Y. May 26, 2020) .................................................... 22

*Toribio v. Abreu*,
    2018 WL 6363925 (E.D.N.Y. Nov. 15, 2018) .................................................... 24

*Vasquez v. A+ Staffing LLC*,
    2024 WL 3966246 (E.D.N.Y. Aug. 27, 2024) ...................................................... 6

*Villa v. Highbury Concrete Inc.*,
    2022 WL 19073649 (E.D.N.Y. Nov. 25, 2022) ............................................ Passim

*Zhu v. Wanrong Trading Corp.*,
    2024 WL 4351357 (E.D.N.Y. Sept. 30, 2024) .............................................. 20, 21

## RULES

Fed. R. Civ. P. 23(a), (b)(3) ............................................................................... 16

Fed. R. Civ. P. 23(g)(1)(A) ........................................................................... 18, 19

Fed. R. Civ. P. 23(g)(1)(B) ................................................................................. 19

Fed. R. Civ. P. 23(a)(4) ........................................................................................................... 17

Fed. R. Civ. P. 23(e)(2) ............................................................................................................. 7

# GLOSSARY OF DEFINED TERMS

Agreement: "Agreement" means the Settlement Agreement, including all exhibits.

Claim Form: "Claim Form" means the form attached as Exhibit 2, subject to Court approval, which each Putative FLSA Collective Member must complete by the close of the Notice Period, to recover the portion of the Individual Settlement Payment attributable to the FLSA as per the allocation formula.

Class Counsel:  Class Counsel means Kessler Matura, P.C. ("KM"), 534 Broadhollow Road, Ste., 275, Melville, New York 11747, by Troy L. Kessler and Garrett Kaske, and the Law Office of Delmas A. Costin, Jr., PC ("DAC"), 930 Grand Concourse, Suite 1B, Bronx, New York 10451.

Class List: "Class List" means a manipulatable electronic list containing the following information for each Class Member:  name, Social Security Number, dates of employment with Defendants, last known addresses, last known phone numbers, and total gross earnings paid by Defendants during the Relevant Period.

Class Members: "Class" and "Class Members" are defined as all individuals employed Defendant New York 4399 Bronx Chicken LLC, Baychester Chicken BG LLC, 3555 White Plains BG LLC, 3411 Jerome Ave Corp., or Coney Food of NY LLC at any time during the Relevant Period, as non-exempt fast-food employees.

Defendants: "Defendants" are the Bukhari Group LLC, 4399 Bronx Chicken LLC, Baychester Chicken BG LLC, 3555 White Plains BG LLC, 3411 Jerome Ave Corp., and Coney Food of NY LLC, Nafees Bukhari, and Ali Butt.

Effective Date: "Effective Date" is the date on which this Agreement becomes effective, which means 31 days after the Court issues the Final Approval Order.

Fair Workweek Law: "Fair Workweek Law" means the New York City Fair Workweek Law, Title 20, Chapter 12 of the New York City Administrative Code.

Fairness Hearing: "Fairness Hearing" means a hearing before the Court, relating to the fairness and approval of the Settlement, which occurs after the close of the close of the 75-day period to submit a Claim Form, object, or opt out of the Settlement.

Final Approval Order:  "Final Approval Order" means the Order entered by the Court, which grants Plaintiffs' Final Approval Motion.

FLSA:  The "FLSA" means the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*

FLSA Collective: "FLSA Collective" or "FLSA Collective Members" means all Class Members employed by Defendants at any time from May 13, 2019, through the end of the Relevant Period who opt into the collective action by way of the Claim Form.

<u>Putative FLSA Collective Member</u>: "Putative FLSA Collective Members" means all Class Members employed by Defendants at any time from May 13, 2019, through the end of the Relevant Period who are eligible to opt into the collective action by way of the Claim Form.

<u>Individual Settlement Payment</u>: "Individual Settlement Payment" means the amount payable to each Qualified Class Member out of the Net Settlement Fund.

<u>Net Settlement Amount</u>: "Net Settlement Amount" means the remainder of the Settlement Amount after deductions for Court-approved attorneys' fees, costs, and expenses, Court approved Service Awards, the Settlement Administrator's fees, and all other Court-approved fees, costs, and expenses.

<u>Notice</u>: "Notice" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit.

<u>NYLL</u>:  The "NYLL" means New York Labor Law, Articles 6 and 19.

<u>Parties</u>:  The "Parties" are Plaintiffs and Defendants.

<u>Plaintiffs</u>: "Plaintiffs" are Brianna Campbell, Shakeim Robinson, and Kevaughn Robinson.

<u>Preliminary Approval Order</u>: "Preliminary Approval Order" means the Order entered by the Court, which grants the instant motion.

<u>Qualified Class Member</u>: "Qualified Class Member" is a Class Member who does not opt out pursuant to this Agreement.

<u>Relevant Period</u>: "Relevant Period" means May 13, 2016, through July 29, 2022.

<u>Service Payment</u>: "Service Payment" shall mean the amount of money Plaintiffs seek to compensate them and certain Class Members for the risks they incurred and services to the Class.

<u>Settlement Administrator</u>: "Settlement Administrator" shall refer to the third-party administrator, Xpand Legal Consulting LLC ("Xpand Legal").

<u>Settlement Payment</u>: "Settlement Payment" and "Gross Settlement Fund" and means the $400,000.00 that Defendants agree to pay to settle the instant matter.

## INTRODUCTION

Plaintiffs submit this memorandum of law in support of their motion for preliminary approval of the class-wide settlement they reached with Defendants.[1]  Because the proposed settlement satisfies all of the criteria for preliminary approval, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the settlement, as set forth in the Agreement (Exhibit A); (2) conditionally certify the proposed settlement class, for settlement purposes, under Federal Rule of Civil Procedure 23(b)(3); (3) appoint KM and DAC as Class Counsel; (4) approve the proposed Notices (Exhibits A-1, A-7), and direct their distribution; (5) appoint Xpand Legal as the Settlement Administrator; and (6) schedule a Fairness Hearing approximately 160 days after the Court issues the Preliminary Approval Order.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Overview of the Litigation and Negotiations

### A.  The Claims

This is an action for violations of the FLSA, NYLL, and Fair Workweek Law.  *See* ECF No. 62 (3d. Am. Compl.) ¶¶ 4-10.  Plaintiffs and members of the putative class and collective were hourly-paid fast-wood workers ("FFWs"), who were employed as cashiers, prep workers, fryer workers, and low-level managers.

Plaintiffs allege that Defendants failed to pay the Class at the required overtime and minimum wage rates.  *Id*. ¶¶ 213-242.  Defendants avoided their overtime obligations by: (1) paying overtime hours at the FFWs' hourly rate (*id*. ¶¶ 218, 224, 226, 230); (2) paying FFWs only for their scheduled hours (*id*. ¶¶ 231-234); and (3) deducting for meal breaks even when FFWs worked through them (*id*. ¶¶ 235-238).  Because FFWs are primarily minimum wage workers, the

---

[1]  Consistent with the Agreement, capitalized terms are defined in the Glossary of Terms.

failure to pay for any time resulted in minimum wage violations.  *Id*. ¶¶ 240-242.  FFWs were also not paid spread-of-hours pay when they worked shifts lasting over 10 hours.  *Id*.  ¶¶ 243-247.

