UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

BRIANNA CAMPBELL, SHAKEIM ROBINSON, and  :
KEVAUGHN ROBINSON on behalf of themselves and  :
others similarly situated,  : Case No. 22 Civ. 2813 (PK)

                              Plaintiffs,  :
       :

     - against -  :
       :

BUKHARI GROUP LLC, NAFEES BUKHARI, an  :
individual, ALI BUTT, an individual, 4399 BRONX  :
CHICKEN LLC, BAYCHESTER CHICKEN BG LLC.,  :
3555 WHITE PLAINS BG LLC, 3411 JEROME AVE  :
CORP., and CONEY FOOD OF NY LLC,  :
       :

                           Defendants.  :

------------------------------------------------------------------------X

## DECLARATION OF GARRETT KASKE
## IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR
## <u>PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT</u>

Garrett Kaske, hereby declares under penalty of perjury:

1.     I am a partner of the law firm of Kessler Matura P.C. ("KM"), co-counsel, along with The Law Office of Delmas A. Costin, Jr., PC ("DAC") (with KM, "Class Counsel"), for Plaintiffs and the putative class and collective action in the above-captioned action.

2.     I am familiar with the facts and circumstances of this action. I submit this declaration to place before the court relevant documents and information in support of Plaintiffs' Renewed Motion for Preliminary Approval of the Class Action Settlement.

### <u>Kessler Matura P.C.'s Qualifications</u>

3.     Attached as **Exhibit B** is the CV of Troy L. Kessler, which includes an overview of KM's firm history. Attached as **Exhibit C** is my CV.

4.     Kristine Jimenez is employed as bilingual (English and Spanish) paralegal by KM. Ms. Jimenez started with our firm in May 2018. In this role she regularly interviews potential

and existing clients, translates for our English-speaking attorneys, assists in drafting, and handles administrative matters at the firm.   Previously, Ms. Jimenez has been employed by law firms as a paralegal since approximately March 2014.  Immediately prior to joining our firm, she was employed by Donald Leo & Associates from approximately September 2017 through April 2018.

5.      In *Garcia v. Pancho Villa's of Huntington Village*, the Honorable E. Thomas Boyle, U.S.M.J., certified the matter as a class action stating that KM's attorneys "are experienced labor and employment litigators, who have successfully represented employees in numerous collective and class action lawsuits."  281 F.R.D. 100, 107 (E.D.N.Y. 2011).

6.      In *Rodriguez v. Joseph Eletto Transfer, Inc*., the Honorable Jefferey S. Brown, J.S.C., approved a class action settlement finding that KM's attorneys and co-counsel have "significant experience prosecuting employment class actions and their work performed in representing the interests of the class members."  2016 NY Slip Op 32592(U), at *3 (Sup. Ct. Dec. 15, 2016).

7.      In *Morris v. Affinity Health Plan*, the Honorable Andrew L. Carter, Jr., U.S.D.J., certified a class action and approved a class action settlement stating that KM's attorneys and co-counsel has "substantial experience prosecuting and settling wage and hour actions, are well-versed in wage and hour and class action law, have been class or lead counsel in numerous wage and hour class and collective actions."  859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012).  Moreover, Judge Carter determined that our attorneys are "experienced employment lawyers with good reputations among the employment law bar . . . [and] substantial experience prosecuting large-scale wage and hour class and collective actions."  *Id*. at 622.

8.      In *Dawson v. Sterling Bancorp., Inc.*, the Honorable Linda Kevins, J.S.C., preliminary approved a class action settlement involving unpaid overtime claims for assistant

branch managers of a bank. 2020 WL 6686606 (Sup. Ct. Oct. 29, 2020). Judge Kevins determined that KM "has substantial experience and is well versed on the subject matter of the lawsuit." *Id.* at *2.

9.      In *Ellison v. Adam Rest Corp.*, the Honorable Conrad D. Singer, J.S.C., certified a class of restaurant workers seeking unpaid minimum wages. 2024 WL 2273524 (Sup. Ct. Apr. 2, 2024). Judge Singer held that KM "holds sufficient qualifications" to serve as class counsel. *Id.* at *3.