Plaintiffs also allege violations of the scheduling and recordkeeping requirements of the NYLL and Fair Workweek Law.  That is, Defendants violated Sections 195(1) and 195(3) of the NYLL by failing to provide hiring notices and accurate paystubs.  *Id*. ¶¶ 248-256.  Plaintiff K. Robinson alleged that Defendants failed to issue schedules and changed the Class's hours without sufficient notice or premium pay in violation of the Fair Workweek Law.  *Id*. ¶¶ 262-267.

Defendants, for their part, deny these allegations and contend that they paid all their employees consistent with the federal, state, and city wage-and-hour laws.  Kaske Decl. ¶ 22.

### B.  Procedural Overview.

After investigating the claims, Class Counsel sent Defendants a pre-suit demand letter in July 2021.  Kaske Decl. ¶¶ 11-12.  Class Counsel then engaged in settlement negotiations with Defendants' prior counsel.  *Id*.  Those discussions proved unsuccessful.  *Id*.  Thereafter, Plaintiffs filed the Complaint on May 13, 2022.  *See* ECF No. 1 (Compl.). Although Defendants initially did not respond to the Complaint, the Parties agreed to vacate the default and permit Defendants to answer the Amended Complaint.  *See* ECF No. 29 (Stip. Vacating Default).

After Defendants answered the Amended Complaint, the Parties started on the Court's FLSA discovery order dated May 13, 2022.  Kaske Decl. ¶ 13.  As a result, the Parties exchanged some preliminary documents and information before mediating with Adam J. Halper on January 6, 2023.  *Id*.  The Parties were not able to resolve this matter at that time, despite the ample assistance of mediator during and after the mediation.  *Id*.

The Parties then started formal discovery following the February 23, 2023, initial conference (ECF No. 45).  While engaged in paper discovery, Plaintiffs moved for conditional

certification of the FLSA collective, fully briefing the matter on May 26, 2023. *See* ECF Nos. 51-53. Plaintiffs also amended the Complaint a second time to include Fair Workweek Law claims and add K. Robinson as a named plaintiff. *See* ECF No. 49 (2d Am. Compl.).

All throughout the discovery process, the Parties continued to negotiate and share information related to settlement. Kaske Decl. ¶¶ 17-18. In September 2023, the Parties reached a tentative settlement, which was formalized over the next several months. *Id.* ¶ 19. The Parties executed the "First Agreement" on February 14, 2024. *Id.* ¶ 20; ECF No. 66-3 (1st Agr.).

Plaintiffs also amended the Complaint a final time on February 7 and the Parties consented to Your Honor's jurisdiction. *See* ECF Nos. 61 (Stip.), 62 (3d Am. Compl.), 65 (Consent).

Plaintiffs moved for preliminary approval of the First Agreement on February 15. *See* ECF Nos. 66. Thereafter, on April 26, 2024, the Parties amended the First Agreement and supplemented Plaintiffs' motion in response to the Court's request for additional information. *See* ECF No. 69.

After holding a Preliminary Approval Hearing on June 21, 2024 (ECF No. 71 (Hr'g Tr.)), the Court denied Plaintiffs' motion for approval. *See* ECF No. 72 (Ord.). Immediately following receipt of the Order Denying the Preliminary Approval Motion, Class Counsel began revising the proposed Notices and Claim Forms and renegotiating the terms of the settlement to address the Court's concerns in the Order and expressed during the Preliminary Approval Hearing. Kaske Decl. ¶ 21. The Parties executed the instant Agreement on December 30, 2024. *Id*.

## II. The Settlement Agreement

### A. The Settlement Payment

Defendants agree to pay the settlement amount of $400,000.00 to cover the payment to the Class, attorneys' fees and costs, the Settlement Administrator's costs, and the Service Payments. Ex. A (Agr.) §§ 1.16, 1.31.

## B.  Notice to Class Members and Putative FLSA Collective Members

Class Members include Plaintiffs and all individuals employed by Defendants between May 13, 2016, through July 29, 2022, as non-exempt employees.  *Id*. §§ 1.5, 1.27.  A subset of the Class Members are the Putative FLSA Collective Members, who were employed sometime between May 13, 2019, and July 29, 2022.  *Id*. § 1.32.  There are believed to be about 470 Class Members.  Kaske Decl. ¶ 28.

Within seven days of the Court's issuance of the Preliminary Approval Order, Defendants will provide the Settlement Administrator and Class Counsel with the Class List.  Ex. A (Agr.) § 3.1(A).  The Settlement Administrator will mail the Notices to Class Members within 10 days of receiving the Class List.  *Id*. § 3.1(B).  The Settlement Administrator will take reasonable steps to obtain the correct address of any Class Members for whom the Notice is returned as undeliverable, including performing a skip-trace search upon receipt of an undeliverable Notice.  *Id.* § 3.1(D).

Class Members that are part of the Putative FLSA Collective, will receive the Notice attached as Exhibit A-7 (FLSA Notice).  *Id.* § 3.1(D).

Class Members will have 75 days to participate in, opt out of, or object to the settlement.  *Id.* §§ 1.18, 3.2.-3.3.  During this time, Putative FLSA Collective Members can submit a Claim Form (Ex. A-2 (Claim Form)), to opt into this case and claim their FLSA settlement payment.  *See id*. §§ 1.31, 1.32, 3.1(C). About 30 days after Notice is issued, the Settlement Administrator will send a reminder notice to those Putative FLSA Collective Members who have not submitted a Claim Form, objected, or opted out.  *Id.* § 3.1(C)(4); Ex. A-4 (Reminder).

Within 15 days after the close of the Notice Period, Class Counsel will file all opt-outs, objections, and FLSA Claim Forms on the docket.  *Id*. § 3.1(F); *see also* Kaske Aff. ¶ 31.

### C.  Releases

All Class Members who do not exclude themselves from the settlement will release all wage-and-hour claims asserted in the Complaint, aside from FLSA claims.  *Id.* § 6.1.  FLSA Collective Members will release the FLSA claims asserted in the Complaint.  *Id.*

### D.  Allocation Formula

The Agreement provides for Class Members to receive their proportionate share of the Net Settlement Fund based on their gross wages.  *See id.* § 4.4(B); *see also* Kaske Decl. ¶ 30.   Class Members who do not opt out are deemed Qualified Class Members and will receive a share of the Net Settlement Fund.  *Id.* §§ 1.24, 4.4.  Any funds unclaimed by Putative FLSA Collective Members will be reallocated to the Qualified Class Members.  *Id.* § 1.24, 4.4(B)(3).