10.     As outlined in these decisions and others, courts have repeatedly found that my firm and I have served as adequate counsel in collective and class actions. *See, e.g.*, *Manfredo v. VIP Auto Group of Long Island, Inc.*, No. 20 Civ. 3728, ECF No. 43 (E.D.N.Y. June 27, 2022); *Robinson v. Big City Yonkers*, Inc., No. 600159/16, 2017 N.Y. Slip Op. 30177(U), at *13 (Sup. Ct Jan. 17, 2017); *Rodriguez*, 2016 NY Slip Op 32592(U), at *3; *Bijoux v. Amerigroup New York, LLC*, No. 14 Civ. 3891, 2016 WL 2839797, at *1 (E.D.N.Y. May 12, 2016); *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015); *Garcia v. Pancho Villa's of Huntington Village, Inc.*, No. 09 Civ. 486, 2012 WL 5305694, at *7 (E.D.N.Y. Oct. 4, 2012); *Morris*, 859 F. Supp. 2d at 616, 622; *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216, 2014 WL 3778173, at *8 (S.D.N.Y. July 31, 2014).

## The Instant Action

### *Investigation & Litigation Timeline*

11.     Before filing the litigation, Class Counsel engaged in a robust investigation of the claims, Defendants' businesses and ownership, Defendants' anticipated defenses, the propriety of maintaining class certification through trial, and the risks associated with this litigation. Class Counsel conducted in-depth interviews of Plaintiff Campbell and others, reviewed the employment

records of Plaintiffs Campbell and S. Robinson, performed internet research, and reviewed court filings related to Defendants.

12.    Class Counsel sent Defendants a pre-suit demand letter in July 2021, with the goal of entering into pre-suit settlement discussions. Class Counsel and Defendants' prior counsel then engaged in prolonged settlement negotiations and exchanged class-wide data. Unfortunately, those discussions proved unsuccessful, and Defendants changed counsel.

13.    Thereafter, Plaintiffs filed the Complaint on May 13, 2022, and an Amended Complaint on July 29, 2022. After Defendants answered the Amended Complaint on August 31, 2022, the Parties started on the Court's FLSA discovery order dated May 13, 2022. As a result, the Parties exchanged some preliminary documents and information before mediating with Adam J. Halper on January 6, 2023. The Parties were not able to resolve this matter at that time, despite ample assistance from mediator during and after the mediation.

14.    The Parties then started formal discovery following the February 23, 2023, initial conference. While engaged in paper discovery, Plaintiffs moved for conditional certification of the FLSA collective, fully briefing the matter on May 26, 2023. Plaintiffs also amended the Complaint a second time to include Fair Workweek Law claims and add K. Robinson as a named plaintiff.

15.    Over the course of FLSA discovery and formal discovery, Defendants answered Plaintiff's interrogatories, produced time and payroll data in compliance with the Court's FLSA discovery order, provided information on the class size and weeks worked by Class Members, confidentially produced Defendants' tax records.

16.    For their part, Plaintiffs produced over 900 pages of litigation files, payroll records, schedules, and workplace communications.

17.     All throughout the discovery process, the Parties continued to negotiate and share information related to settlement.

18.     Throughout negotiations, Class Counsel analyzed Defendants' time and payroll data to estimate damages figures for the Class.   Class Counsel also considered the information gleaned from counsel's extensive investigation, including interviews with Plaintiffs, Class Members, and other witnesses, the conditional certification motion papers, and the evidence of potential violations Plaintiffs had in their records.  Plaintiffs shared their damages estimates, their detailed pre-mediation statement, and various settlement letters with Defendants.  Counsel also had numerous conversations and written exchanges about the claims and defenses.

19.     In September 2023, the Parties reached a tentative settlement agreement, which was formalized over the next several months.