### E.  Attorneys' Fees and Costs

Class Counsel seeks Court approval of one-third of the Gross Settlement Fund for their attorneys' fees (i.e., $133,333.33), plus up to $5,000 for their expenses and costs.  *Id.* § 4.2(A).

### F.  Service Payments

Plaintiffs also seek Service Payments totaling $35,000, in recognition of the services Plaintiffs and two other Class Members rendered to the Class and in exchange for a broader release.  Ex. A (Agr.) §§ 1.28, 4.3(A)-(B), 6.2; Ex. A-3 (Serv. Release Form).

### G.  Settlement Administrator

The Parties have selected Xpand Legal Consulting LLC to serve as the Settlement Administrator.  Ex. A (Agr.) § 1.29; *see also* Ex. E (Xpand CV).

## ARGUMENT

**I.    This Motion is the First Step of the Class Action and FLSA Settlement Procedure.**

Rule 23's class action settlement procedure includes two steps: (1) pre-notice preliminary approval of the settlement's fairness and (2) post-notice final approval, after the class members and parties are given the opportunity to be heard. *Villa v. Highbury Concrete Inc.*, No. 17 Civ. 984, 2022 WL 19073649, at *2 (E.D.N.Y. Nov. 25, 2022) (Kuo, Mag.). Some courts have adopted a parallel settlement procedure for collective-action FLSA settlements that require a preliminary determination of fairness, notice to the putative collective members, the opportunity to join the action, and the opportunity to be heard before a final determination of fairness is made. *See Vasquez v. A+ Staffing LLC*, No. 22 Civ. 2306, 2024 WL 3966246, at *8-10 (E.D.N.Y. Aug. 27, 2024); *but see Benoskie v. Kerry Foods, Inc.*, No. 19 Civ. 684, 2020 WL 5769488, at *2 (E.D. Wis. Sept. 28, 2020) (following the reasoning of now Seventh Circuit Judge Amy St. Eve in *Briggs v. PNC Fin. Servs. Grp.*, No. 15 Civ. 10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) in determining that FLSA settlements, unlike Rule 23 settlements, may be approved in a single step)).

With this motion, Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement, conditionally certifying a settlement class under Rule 23 and a settlement collective under the FLSA, approving the Parties' proposed Notices (Exhibits 1 and 7), and authorizing the Settlement Administrator chosen by the Parties to send the proposed Notices and Claim Forms (Exhibit 2) to Class Members. *See* Ex. I (Proposed PA Ord.).

**II.    Preliminary Approval of the Settlement is Warranted Under Rule 23.**

Preliminary approval is an initial evaluation of a settlement's fairness before the class is notified of the settlement. *Amigon v. Safeway Constr. Enters. LLC*, No. 20 Civ. 5222, 2024 WL 5040436, at *3 (E.D.N.Y. Dec. 9, 2024) (Kuo, Mag.). Preliminary approval is warranted if the

Court determines that it will likely grant final approval under Rule 23(e)(2) and certify the class for purposes of issuing a final judgement as to the settlement. *Id*.

At this stage, Courts consider the factors set forth in Rule 23(e)(2) in tandem with the factors historically applied in the Second Circuit. *Id*. Rule 23(e)(2) requires courts to consider: (A) the adequacy of the class representatives and counsel; (B) the negotiations; (C) the value of the relief considering: (i) the costs, risks, and delay of trial and appeal; (ii) the methods used to distribute relief to the class; (iii) the attorney's fee award; and (iv) any side agreements; and (D) the treatment of class members relative to each other. Fed. R. Civ. P. 23(e)(2). The Second Circuit's "*Grinnell* factors" are: (1) the case's complexity, expense, and likely duration; (2) the class's reaction to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of sustaining a class action; (7) the defendants' ability to withstand a greater judgment; and the settlement fund in light of (8) the best possible recovery and (9) litigation risks. *Villa*, 2022 WL 19073649, at *2.

For the reasons set forth below, this settlement meets all the requisite factors.

**A. The Settlement Is Procedurally Fair (Rule 23(e)(2)(A)-(B)).**

Rules 23(e)(2)(A)-(B) control the procedural fairness inquiry. *Baudin v. Resource Mktg. Corp., LLC*, No. 19 Civ. 386, 2020 WL 4732083, at *6 (N.D.N.Y. Aug. 13, 2020). The "arms-length quality of the negotiations" is a positive factor in this inquiry. *Moses v. New York Times Co*., 79 F.4th 235, 243 (2d Cir. 2023). The use of an experienced mediator is also "strong evidence" of procedural fairness. *Guevoura Fund Ltd. v. Sillerman*, No. 1:15 Civ. 7192, 2019 WL 6889901, *6 (S.D.N.Y. Dec. 18, 2019) (cleaned up).

Here, the settlement was reached between experienced counsel negotiating at arm's length, after a thorough investigation, motion practice, discovery, and an unsuccessful mediation. Kaske Decl. ¶¶ 12-18; *see Baudin*, 2020 WL 4732083, at *6 (settlement procedurally fair where it

followed informal discovery and mediation). Moreover, Plaintiffs do not have interests that are antagonistic to or at odds with the Class Members' interests. *Id*. ¶¶ 34-37. Class Counsel is also capable of continuing to adequately represent the Class's interests. *See infra* § Arg. IV.

### B. The Settlement Allocation and Distribution Plan Satisfy the Rule 23 Factors.

#### 1. Distribution of the Notice and Settlement Checks by Mail Is Reasonably Calculated to Reach the Class Members (Rule 23(e)(2)(C)(ii)).

The settlement distribution plan need not be perfect, it need only be reasonable and rational. *Mikhlin v. Oasmia Pharm. AB,* No. 19 Civ. 4349, 2021 WL 1259559, at *6 (E.D.N.Y. Jan. 6, 2021). A reasonable plan will deter unjustified claims while not subjecting class members to an overly burdensome process to claim their settlement payments. *Id*.

Here, Qualified Class Members will receive a payment proportionate to the value of their potential claim. *See infra* § Arg. II(7) . Unjustified claims will be minimal because Defendants will provide the Settlement Administrator with last known addresses and Social Security Numbers, so Class Members can be found. *See* Ex. A (Agr.) §§ 1.4, 2.1. 3.1(D); *c.f.* Rosenfeld *v. Lenich,* No. 18 Civ. 6720, 2021 WL 508339, at *6 (E.D.N.Y. Feb. 11, 2021) (factor met where the parties merely had "a list of phone numbers" they were to use to fine the class members).

#### 2. The Notices Are Well Crafted and Informative (Rule 23(c)(2)(B)).

Upon preliminary approval of a class settlement, the court directs that reasonable notice be issued to the class. *Villa*, 2022 WL 19073649, at *7. The notice must sufficiently advise the class members of the "settlement generally, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing" so that the average class member would understand the stakes. *Id.* (cleaned up).