20.     The Parties fully executed the "First Agreement" on February 14, 2024.  *See* ECF No. 66-3 (1st Agr.).

21.     Immediately following receipt of the Order Denying the Preliminary Approval Motion, Class Counsel began revising the proposed Notices and Claim Forms and renegotiating the terms of the settlement to address the Court's concerns in the Order and expressed during the Preliminary Approval Hearing.  The Parties discussions concluded in November 2024 and resulted in the execution of the Agreement, attached as **Exhibit A**, in December 2024**.**

<u>**The Settlement**</u>

*Fairness of the Settlement*

22.     The Gross Settlement Fund is a compromise figure.  In reaching the Settlement, Class Counsel carefully evaluated the merits of the case and proposed settlement, the risks of establishing liability and maintaining class certification through Defendants' appeal and any

subsequent trial, and the time, delay, and financial repercussions of trial or appeal. Although Class Counsel believes that Plaintiffs' claims are strong, we recognize the legal, factual, and procedural obstacles to recovery, as Defendants have and will continue to contest Plaintiffs' claims if the action does not settle. Moreover, even if this case were to proceed to trial, Class Counsel recognizes that the apparent strengths of Plaintiffs' claims are no guarantee against a complete or partial defense verdict. Even if a judgment were obtained against Defendants at trial, the relief might be no greater, and indeed might be less, than that provided by the proposed settlement.

23.    As discussed in detail above, the settlement negotiations were always hard fought at arm's-length, and they have produced a result that Class Counsel believes to be in the Class's best interest, in light of the costs and risks of continued litigation.

24.    Defendants deny Plaintiffs' allegations and contend that they paid all their employees consistent with the federal, state, and city wage-and-hour laws. To fully succeed in this case, Plaintiffs will have to rebut Defendants' anticipated defenses, including that Class Members: (1) were paid for all hours worked, including meals and unscheduled hours; (2) did not consistently work overtime, as many employees were part-time or limited to less than 40 hours a week; (3) were paid overtime at the proper rate, were paid above the minimum wage for all hours, and received spread-of-hours pay; (4) lack standing to bring the Section 195 claims; (5) were provided schedules on a timely basis; and (6) were provided accurate wage notice and paystubs.

25.    Defendants also contest Plaintiffs' claim that the corporate Defendants are a single enterprise and joint employers, and that the individual Defendants are employers under the FLSA and NYLL who would be personally liable. Relatedly, Defendants have unique defenses for various Class Members based on their circumstances, including the various job titles at issue, the

differences between part-time and full-time employees, and the varying employment practices at the different restaurants and under different store managers.

26.    By Class Counsel's estimation, the fund represents approximately 10% of Class Members' claims, divided as follows:

| Unpaid Overtime & Regular Pay (incl. 100% Liq. Dmgs.) | Spread of Hours (incl. 100% Liq. Dmgs.) | Wage Notice | Wage Statement | Fair Workweek Claims | Total |
|---|---|---|---|---|---|
| $1,693,058.82 | $154,792.98 | $430,200.00 | $1,399,000.00 | $249,080.59 | $3,926,132.40 |

These estimates assume the average Class Member would be entitled to one additional hour of pay per shift, $75 per week under the Fair Workweek Law, all applicable damages under (up to $10,000 total) under Section 195, spread-of-hours pay at the rate of 0.046 per shift, and full liquidated damages. To calculate these estimates, Class Counsel considered the weeks worked by each Class Member, using Defendants' data, and the total number of workweeks at issue. Class Counsel also considered the average number of shifts worked by Class Members over the course of an average week at Defendants' stores (~62 storewide), based on Class Counsel's review of schedules in Plaintiffs' possession. Furthermore, Class Counsel determined the estimated frequency of spread-of-hours shifts based on counsel's review of the Plaintiffs' time and payroll records and the schedules reviewed. Removing the Section 195 claims from the equation, given the concerns over whether plaintiffs in cases like this have standing to bring to wage notice and statement claims, the fund represents approximately 19% of the $2,096,932 in remaining damages. The settlement also represents 43.29% of the unpaid wages at issue here, as the estimated unpaid overtime, regular pay, and spread-of-hours pay is $923,925.90 when liquidated damages are backed out of the

summary chart above, and 34.1% of the unpaid wages and unpaid Fair Work Week premiums ($1,173,006.49 total).