The Notices, here, meet this standard. The Notices describe the litigation and terms of the settlement, inform the Class Members and Collective Members about how to participate, object,

or opt-out of the settlement, provides details on the allocation of attorneys' fees and costs, and states the time and place of the final approval hearing. *See* Exs. A-1, A-7 (Notices). The Class Notice will be sent to individuals who do not have timely FLSA claims. The Class Notice only discusses the NYLL and FWW claims at issue, to not confuse Class Members. The FLSA Notice, on the other hand, addresses the opt-in process required to release FLSA in ways that remedy the Court's concerns identified during the Preliminary Approval Hearing and in the Order:

(1)     The summary chart now specifies that a Putative FLSA Collective Member only releases claims by submitting the Claim Form. *See* Ex. A-7 (FLSA Notice) at 1; *see also* ECF No. 71 (Hr'g Tr.) 24:2-16 (discussing the summary chart), *and* ECF No. 72. (Ord.) at 11 (identify inaccuracy in same).

(2)     Section 3 of the FLSA Notice explains that a completed, timely Claim Form is needed to receive the settlement monies related to the FLSA claims. *See* Ex. A-7 (FLSA Notice) at 3; *see* ECF No. 71 (Hr'g Tr.) 26:7-13 (discussing Section 3).

(3)     The FLSA Notice repeatedly reminds Putative FLSA Collective Members to submit the "completed Claim Form" on time to ensure their participation in the FLSA portion of settlement. *See* Ex. A-7 (FLSA Notice) at 1, 3, 4; *see* ECF No. 71 (Hr'g Tr.) 29:5-19 (discussing the risk of individuals submitting invalid forms).

(4)     Section 8 of the FLSA Notice states that FLSA rights are retained, even if the Putative FLSA Collective Member doesn't opt out. *See* Ex. A-7 (FLSA Notice) at 4; *see also* ECF No. 71 (Hr'g Tr.) 24:17-26:5 (discussing Section 8), *and* ECF No. 72. (Ord.) at 11 (identify problems with prior draft of same).

(5)     The Claim Form clarifies that the monies being claimed relate to alleged FLSA violations and are only approximations.  *See* Ex. A-2 (Claim Form), Ex. A-7 (FLSA Notice) at 3; *see* ECF No. 71 (Hr'g Tr.) 29:21-30:4.

### 3.  The Attorneys' Fees Sought Are Reasonable and There Are No Other Agreements Between the Parties (Rule 23(e)(2)(C)(iii)-(iv)).

The Agreement provides for Class Counsel to apply for up to one third of Gross Settlement Fund for fees, paid out at the time of distribution. Ex A. (Agr.) §§ 4.1(C), 4.2(A).  This is common.  *See Burns v. FalconStor Software, Inc.*, No. 10 Civ. 4572, 2014 WL 12917621, at *8 (E.D.N.Y. Apr. 11, 2014) (collecting cases), *adopted* (E.D.N.Y. May 8, 2014); *see also Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20 Civ. 456, 2021 WL 7906584, at *8 (E.D.N.Y. May 25, 2021) (discussing disfavored "quick-pay provisions").  The fees sought here, therefore and for the reasons discussed in Section VII below, are sufficiently reasonable to grant preliminary approval.

Additionally, approval is warranted as there are no other agreements between the Parties.  *See* Ex. A (Agr.) § 7.4; Kaske Decl. ¶ 29; *see Villa*, 2022 WL 19073649, at *6.

### 4.  The Agreement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D)) and Otherwise Fairly Distributes the Funds.

The Agreement provides for a pro rata allocation based on the estimated value of the claims.  *See* Ex. A (Agr.) § 4.4(B); Kaske Decl. ¶ 30.  Such pro rata allocations are "uniformly approve[d] as equitable."  *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020); *see, e.g.*, *Amigon*, 2024 WL 5040436, at *6 (pro rata distribution formula accounted for individual rates of pay and weeks worked).

Unclaimed settlement proceeds from in a common fund settlement are generally passed on to (1) the defendant, (2) the class, (3) the state, or (4) a *cy pres* designee.  *See* ECF No. 72 (Ord.) at 9 (citing *Grice v. Pepsi Beverages Co.*, No. 17 Civ. 8853, 2019 WL 340714, at *409 (S.D.N.Y. Jan. 28, 2019)).  The Agreement provides for unclaimed funds to either be reallocated or donated

*cy pres*.  Ex. A (Agr.) § 4.4(B)(3), 4.5(A).  The unclaimed FLSA funds will be redistributed *pro rata* to Class Members and FLSA Collective Members.  *Id*. § 4.4(B)(3).  Relatedly, the Agreement provides that any unapproved attorneys' fees, attorneys' costs, administration costs, and service payments will remain part of the Net Settlement Fund.  *See* Ex. A (Agr.) § 4.4(B), 4.4(B)(3).[2]

Lastly, the monies from uncashed checks will be donated to *cy pres* designee Brandworkers International, Inc.  "Under the *cy pre* doctrine, the best application of unused settlement funds is to donate them to an organization whose purpose is closely related to the purpose of the lawsuit." *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2010 WL 2545859, at *1 (S.D.N.Y. June 18, 2010). Brandworkers is a non-profit workers center committed to organizing and advocating for the food-industry workers of New York City.  *See, e.g.*, *Guallpa v. N.Y. Pro Signs Inc.*, No. 11 Civ. 3133, 2014 WL 2200393, at *10 (S.D.N.Y. May 27, 2014), *adopted*, 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014); *Merino v. Beverage Plus Am. Corp.*, No. 10 Civ. 706, 2012 WL 4468182 (S.D.N.Y. Sept. 25, 2012).  Brandworkers' purpose is, therefore, sufficiently aligned with the purposes of this case, which is about improving the working conditions of workers in the New York City food-service industry.  *See also Lucente v. EAD Entm't, LLC*, No. 23 Civ. 3560, ECF No. 34 (E.D.N.Y. Nov. 7, 2024) (approving settlement where Brandworkers was named the *cy pres* designee).

---

[2]     The Agreement corrects any ambiguity in how the allocation process will work.  The Court determined that the First Agreement provided "no mechanism to adjust" the individual allocations to account for any downward adjustments to counsel's fees, counsel's costs, the administrator's fees, or the service awards.  ECF No. 72 (Ord.) 8-9.  Although the claims rate of the class members would not have impacted the individual allocations, the Parties always intended for any adjustments to counsel's fees, counsel's costs, the administrator's fees, and the service awards to be reallocated to the net settlement fund and distributed among the claiming class members.  *See* ECF No. 66-3 (1st Agr.) §§ 4.4(B) (requiring the settlement administrator to determine the estimated shares before issuing notice and then the final payment amount after final approval), 4.6(B) (stating that the unapproved fees of the administrator become part of the net settlement fund), 4.3(B) (same for service payments), and 4.2(B) (same for attorneys' fees and costs).