27.     Considering the strengths and weaknesses of the case, Class Counsel believes the settlement easily falls within the range of reasonableness because it achieves a significant benefit for Plaintiffs and Class Members in the face of significant obstacles.

28.     As a result, this settlement achieves all the objectives of the litigation, namely a substantial monetary settlement to approximately 470 Class Members who were subjected to Defendants' allegedly unlawful wage and hour policies.

***Other Agreements***

29.     There are no other agreements between the Parties aside from the Agreement.

***Settlement Allocation***

30.     The Agreement provides for a pro rata allocation based on the value of their claims. The allocation formula works on a point-system keyed to each Class Members' gross earnings. This method fairly approximates the value of the Class Members' claims because the employees who worked more, and earned more wages, were more likely to be subjected to wage violations.

***The FLSA Collective Members' Consents***

31.     Within 15 days after the close of the Notice Period, Class Counsel will file all opt-outs, objections, and FLSA Claim Forms on the docket.  Ex. A (Agr.) § 3.1(F).  For privacy reasons, Class Counsel will redact the FLSA Collective Member's addresses from the Claim Forms before docketing.

## Settlement Administrator

32.     KM solicited bids from trusted settlement administrators in advance of setting the maximum settlement administration amount of $12,500 in the Agreement.

33.     In proposing and selecting Xpand Legal, KM considered its own experience working with Xpand Legal and their principal, the reasonableness of their bid, and their reputation in the industry.

**Contributions to the Class by Plaintiffs and Other Service Awards Recipients**

34.     Plaintiffs, Opt-In Plaintiff Kayla Brathwaite, and Class Member Lakyra Lovell made important contributions to the prosecution and fair resolution of this action on behalf of the Class.

35.     Plaintiffs and Opt-In Plaintiff faced significant risk by publicly filing claims against their former employer.  In other cases, KM's clients have reported difficulty getting hired after filing a lawsuit like this, whether because of employer blackballing or putative employers seeing the case docket at the top of a Google search.  Recently, a plaintiff in a class action case was disparaged by other employees and members of her community on Facebook after the defendant in that case posted about the case.  Unfortunately, before the post was deleted, it received significant traction on Facebook:  276 individuals "Liked" the post, there were 117 comments made, and 56 individuals shared it.

36.     Plaintiffs, Opt-In Plaintiff, and Lovell worked diligently to achieve this class-wide recovery.  They worked with Class Counsel to investigate the claims, draft the complaints, prepare Plaintiffs' motion for conditional certification, prepare for the Parties' mediation, and participated in discovery.  Plaintiffs and Opt-In Plaintiff provided mandatory disclosures pursuant to the Court's FLSA Order, dated May 13, 2022.  Plaintiff Campbell also provided interrogatory responses.  Plaintiffs participated in the mediation and Opt-In Plaintiff and Lovell helped Class Counsel prepare for the mediation.  Further, Plaintiffs reviewed and executed the Agreement.

37. Plaintiffs, as the named plaintiffs, through their active participation in this lawsuit and their actions before bringing this suit, have demonstrated that he sought to protect the interests of all Class Members. Class Counsel is not aware of any conflicts between Plaintiffs and the Class Members.

38. Plaintiffs, Opt-In Plaintiff, and Lovell are also providing Defendants with additional consideration – enhanced releases – in exchange for the proposed Service Payments.

### Attorneys' Fees and Costs

39. Class Counsel's significant experience prosecuting wage-and-hour matters on behalf of individuals and classes was directly responsible for bringing about the positive settlement and weighs in favor of approval of that portion of the Settlement that represents attorney's fees. *See supra* ¶¶ 3-11; Ex. D (Costin Decl.) ¶¶ 4-6.

40. KM and DAC have spent over 250 hours litigating and settling this case. These hours were compiled from contemporaneous time records. *See* Ex. G (Summary); Ex. G (KM Time) (running through November 19); Ex. D (Costin Decl.) ¶ 16; Ex. D-1 (DAC Time) (running through November 26). KM and DAC have continued and will continue to invest significant time on this case, including continuing to seek preliminary approval of this settlement, overseeing the notification of the class, seeking final approval, and overseeing its administration.