### C.  The Settlement Is Substantively Fair.

#### 1.  Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1 & Rule 23(e)(2)(C)(i)).

By reaching a settlement, Plaintiffs seek to avoid significant expense and delay, and instead ensure a recovery for the Class.  "[C]lass actions, especially in the context of FLSA claims, are inherently complex." *Rasulev v. Good Care Agency, Inc.*, No. 16 Civ. 1993, 2017 WL 11507653, at *10 (E.D.N.Y. Apr. 19, 2017); *Karic v. Major Auto. Cos.*, No. 09 Civ. 5708, 2016 WL 1745037, at *5 (E.D.N.Y. Apr. 27, 2016).  This case is no exception, with about 470 Class Members, multiple defendants, and claims under federal, state, and city law.

Extensive class-wide discovery would be required to establish liability and damages and to support Plaintiffs' class certification motion.  This discovery would include further electronic and paper discovery of pay records and paystubs; electronic discovery into Defendants' communications about the pay policies at issue; depositions of Class Members and Defendants' corporate representatives.  After completing discovery, the Parties would likely move for summary judgment on the merits of the claims and a trial would most likely be necessary.  Any judgment would likely be appealed, further extending the Litigation.  This settlement, on the other hand, provides significant relief to Class Members in a prompt and efficient manner.  Therefore, these factors weigh in favor of preliminary approval.

#### 2.  The Court Cannot Yet Assess the Class's Reaction (*Grinnell* Factor 2).

The Court will be able to fully analyze this factor after notice issues and Class Members have had an opportunity to opt out or object to the settlement.  Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.  *Villa*, 2022 WL 19073649, at *6.

#### 3.  Discovery Advanced Far Enough to Settle Dutifully (*Grinnell* Factor 3).

This factor assures the court that the plaintiffs' counsel adequately evaluated "their position based on a full consideration of the possibilities facing them." *Amigon*, 2024 WL 5040436, at *6

(cleaned up).  Approval is warranted if the parties were able to weigh the strengths and weaknesses of their claims, including by way of informal discovery, interviews, and other discussions.  *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012) (collecting cases).

The Parties meet this standard.  Defendants answered Plaintiffs' interrogatories, produced time and payroll data in compliance with the Court's FLSA discovery order, provided information on the class size and weeks worked by Class Members, and confidentially produced data.  Kaske Decl. ¶ 15.  For their part, Plaintiffs produced over 900 pages of litigation files, payroll records, schedules, and workplace communications.  *Id*. ¶ 16.  Class Counsel also interviewed prospective class members and witnesses about the claims.  *Id.* ¶ 18.  Throughout negotiations, Class Counsel analyzed Defendants' time and payroll data to estimate damages figures for the Class.  *Id*. Plaintiffs shared their damages estimates with Defendants.  *Id.* Counsel also debated the claims and defenses at length informally and via mediation.  *Id.*

### 4.  Continuing to Litigate is Risky (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe the case is strong, it is subject to risk.  "[R]isks are inherent in litigation." *Sewell v. Bovis Lend Lease, Inc*., No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012).  In assessing the risk of establishing liability and damages, the court weighs the likelihood of success against the settlement's value.  *In re PPDAI Grp. Inc. Sec. Litig*., No. 18 Civ. 6716, 2022 WL 198491, at *10 (E.D.N.Y. Jan. 21, 2022).

Here, a trial on the merits would involve significant risk as to both liability and damages. While Plaintiffs believe that they could ultimately defeat Defendants' defenses and establish liability, this would require significant factual development and favorable legal outcomes, which are all inherently uncertain.  *See Villa*, 2022 WL 19073649, at *4 ("Given the fact-intensive nature of FLSA and NYLL claims, had this case progressed to trial, Plaintiffs would have experienced risk in proving liability and damages.").  Plaintiffs would have to rebut the merits of Defendants'

anticipated defenses, including that Class Members: (1) were paid for all hours worked, including meals and unscheduled hours; (2) did not consistently work overtime, as many employees were part-time or limited to less than 40 hours a week; (3) were paid overtime at the proper rate, were paid above the minimum wage for all hours, and received spread-of-hours pay; (4) lack standing to bring the Section 195 claims; (5) were provided schedules on a timely basis; and (6) were provided accurate wage notices and paystubs.  Kaske Decl. ¶ 24.  The proposed settlement alleviates these uncertainties and warrants preliminary approval.

### 5.  Maintaining a Class Through Trial is Risky (*Grinnell* Factor 6).

Obtaining class certification and maintaining it through trial is also risky.  Defendants will continue to challenge class and collective action certification if this settlement is not approved. Defendants have unique defenses for various Class Members based on their circumstances, including the various job titles at issue, the differences between part-time and full-time employees, and the varying employment practices at the different restuarants and under different store managers.  *Id*. ¶ 25.  Thus, there is a significant risk that the Court would conclude that individualized factual inquiries preclude class treatment in this case.  *See, e.g.*, *Myers v. Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of class certification where class members' duties varied by location).  Accordingly, this factor favors preliminary approval.

### 6.  A Much Greater Judgment May Not Be Possible (*Grinnell* Factor 7).

The "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015) (cleaned up).  Although Class Counsel believes Defendants could possibly afford a greater judgement, Class Counsel's review of Defendants' taxes and research into their business and assets weighed on the decision to settle for the Settlement Amount.  *See* Kaske Decl. ¶¶ 11, 15; *see also* ECF No 71 (Hr'g Tr.) 15:23-16:7 (noting that Defendants shared tax-return

information with Class Counsel and are "paying out of pocket"). The settlement eliminates the risk of collection by requiring Defendants to pay the full settlement amount over the course of four installments. Ex. A (Agr.) §§ 4.1(B)-(C). Accordingly, this factor weighs in favor of approval.

### 7. The Settlement Fund Is Substantial, Even Considering the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

The $400,000 settlement amount represents substantial value given the risks of litigation, even though the recovery could be greater if Plaintiffs prevailed and maintained a class through trial and on appeal. There is no magic number to determine a settlement amount is reasonable. *Chavarria v. New York Airport Serv., LLC*, 875 F. Supp. 2d 164, 174 (E.D.N.Y. 2012). "Instead, there is a range of reasonableness with respect to a settlement[.]" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (cleaned up). The issue is then "whether the settlement falls below the lowest point in the range of reasonableness." *Ballinger v. Adv. Mag. Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092, at *3 (S.D.N.Y. Dec. 29, 2014). The agreement is reasonable if the settlement provides "a meaningful benefit to the [c]lass when considered against the obstacles to proving plaintiff's claims" and damages. *Karic*, 2016 WL 1745037, at *7.