41. KM used billing judgment in compiling our contemporaneous time records and calculating our total lodestar. For instance, KM excluded or reduced the time our attorneys spent performing administrative tasks, such as e-filing, copying, scanning, or preparing hard-copy materials, which could have been performed by support staff at a lesser hourly rate. KM reduced 9.1 hours of Mr. Kessler's (TK) recorded time to zero, to account for potential duplication of efforts. KM also reduced the time spent by legal assistant Grismaldy Rosario (GR), paralegal

Madelyn Howarth (MH), and associate Jocelyn Small (JS) to zero because their involvement, though important, in this matter was limited.  In all, KM reduced the time used in calculating our lodestar by 13.7 hours (approximately 6% of KM's reported time).  *See* Ex. F (Summary); Ex. G (KM Time) ("NetHrs" column denotes reductions to hours reported in the "RawHrs" column).

42.     KM and DAC's total adjusted lodestar, as of November 2024, exclusive of costs, was $101,885.  *See* Ex. F (Summary); *see also* Ex. D (Costin Decl.) ¶ 16 (noting downward adjustment of lodestar).  As a result, the requested fee is about 1.31 times the lodestar.  This is based on the downwardly adjusted 217.4 hours from KM (including 203.7 attorney hours) and 20 hours for DAC (including approximately 17.4 attorney hours).  *See id*.

43.     Although much of KM's work is on a contingent or hybrid fee arrangement, KM has hourly clients.  For these clients, KM's ordinary and regular billing rates are within the following ranges: $725 to $500 per hour for partners, $475 and $325 per hour for associates, and $150 to $100 per hour for paralegals and legal assistants.  For example, before becoming a partner on October 1, 2024, I worked on an unpaid wages matter from July through December 2022 for which KM billed $400 an hour for my services.

44.     With regards to contingency fee cases, for purposes of the crosscheck, New York courts have approved wage-and-hour settlements in which KM's attorneys submitted lodestar calculations using rates similar to those included here.  For instance, in approving a FLSA settlement the Court held that KM's attorneys' "hourly rates . . . fall within the range of reasonable rates within the Eastern District of New York."  *Nunes v. Rob-Glen Enters., Inc*., No. 16 Civ. 6207, 2018 WL 3351798, at *2 (E.D.N.Y. July 5, 2018).[1]  Other examples include:

---

[1]     *See* Summary of Attorneys' Fees, *Nunes v. Rob-Glen Enters., Inc*., No. 16 Civ. 6207, ECF No. 41-3 (E.D.N.Y. June 5, 2018) (calculating lodestar using the following rates for KM's

a. *Lucente v. EAD Entertainment, LLC*, No. 23 Civ. 3560, ECF No. 34 (E.D.N.Y. Nov. 7, 2024) (Ex. H (*Lucente* Tr.)) (approving KM's motion for approval of class and collective action settlement);

b. *Norfleet v. RevCore Recovery Ctr. Manhattan LLC*, No. 617754/2023, NYSCEF No. 18 (Sup. Ct. Jan 19, 2024) (approving KM's motion for approval of class action settlement);

c. *Manfredo v. VIP Auto Group of Long Island, Inc.*, 2:20 Civ. 3728, ECF No. 47 (E.D.N.Y. Jan. 23, 2023) (granting final approval of class an collective action settlement in overtime case);

d. *Lopez v. New York Community Bancorp, Inc.*, 2:20 Civ. 2741 (E.D.N.Y. Oct. 7, 2021) (ECF Order) (granting motion to approve collective action settlement and finding that "the terms of the amended settlement agreement and the attorneys' fees and costs are fair and reasonable");

e. *Meo v. Lane Bryant, Inc.*, No. 18 Civ. 6360, 2020 WL 4047897, at *3 (E.D.N.Y. July 17, 2020) (approving fees based on percentage-of-recovery and lodestar crosscheck, in which the court reviewed billing rates of KM and co-counsel).[2]

---

attorneys: $450 for partner, Troy Kessler, $375 for partner, Marijana Matura, $250 for associate, Tana Forrester, who was three years out of law school at the time).