Here, the settlement provides a substantial recovery. By KM's estimation, the fund represents approximately 10% of the claims, assuming the average Class Member would be entitled to one additional hour of pay per shift, $75 per week under the Fair Workweek Law, up to $10,000 per person under Section 195, spread-of-hours pay at the rate of 0.046 per shift, and full liquidated damages. Kaske Decl. ¶ 26. This estimation assumes significant success in the face of the uncertainties of litigation. *See supra* Arg. § II(B)(4). Moreover, as the Honorable Steven I. Locke, U.S.M.J., recently pointed out, the percentage of recovery would only increase if the Court were to hold that Plaintiffs lack standing to bring Section 195 claims. *See* Ex. H (*Lucente* Tr.) ¶¶ 2:20-25, 4:8-18; *see, e.g.*, *Muhammad v. Alto Pharmacy LLC*, No. 23 Civ. 11315, 2024 WL

4042479, at *6 (S.D.N.Y. Sept. 4, 2024) (Section 195 claims dismissed *sua sponte*); *see also* Kaske

Decl. ¶ 26.  Weighing the benefits of the settlement against the available evidence and the risks

associated with proceeding in the litigation, the settlement amount is reasonable.  *Id*. ¶¶ 27-28.

The percentage of recovery is also like those in other recent cases.  *See Amigon*, 2024 WL

5040436, at *6 (collecting cases where the fund represented "5% of potential maximum damages"

in one case and "22%" – but excluding liquidated damages and statutory penalties – in another).

In *Amigon*, for example, the Court granted preliminary approval of a settlement fund of about

"12.32% of the best possible recovery or approximately 28.38% of the alleged unpaid wages." *Id*.

The settlement here represents a comparable 43.29% of the unpaid wages.  *See* Kaske Decl. ¶ 26.

**D.  Conditional Certification of the Settlement Class Is Appropriate.**

For settlement purposes, Plaintiff seeks to certify a class under Rule 23(e).  At the

preliminary approval stage, the plaintiff must show that the class action devise is appropriate.  *See*

*Story v. SEFCU*, No. 1:18 Civ. 764, 2021 WL 736962, at *4 (N.D.N.Y. Feb. 25, 2021).  Courts,

therefore, determine whether the requirements of Rule 23(a) and (b) are met.  *Id*.  The five

requirements are:  (1) the class is too numerous for joinder to be practicable ("numerosity"); (2)

common legal or factual questions apply to the class ("commonality"); (3) the class

representatives' claims are typical of the class ("typicality"); (4) the class representative and

counsel are adequate to protect the class's interests ("adequacy") and (5) the common questions of

law or fact (a) predominate over individual ones ("predominance"), (b) rending the class devise

superior to individual litigation ("superiority").  Fed. R. Civ. P. 23(a), (b)(3).

**1.  Numerosity:  The Class Exceeds 40 Members.**

"Numerosity is presumed at a level of 40 members."  *See Perez v. Allstate Ins. Co.*, No. 11

Civ. 1812, 2014 WL 4635745, at *15 (E.D.N.Y. Sept. 16, 2014) (Bianco, J.).  Here, the proposed

Class is comprised of about 470 individuals, which satisfies this element.

## 2. Commonality & Typicality:  The Wage Payment and Scheduling Issues Applied Across the Class Members, Including Plaintiffs.

Commonality and typicality are closely related.  *Amigon*, 2024 WL 5040436, at *8.

Commonality tests "whether the named plaintiff's claim and the class claims are so interrelated

that the interests of the class members will be fairly and adequately protected in their absence."

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Typicality is met if the

plaintiffs' and class members' claims (1) arose from the same course of conduct, (2) are based on

the same legal theories, and (2) the injury at issue arose from the same course of conduct.  *Id*.

Here, Plaintiffs and Class Members all share the common contentions that they were FFWs

who were improperly denied lawful wages and compliant paystubs.  These common factual and

legal claims are sufficient to satisfy commonality and typicality for settlement purposes.

## 3. Adequacy: The Plaintiffs' Interests Are Aligned with Those of the Class and Counsel Is Experienced in Wage-and-Hour Litigation.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

interests of the class."  Fed. R. Civ. P. 23(a)(4).  For the reasons set forth above in Section II(A)

(*supra* Arg. § II(A)) and below in Section IV (*infra* Arg. § IV), this requirement is met.

## 4. Predominance & Superiority:  Common Questions Predominate, Which Renders the Class Action Devise Superior to Piecemeal Litigation.

To establish predominance, Plaintiffs must demonstrate that the issues that can be resolved

through "generalized proof," outweigh those issues subjected to individualized proof.  *See Perez*,

2014 WL 4635745, at *19.  The essential inquiry is whether liability can be determined on behalf

of the class, not whether there may be individualized damages inquiries.  *See Ramirez v. Riverbay

Corp.*, 39 F. Supp. 3d 354, 373 (S.D.N.Y. 2014).  Rule 23(b)(3) also examines whether the class

action device conflicts with class's interest in pursuing separate actions and the desirability of

managing the proposed class action in the chosen forum.  *See Perez*, 2014 WL 4635745, at *24.

Here, Plaintiffs' common contentions – that they and other Class Members were not paid properly subject to a company-wide policy of disregarding the wage-payment requirements – predominate over any issues affecting only individual Class Members.  And, employing the class device is warranted because it is unlikely the class will individually pursue these claims, given the individual value of them, further highlighting that a class settlement will achieve economies of scale, conserve judicial resources, and avoid repetitive proceedings and inconsistent adjudications.

## III.    The Settlement Meets the FLSA Approval Standard.

Because the Rule 23 standard is more demanding than the standard applied to FLSA settlements, satisfying the above factors "necessarily" satisfies the FLSA approval standard.  *Cano v. Nineteen Twenty Four Inc.*, No. 15 Civ. 4082, 2017 WL 11507654, at *5 (E.D.N.Y. Apr. 24, 2017).  Regardless, courts may still deny approval of a settlement if the terms conflict with the FLSA's remedial purpose.  *See Nieto v. Izzo Constr. Corp.*, No. 15 Civ. 6958, 2018 WL 2227989, at *2 (E.D.N.Y. May 14, 2018) (collecting a "greatest hit" of impermissible terms).

The Agreement should be approved because it meets the Rule 23 standard and respects the FLSA's remedial purpose. The release provided by the Class Members will be limited to the parties and claims at issue.  *See* Ex. A (Agr.) § 6.1; *see Villa*, 2022 WL 19073649, at *4 (E.D.N.Y. Nov. 25, 2022) ("[T]he releases are properly limited to wage-and-hour-related claims under the NYLL, FLSA, and related statutes.").  As discussed below, the attorneys' fees sought are consistent with Circuit norms (*infra* Arg. § VII), the Agreement does not require confidentiality, and the enhanced releases for the Service Payments adhere to Rule 23 and FLSA norms (*infra* Arg. § VI).

## IV.    KM and DAC Should be Appointed as Class Counsel.

Rule 23(g) sets forth four criteria to consider in evaluating counsel's adequacy to serve as class counsel.  Fed. R. Civ. P. 23(g)(1)(A).  These factors include counsel's (1) work to identify and investigate the claims, (2) relevant experience, (3) knowledge of law, and (4) commitment of

resources to the litigation.  *Id.*  Courts may consider others matters weighing on "counsel's ability to fairly and adequately represent" class's interests.  Fed. R. Civ. P. 23(g)(1)(B).