[2]    Attorneys' Fees & Costs Summary, *Lucente v. EAD Entertainment, LLC*, No. 23 Civ. 3560, ECF No. 32-9 (E.D.N.Y. Oct. 28, 2024) (calculating lodestar using $450 for Garrett Kaske and $150 for Kristine Jimenez.); Attorneys' Fees & Costs Summary, *Norfleet v. RevCore Recovery Ctr. Manhattan LLC*, No. 617754/2023, NYSCEF No. 13 (Sup. Ct. Nov. 14, 2023) (calculating lodestar using $425 for Garrett Kaske (as an associate), and $150 for Kristine Jimenez.); Attorneys' Fees & Costs Summary, *Manfredo v. VIP Auto Group of Long Island, Inc.*, 2:20 Civ. 3728, ECF No. 46-8 (E.D.N.Y. June 6, 2022) (calculating lodestar using $375 for Garrett Kaske); Attorneys' Fees & Costs Summary, *Lopez v. New York Community Bancorp, Inc.*, 2:20 Civ. 2741, ECF No. 54-8 (E.D.N.Y. Sept. 13, 2021) (calculating lodestar using $375 for Garrett Kaske); Attorneys' Fees & Costs Summary, *Meo v. Lane Bryant, Inc.*, No. 18 Civ. 6360, ECF No. 55-4

45.     Pursuant to the one-third contingency retainer agreements with Plaintiffs, KM and DAC have worked without compensation of any kind to date because the fee has been wholly contingent upon the result achieved.

### Documents

46.     Annexed as **Exhibit A** is a copy the Settlement Agreement.

    a.  **Exhibit A-1**: Notice of Class Action Settlement ("NYLL Notice");

    b.  **Exhibit A-2**: Claim Form ("Claim Form");

    c.  **Exhibit A-3**: Service Award Release Form ("Serv. Release Form");

    d.  **Exhibit A-4**: Reminder Notice ("Reminder").

    e.  **Exhibit A-7**: Notice of Class and Collective Action Settlement ("FLSA Notice")

47.     Annexed as **Exhibit B** is Troy L. Kessler's curriculum vitae ("Kessler CV").

48.     Annexed as **Exhibit C** is Garrett Kaske's curriculum vitae ("Kaske CV").

49.     Annexed as **Exhibit D** is the Declaration of Delmas A. Costin, Jr. in Support of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement ("Costin Decl"), including **Exhibit D-**1, DAC's contemporaneous time record submitted ("DAC Time")

50.     Annexed as **Exhibit E** is the Settlement Administrator, Xpand Legal Consulting LLC's CV ("Xpand CV").

51.     Annexed as **Exhibit F** is a is a summary of KM and DAC's attorneys' fees and costs ("Summary").

52.     Annexed as **Exhibit G** are KM's contemporaneous time records ("KM Time").

---

(E.D.N.Y. May 11, 2020) (calculating lodestar using $350 for Garrett Kaske).

53.    Annexed as **Exhibit H** is the transcript from the final fairness hearing, dated November 7, 2024, in *Lucente v. EAD Entertainment, LLC*, No. 23 Civ. 3560 (E.D.N.Y.) ("*Lucente* Tr.").

54.    Annexed as **Exhibit I** is a [Proposed] Order Granting Plaintiffs' Motion for Preliminary Approval of the Cass Action Settlement and Conditional Certification of the Settlement Class ("Proposed PA Ord.").

Dated: January 3, 2025
        Melville, New York

Respectfully submitted,

By: _____
        Garrett Kaske

Troy L. Kessler
Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, NY 11747
Telephone: (631) 499-9100
tkessler@kesslermatura.com
gkaske@kesslermatura.com

Delmas A. Costin, Jr.
**THE LAW OFFICE OF**
**DELMAS A. COSTIN, JR., PC**
930 Grand Concourse, Suite 1B
Bronx, NY 10451
Telephone: (718) 618-0589
dacostin@dacostinlaw.com

*Attorneys for Plaintiffs and the*
*Putative FLSA Collective and Classes*