KM and DAC satisfy these criteria.  The firms have done substantial work identifying, investigating, litigating, negotiating, and settling Plaintiffs' and Class Members' claims.  Kaske Decl. ¶¶ 11-21.  The firms are also experienced prosecuting and settling employment matters, including wage and hour class actions.  *Id.* ¶¶ 5-10; Ex. B (Kessler CV); Ex. C (Kaske CV) Ex. D (Costin Decl).  Further, courts have repeatedly found KM's attorneys to be adequate class counsel. *See, e.g.*, *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 WL 574280, at *4 (E.D.N.Y. Feb. 9, 2015); *Garcia v. Pancho Villa's of Huntington Vill.*, Inc., 281 F.R.D. 100, 107 (E.D.N.Y. 2011).

## V.    Xpand Legal's Experience and Reasonable Fee Supports its Appointment.

Xpand Legal has extensive experience administering class action settlements.  *See* Ex. E (Xpand CV); *see, e.g.*, *Lucente*, slip op. ¶ 5 (approving Xpand Legal's fees and costs as Settlement Administrator).  In proposing and selecting Xpand Legal, KM considered its own experience working with Xpand Legal and their principal, the reasonableness of their bid, and their reputation in the industry.  Kaske Decl. ¶¶ 32-33.  As such, the Parties have selected Xpand Legal to administer the settlement and have allocated up to $12,500 for their services.  *Id.*  Thus, Xpand Legal should be appointed as the Settlement Administrator and its fees should be preliminarily approved.  *See, e.g.*, *Buchanan v. Pay-O-Matic Check Cashing Corp.*, No. 18 Civ. 885, 2021 WL 3008480, at *3 (E.D.N.Y. June 15, 2021) (administrator's fees to be paid out of the fund).

## VI.    The Service Payments to Plaintiffs are Fair, Supporting Preliminary Approval.

Plaintiffs request $35,000 in aggregate Service Payments.  Ex. A (Agr.) § 4.3(a).  These payments are reasonable and should be preliminarily approved, subject to the Court's determination at the Fairness Hearing.

Courts routinely award service payments in wage-and-hour class settlements.  *See, e.g.*, *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 Civ. 3203, 2018 WL 4861391, at *6 (E.D.N.Y. Sept. 28, 2018) (collecting awards ranging from $5,000 to $30,000 per person).  Service awards are "important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18 Civ. 7854, 2021 WL 535635, at *4 (S.D.N.Y. Feb. 12, 2021) (cleaned up).  In examining service awards, courts consider the: (1) risks incurred; (2) effort expended prosecuting the case, and value added to it; and (3) ultimate recovery. *Frank*, 228 F.R.D. at 187.

First, Plaintiffs faced significant risk by publicly filing claims against their former employer.  *See* Kaske Decl. ¶ 35.  In situations like this, plaintiffs jeopardize "their ability to depend on the employer for references in connection with future employment." *Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010).

Second, the service award recipients worked diligently to achieve this class-wide recovery. *See* Kaske Decl. ¶ 36.  They worked with Class Counsel to investigate the claims, draft the complaints, prepare Plaintiffs' motion for conditional certification, prepare for the Parties' mediation, participated in discovery, and reviewed the Agreement. *Id*.  As such, their contributions to the Class justify their awards. *See, e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245-46 (E.D.N.Y. 2010) (Bianco, J.) (approving enhancement awards of $25,000 to named plaintiff who participated in all phases litigation through settlement, and $5,000 to a second plaintiff who reviewed a complaint and discussed the facts with counsel).

As to the third factor, at 8.75% of the fund, the awards are within the range approved in this Circuit in wage-and-hour class actions. *See, e.g*., *Zhu v. Wanrong Trading Corp.*, No. 18 Civ.

417, 2024 WL 4351357, at \*13 (E.D.N.Y. Sept. 30, 2024) ($30,000 to two individuals, amounting to 10.7% of the total $280,000 settlement); *Frank,* 228 F.R.D. at 187 (awards totaled 8.4% of the settlement); *Parker,* 2010 WL 532960, at \*2 (approving awards totaling 11% of the fund).

Lastly, the Service Payments are consideration for enhanced releases.  *See* Ex. A (Agr.) § 5.3.  Although broad releases are generally not permitted in FLSA cases, they may be consideration for a service award in a class or collective action settlement.  *Bondi v. DeFalco*, No. 17 Civ. 5681, 2020 WL 2476006, at \*6 (S.D.N.Y. May 13, 2020); *c.f. Barsa v. Beacon Health Options, Inc.*, No. 19 Civ. 1646, 2020 WL 7240346, at \*8, n. 10 (S.D.N.Y. July 10, 2020) (denying approval of general release in exchange for a $1,000 service award, as compared to the $2,000 to $10,000 awards at issue in *Bondi*); *see also Delijanin*, 2021 WL 535635, at \*5 (noting the courts approve of service awards exchanged for "general releases beyond the wage and hour claims at issue").

## VII.    Class Counsel's Attorneys' Fees and Costs are Reasonable, Appropriate, and Likely to Be Approved at the Final-Approval Stage.

The Parties have agreed that Class Counsel's attorneys' fees will not exceed one-third of the gross settlement amount.  One-third of the gross settlement amount is reasonable considering the over 250 hours Class Counsel spent on this case and will spend administering the settlement.  Kaske Decl.  ¶ 40.  Class Counsel also seeks to be reimbursed for expenses incurred litigating this case, which presently total $3,162.62.  Ex. F (Summary); *see also Cohan*, 2018 WL 4861391, at \*6 (approving comparable expenses).

### A.  The Requested Attorneys' Fee of One Third is Consistent with Local Norms.

The "trend" in this Circuit is to award fees using the percentage of the fund method in common-fund wage settlements like this.  *See Zhu*, 2024 WL 4351357, at \*13; *Hernandez*, 306 F.R.D. 91 at 102 (citations omitted).  Class Counsel's request for a contingency fee of one-third

of the settlement is consistent with the norms in this district. *Meo*, 2020 WL 4047897 at *2 ("Such apportionment is well within the parameters set by courts in this District." (collecting cases)).

### B.  The Lodestar Cross-Check Demonstrates that the Fee is Reasonable.

The practice in the Second Circuit is to crosscheck the proposed fee with the lodestar. *See, e.g., Meo*, 2020 WL 4047897, at *2 (courts need not inspect every hour for the crosscheck). Courts often approve fees that are "two to six times the lodestar." *Cohan*, 2018 WL 4861391, at *5 (cleaned up; collecting cases); *accord. Tanski v. AvalonBay Communities, Inc.*, No. 15 Civ. 6260, 2020 WL 2733989, at *3 (E.D.N.Y. May 26, 2020) (collecting multipliers of 2.02 to 3.5 and noting that multipliers over 4.0 are routine). "[A] multiplier of [two] or lower would be at the lower end of the range of multipliers awarded by courts [for complex cases] within the Second Circuit." *In re Canon U.S.A. Data Breach Litig.*, No. 20 Civ. 6239, 2024 WL 3650611, at *8 (E.D.N.Y. Aug. 5, 2024) (cleaned up).

In analyzing the reasonableness of the fee request, including any multiplier, courts consider (1) time and labor expended; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Cohan*, 2018 WL 4861391, at *2; *see also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) ("Fee awards in wage and hour cases should encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." (cleaned up)).

Here, Class Counsel's proposed fee amounts to $133,333.33, which is about 1.28 times their lodestar amount of $104,120.  Kaske Decl.  ¶ 42; Ex. F (Summary).  This lodestar estimate is reasonable because Class Counsel (a) calculated it using contemporaneous time records, (b) used billing judgment to account for overstaffing and duplicative work, and (c) used reasonable hourly rates regularly submitted to courts in this district and paid by their clients. *See* Kaske Decl. ¶¶ 43-

44; Ex. D (Costin Decl.). ¶¶ 4, 14-17; *see, e.g.*, *Meo*, 2020 WL 4047897, at *3 (finding KM's lodestar estimate and requested fees to be reasonable, after it reviewed "the billing rates for the respective attorneys" at KM and "carefully reviewed the biographical information on each of the attorneys, along with their professional affiliations, publications and prior cases."); *Hernandez v. Norm Int'l LLC*, No. 20 Civ. 4963, 2021 WL 4260490, at *3 (E.D.N.Y. Sept. 20, 2021) (same). Given the risks involved in litigating this matter (*see supra* Arg. §§ II(C)(4), (5), (7)), the complexity of this case (*see id*. § II(C)(1)), the quality of Class Counsel's representation (*see id*. §§ II(A), II(B)(3), II(B)(7)), and the public policy considerations, Plaintiffs submit that the fee is sufficiently reasonable to support preliminary approval.  *Villa*, 2022 WL 19073649, at *6 (withholding judgment on the fee until final approval).

Although the hourly rates Class Counsel used are at the high-end of what courts have stated are typically awarded in this district (*see, e.g.*, *Gayle v. Harry's Nurses Registry, Inc*., No. 07 Civ. 4672, 2020 WL 4381809, at *3 (E.D.N.Y. July 31, 2020) (adopting report and recommendation of Kuo, Mag.); *Hall v. ProSource Techs., LLC*, No. 14 Civ. 2502), 2016 WL 1555128, at *12 (E.D.N.Y. Apr. 11, 2016*)*), "attorney's fees, like other goods and services, increase in cost with inflation." *Almond v. PJ Far Rockaway, Inc.*, No. 1:15 Civ. 6792, 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018).  Courts may reassess the hourly rates previously awarded to attorneys to account for inflation.  *See, e.g.*, *Kreisler v. Second Ave. Diner Corp*., No. 10 Civ. 7592, 2013 WL 3965247, at *2 (S.D.N.Y. July 31, 2013) ("[B]ecause the cases cited were decided five to eight years ago, the Court finds that, in light of ordinary inflation, an hourly rate of $400 is reasonable."); *accord. Sajvin v. Singh Farm Corp*., No. 17 Civ. 4032, 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018) ("The passage of time warrants an increase of attorney's fees."), *adopted*, 2018 WL 4211300 (E.D.N.Y. Sept. 4, 2018).  Notably, the cases placing attorneys' rates within the ranges

stated in *Hall* and *Gayle*, for instance, date back over a decade. *See Hall*, 2016 WL 1555128, at *12 (citing *Ferrara v. CMR Cont. LLC*, 848 F.Supp.2d 304, 313 (E.D.N.Y. 2012)); *Gayle*, 2020 WL 4381809, at *3 ("The hourly range for experienced labor and employment lawyers practicing in this district has held steady at least since . . . 2013."). "[C]ourts in more recent [complex] cases have awarded rates that have ranged from approximately $375 to $630 for partners, $200 to $400 for associates, and $100 to $125 for paralegals." *Kurtz v. Kimberly-Clark Corp.*, No. 14 Civ. 1142, 2024 WL 184375, at *14 (E.D.N.Y. Jan. 17, 2024) (cleaned up; collecting cases). As a result, it is reasonable for Class Counsel's lodestar estimate to use rates in the higher end of the bracket's set forth in *Hall* and *Gayle*, given the passage of time. *See McLaughlin v. IDT Energy*, No. 14 Civ. 4107, 2018 WL 3642627, at *17, n. 23 (E.D.N.Y. July 30, 2018) (recommending rates above 2014 rates, including $550 for partners with 30-plus years of experience and $450 an hour for partners with ten-plus years).

### C. The Fee's Reasonableness is Highlighted by Alternative Calculation Methods.

Even if the Court determines that Class Counsel over relied on partners and experienced associates in accumulating 221.1 in attorney-only hours (*see* Kaske Decl. ¶ 42), using a modest rate of $300 an hour shows that the fee is reasonable. *See, e.g.*, *Chodkowski v. Cnty. of Nassau*, No. 16 Civ. 5770, 2021 WL 3774187, at *6 (E.D.N.Y. Aug. 25, 2021) ("Using a blended hourly rate of $272.40 an hour to determine that one-third fee in FLSA settlement was reasonable."); *Toribio v. Abreu*, No. 18 Civ. 1827, 2018 WL 6363925, at *10 (E.D.N.Y. Nov. 15, 2018) (recommending a blended rate for two attorneys in FLSA default judgment award at $350 an hour), *adopted*, 2018 WL 6335779 (E.D.N.Y. Dec. 4, 2018). That is, 221.1 hours at $300 an hour results in a lodestar of $66,330 and a multiplier of 2.01. And, even reducing the hours to 200, for duplicative billing and the like, the resulting lodestar of $60,000 is only a 2.22 multiplier – all before preliminary approval. *See, e.g.*, *Hall*, 2016 WL 1555128, at *17 (awarding 2.08 multiplier).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant this Motion for Preliminary Approval of Settlement, enter the Proposed Order (Ex. I), and schedule a Fairness Hearing approximately 160 days after the Court issues the Preliminary Approval Order.

Dated: Melville, New York
        January 3, 2025

Respectfully submitted,

By: _____
        Garrett Kaske

Troy L. Kessler
Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, NY 11747
Telephone: (631) 499-9100
tkessler@kesslermatura.com
gkaske@kesslermatura.com

Delmas A. Costin, Jr.
**THE LAW OFFICE OF**
**DELMAS A. COSTIN, JR., PC**
930 Grand Concourse, Suite 1B
Bronx, NY 10451
Telephone: (718) 618-0589
dacostin@dacostinlaw.com

*Attorneys for Plaintiffs and the*
*Putative FLSA Collective and Class*