UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------- x

BRIANNA CAMPBELL, SHAKEIM ROBINSON, and
KEVAUGHN ROBINSON, *on behalf of themselves and others
similarly situated*,

                        Plaintiffs,

             - against -

BUKHARI GROUP LLC, NAFEES BUKHARI, an individual,
ALI BUTT, an individual, 4399 BRONX CHICKEN LLC,
BAYCHESTER CHICKEN BG LLC, 3555 WHITE PLAINS
BG LLC, 3411 JEROME AVE CORP., and CONEY FOOD
OF NY LLC,

                       Defendants.

---------------------------------------------------------------------------- x

**DECISION AND ORDER**

22-CV-2813 (PK)

**Peggy Kuo, United States Magistrate Judge:**

      Before the Court is Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

("Motion," Dkt. 75.)  The parties have consented to the jurisdiction of a United States Magistrate

Judge.  (Dkts. 65, 67.)  For the reasons stated below, the Motion is granted.

<u>BACKGROUND</u>

## I.    <u>Factual and Procedural Background</u>

      The following facts are taken from the Third Amended Complaint ("TAC," Dkt. 62) and the

Declaration of Garrett Kaske ("Kaske Decl.," Dkt. 75-2) submitted in support of the Motion.

      Plaintiffs Brianna Campbell, Shakeim Robinson, and Kevaughn Robinson ("Plaintiffs" or

"Named Plaintiffs") bring this putative class and Fair Labor Standards Act ("FLSA") collective action

against various individuals and corporate entities affiliated with Popeyes Louisiana Kitchen restaurants

("Popeyes") in New York.[1]  Plaintiffs allege violations of the FLSA, 29 U.S.C. §§ 201, *et seq.*, New

---

[1] Campbell was employed by Defendants as a fast-food employee from approximately August 2019 to May
2020, including as a cashier from August 2019 through January 2020.  (TAC ¶¶ 16–23.)  Shakeim Robinson
was employed by Defendants as a fast-food employee from approximately October 2017 through March 2020,

York Labor Law ("NYLL") Articles 9 and 16, and the New York City Fair Workweek Law ("Fair Workweek Law" or "FWWL"), Title 20, Chapter 12 of the New York City Administrative Code. (TAC ¶¶ 4, 9.)

The Defendants remaining in the action are Nafees Bukhari and Ali Butt ("Individual Defendants"), and Bukhari Group LLC, 4399 Bronx Chicken LLC, Baychester Chicken BG LLC, 3555 White Plains BG LLC, 3411 Jerome Ave Corp., and Coney Food of NY LLC ("Corporate Defendants," together with Individual Defendants, "Defendants"). Individual Defendants allegedly control the Corporate Defendants, which own and operate the relevant Popeyes locations. (*Id.* ¶¶ 1–3.)

The TAC alleges that Defendants had a common policy of denying proper wages to their employees. (*Id.* ¶ 4.) Defendants allegedly failed to pay Plaintiffs and other employees minimum wages, spread-of-hours wages, and overtime compensation, and also failed to provide employees with hiring notices and accurate wage statements. (*Id.* ¶¶ 186–87, 192–99.) Plaintiffs further allege that Defendants regularly failed to timely provide Kevaughn Robinson and other employees with a written work schedule and to pay premiums for schedule changes, in violation of the Fair Workweek Law. (*Id.* ¶¶ 43–46, 206.)

On February 15, 2024, with Defendants' consent, Plaintiffs filed their first Motion for Preliminary Settlement Approval. ("First Motion," Dkt. 66.)[2] The First Motion sought preliminary approval of the settlement agreement; conditional certification, for settlement purposes only, of the proposed FLSA collective and proposed settlement class under Fed. R. Civ. P. 23(b)(3); appointment

---

including as a manager beginning in September 2018. (*Id.* ¶¶ 24–34.) Kevaughn Robinson was employed by Defendants as a fast-food employee from approximately November 2019 through September 2021. (*Id.* ¶¶ 35–47.)

[2] The Court granted Plaintiffs' motion to withdraw their previously-filed FLSA Collective Certification Motion (Dkt. 51). (Apr. 22, 2024 Order.)

of Kessler Matura P.C. ("KM") and The Law Office of Delmas A. Costin, Jr., PC ("DC") as class counsel; appointment of Xpand Legal Consulting LLC as claims administrator; and approval of the proposed notice of settlement and claim form and their distribution. (*See* First Mot.)

On April 26, 2024, after the Court requested more information about the FLSA collective, Plaintiffs submitted supplemental documentation in support of the First Motion, including an amendment to the settlement agreement. (Dkt. 69.) The Court held a Preliminary Approval Hearing on June 21, 2024.

On August 19, 2024, the Court denied the First Motion without prejudice for two principal reasons. ("Decision and Order," Dkt. 72.) First, the agreement provided inadequate relief for class members because each member's recovery percentage was based on the total potential claimants and any funds remaining after distribution would revert to Defendants as an "overpayment." (*Id.* at 9.) Second, the proposed notices contained inaccurate or confusing information and did not clearly explain the process for opting in to the FLSA collective. (*Id.* at 10–11.)

On December 12, 2024, the Court directed the parties to file a joint status report stating how they intended to proceed with this action. (Dec. 12, 2024 Order.) Plaintiffs filed a letter which stated that the parties reached a further agreement and requested leave to file a renewed motion for preliminary approval (Dkt. 73), which the Court granted (Dec. 18, 2024 Order).

Plaintiffs filed the Motion on January 3, 2025, and a motion hearing was held on April 28, 2025. The Court discussed with the parties several terms that remained unclear in the settlement agreement and proposed notices, and granted the parties leave to file an amended settlement agreement and notices, which Plaintiffs filed on May 5, 2025 ("Agreement Amendment," Dkt. 79).

## II.     The Settlement Agreement and Procedure

Pursuant to the Settlement Agreement (or "Agreement," Dkt. 75-3, incorporating the Agreement Amendment), Defendants agree to pay a settlement amount of up to $400,000. (Agmt. ¶¶

1.31, 4.1(A).) After deductions—all of which are subject to Court approval—of up to $133,333.33 for attorneys' fees, $5,000 in expenses, $12,500 for settlement administrator fees, and anticipated service payments of $35,000, the Net Settlement Amount will be distributed as individual settlement payments to Plaintiffs and qualified Class Members, *i.e.*, those Class Members who submit a valid claim and do not opt out. (*Id.* ¶¶ 1.16, 1.24, 4.2, 4.3, 4.6.)

The Settlement Agreement provides that the "Settlement Administrator shall determine, subject to Class Counsel's review, each Class Member's estimated proportionate share of the Net Settlement Fund before issuing [the] Notice[s] and then determine the Individual Settlement Payment for each Qualified Class Member and FLSA Collective Member after the Final Approval Order is issued." (Agmt. ¶ 4.4(B).) The Agreement describes the method by which the Settlement Administrator will make its calculations:

> Each Class Member's proportionate share shall be determined by (a) multiplying the estimated Net Settlement Fund by (b) the individual's allocation points divided by the total allocation points for the Class. . . The points will be calculated by awarding each Class Member one point for each dollar of gross wages Defendants paid to that Class Member during the Relevant Period (for weeks between May 13, 2019, through the end of the Relevant Period, Putative FLSA Collective Members' points shall be attributed to the NYLL claims and FLSA claims at a ratio of 4:1), increased by 1/10th based on the number of weeks employed between April 14, 2021 and the end of the Relevant Period.

Agmt. ¶¶ 4.4(B)(1)–(2). Both the proposed notices ("Collective Notice," Dkt. 79-4; "Class Notice," Dkt. 79-1; collectively, the "Notices") and the proposed claim form ("Claim Form," Dkt. 79-2) include this estimated settlement payment amount.

If the Court approves the Agreement, the final payments will be recalculated using the same methodology but including any:

> funds attributable to the FLSA claims of the Putative FLSA Collective Members who did not submit Claim Forms [which] shall be reallocated to all Qualified Class Members and FLSA Collective Members; funds attributable to the NYLL claims of Class Members who opted out

> [which] shall be reallocated to all Qualified Class Members and FLSA
> Collective Members; and any other adjustments made to the Net
> Settlement Fund, such as a reduction in attorneys' fees awarded.

(Agmt. ¶¶ 4.4(B)(3).)  In response to concerns expressed by the Court at the April 28, 2025 hearing, the Agreement has been amended to state that the final payment allocation formula "will be recalculated to account for the actual amount of fees, costs, and Service Payments approved by the Court and the denominator will be the sum of all points allocated to qualified Class Members and FLSA Collective Members."  (Agmt. Amendment at 2.)

Checks for settlement payments and service payments must be redeemed either 120 days after the check is issued or 30 days after a check is re-issued, whichever is greater.  (Agmt. ¶ 4.4(F).)  Any "funds remaining in the Escrow Account, resulting from uncashed checks" will be donated to a *cy pres* designee, subject to Court approval.  (*Id.* ¶ 4.5(A).)

In resolution of the NYLL and FWWL claims, the Settlement Class, comprised of 470 individuals, is defined as "all individuals employed [by] Defendant[s] New York 4399 Bronx Chicken LLC, Baychester Chicken BG LLC, 3555 White Plains BG LLC, 3411 Jerome Ave Corp., or Coney Food of NY LLC at any time during the Relevant Period [May 13, 2016 through July 29, 2022], as non-exempt fast-food employees."  (Agmt. ¶¶ 1.5, 1.27; *see also* Kaske Decl. ¶ 28.)

The proposed "FLSA Collective" is defined as "all Class Members employed by Defendants at any time from May 13, 2019, through the end of the Relevant Period who opt in to the collective action by way of the Claim Form."  (Agmt. ¶ 1.32.)  The proposed Claim Form states that submission of the form indicates that the claimant consents to join the case under the FLSA and releases any right to sue Defendants under the FLSA for overtime claims arising before July 29, 2022.  (Dkt. 79-2.)

## LEGAL STANDARDS

### I.    Rule 23 Class Action Settlement Approval

"A class action settlement approval procedure typically occurs in two stages: (1) preliminary approval—where 'prior to notice to the class, a court makes a preliminary evaluation of fairness,' and (2) final approval—where 'notice of a hearing is given to the class members, [and] class members and settling parties are provided the opportunity to be heard on the question of final court approval.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019) (alteration in original) (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-CV-5450 (NRB), 2016 WL 7625708, at *2 (S.D.N.Y. Dec. 21, 2016)).

Under Federal Rule of Civil Procedure Rule 23(e), in considering a motion for preliminary approval of a proposed settlement, a court must consider whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i–ii). Factors relevant to the Court's decision as to whether to approve a proposed class action settlement include "(1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (citing Fed. R. Civ. P. 23(e)(2)).

Courts look to the nine "*Grinnell* factors to fill in any gaps and complete the analysis." *Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-CV-456 (RPK)(LB), 2021 WL 7906584, at *5 (E.D.N.Y. May 25, 2021) (collecting cases), *R&R adopted*, Order dated Nov. 22, 2021. These include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible

recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *accord Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013).

## II.  **FLSA Collective Settlement Approval**

Under the FLSA, employees may pursue collective actions to recover unpaid wages where the employees are "similarly situated" and give consent to become a party in a writing filed with the court. 29 U.S.C. § 216(b); *see also Douglas v. Allied Universal Sec. Servs.*, 371 F. Supp. 3d 78, 85–86 (E.D.N.Y. 2019) (quoting *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008)).  A district court may "implement § 216(b) by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (internal quotation marks omitted).

Parties may not privately settle FLSA claims without the approval of the Department of Labor unless the district court approves the settlement agreement as "fair and reasonable."  *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015); *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 807 (2d Cir. 2022).  To determine whether a settlement is fair and reasonable under the FLSA, the Court must:

> consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335 (internal quotations omitted).

Courts typically conduct a "*Cheeks* review" of a FLSA collective action settlement after collective members have opted in. *Douglas*, 371 F. Supp. 3d at 86 (holding that a settlement agreement is "backwards" if it requires the Court to "conduct final *Cheeks* review before any member of the collective has opted in"). However, courts have declined to approve a preliminary settlement agreement of a FLSA collective and Rule 23 class if the agreement does not comply with the FLSA. *See, e.g.*, *id.* (denying motion to certify class for settlement purposes and preliminary approval of class settlement because of structural and legal deficiencies); *Chen v. XpresSpa at Terminal 4 JFK LLC*, No. 15-CV-1347 (CLP), 2018 WL 1633027, at *7 (E.D.N.Y. May 30, 2018) (denying motion to certify a settlement class because the agreement did not meet the requirements of *Cheeks*); *Olibares v. MK Cuisine Global LLC*, No. 21-CV-10694 (VSB), 2023 WL 5702595, at *5 (S.D.N.Y. Sep. 5, 2023) (same).

## DISCUSSION

### I.  Rule 23(e)(2) Factors

#### A. Adequate Representation by Class Representatives and Class Counsel (Rule 23(e)(2)(A))

In determining the adequacy of representation by class representatives and class counsel, courts consider "whether (1) plaintiff's interests are antagonistic to the interest[s] of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG)(RER), 2021 WL 1259559, at *4 (E.D.N.Y. Jan. 6, 2021) (alteration in original) (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)).[3] "An adequate class representative is one who has 'an interest in vigorously pursuing the claims of the class' and 'no interests antagonistic to the interests of other class members.'" *Id.* (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). "Courts find class counsel

---

[3] "Because this factor is 'nearly identical to the Rule 23(a)(4) prerequisite of adequate representation in the class certification context,'" the Court's consideration of this factor is guided by Rule 23(a)(4) case law. *Mikhlin*, 2021 WL 1259559, at *4 n.3 (quoting *In re Payment Card*, 330 F.R.D. at 30 n.25).

qualified when they are experienced and 'knowledge[able] in the area of complex class actions.'" *Cymbalista*, 2021 WL 7906584, at *5 (alteration in original) (quoting *In re Payment Card*, 330 F.R.D. at 33).

The parties seek preliminary approval of Plaintiffs as representatives of the Settlement Class. Plaintiffs state that their interests are not antagonistic to or at odds with the Class Members' interests. (Pls. Mem. at 8, Dkt. 75-1.)

Plaintiffs have vigorously pursued the interests of the Settlement Class, assisting Class Counsel to "investigate the claims, draft the complaints, prepare Plaintiffs' motion for conditional certification, prepare for the Parties' mediation, participate[] in discovery, and review[] the Agreement." (Pls. Mem. at 20; *see also* Kaske Decl. ¶ 36.)

The Court finds, therefore, that Plaintiffs are adequate class representatives whose interests are not antagonistic to those of the Settlement Class members.

Plaintiffs seek appointment of KM and DC as class counsel. (Pls. Mem. at 18.) Rule 23 provides that "a court that certifies a class must appoint class counsel" and "must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; [and] (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.

Fed. R. Civ. P. 23(g)(1).

Plaintiffs state that these firms "have done substantial work identifying, investigating, litigating, negotiating, and settling" the claims in this action. (Pls. Mem. at 19.) Moreover, Plaintiffs contend that they are "experienced [in] prosecuting and settling employment matters, including wage and hour actions." (*Id.*) Other courts in this district have found Kessler Matura P.C. and its predecessor, Shulman Kessler, to be adequate class counsel. *See, e.g.*, *Puglisi v. TD Bank, N.A.*, No. 13-CV-637

(LDW)(GRB), 2015 WL 574280, at *4 (E.D.N.Y. Feb. 9, 2015); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 107 (E.D.N.Y. 2011); *Sukhnandan v. Royal Health Care of Long Island LLC,* No. 12-CV-4216 (RLE), 2014 WL 3778173, at *8 (S.D.N.Y. July 31, 2014) ("The work that [Shulman Kessler as] Class Counsel has performed in litigating and settling this case demonstrates their commitment to the class and to representing the class's interests.") (*See also* Kaske Decl. ¶¶ 5–10.)

This factor weighs in favor of preliminary approval. Plaintiffs are appointed Lead Plaintiffs, and KM and DC are appointed as Class Counsel.

### B. Arm's-Length Negotiation (Rule 23(e)(2)(B))

A class settlement "reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation . . . 'enjoy[s] a presumption of fairness.'" *In re GSE Bonds*, 414 F. Supp. 3d at 693 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000)); *accord Mikhlin*, 2021 WL 1259559, at *5.

Lead Plaintiffs state that they reached agreement "after a thorough investigation, motion practice, discovery, and an unsuccessful mediation." (Pls. Mem. at 7.) The Court finds that this settlement was not a product of collusion but instead was reached through arm's-length negotiation between experienced counsel for all parties.

### C. Adequate Relief for the Class (Rule 23(e)(2)(C))

In evaluating whether the proposed settlement provides adequate relief for the class, the Court considers: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including the timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

### 1. <u>Costs, Risks, and Delay of Trial and Appeal</u>

The first factor set forth under Rule 23(e)(2)(C), "the 'costs, risks, and delay of trial and appeal,' 'subsumes several *Grinnell* factors,' including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial." *Mikhlin*, 2021 WL 1259559, at *5 (quoting *In re Payment Card*, 330 F.R.D. at 36); *accord Cymbalista*, 2021 WL 7906584, at *6.

Courts favor settlement when it "results in 'substantial and tangible present recovery, without the attendant risk and delay of trial.'" *In re Payment Card*, 330 F.R.D. at 36 (quoting *Sykes v. Harris*, No. 09-CV-8486 (DC), 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016) (citation omitted)). Class action lawsuits "have a well-deserved reputation as being most complex." *Id.* (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (citation omitted)); *see also Garland v. Cohen & Krassner*, No. 08-CV-4626 (KAM)(RLM), 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011) ("Given the complexity of any class action lawsuit . . . it is reasonable to assume that absent the instant Settlement, continued litigation would have required extensive time and expense.").

"In considering the risks of establishing liability, the court 'need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'" *Mikhlin*, 2021 WL 1259559, at *5 (quoting *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)). "Settlement is favored in cases in which 'plaintiffs would have faced significant legal and factual obstacles to proving their case.'" *Id.* (quoting *In re Glob. Crossing Sec.*, 225 F.R.D. at 459).

The parties have engaged in substantial discovery and settlement negotiations. (*See* Kaske Decl. ¶¶ 11–21; Pls. Mem. at 7.) Throughout the litigation, Defendants have strongly disputed liability for all damages claimed by Lead Plaintiffs and have disputed the appropriateness of collective and class treatment. (Pls. Mem. at 13–14; *see* Agmt. ¶ 2.5.)

Lead Plaintiffs recognize the risk of establishing liability and damages and of certifying the class. (Pls. Mem. at 12–14.) The settlement amount constitutes approximately 10% of the total possible recovery or 43% of the maximum amount of unpaid wages. (*Id.* at 15–16.) These estimates, however, "assume[] significant success in the face of the uncertainties of litigation." (*Id.* at 15.)

Lead Plaintiffs also state that, while they "believe[] Defendants could possibly afford a greater judgment, Class Counsel's review of Defendants' taxes and research into their business and assets weighed on the decision to settle for the Settlement Amount." (*Id.* at 14.)

The Court agrees that the settlement represents a favorable outcome, and that in light of the claims and defenses of the parties, the risks and uncertainties of litigation, and Defendants' potential inability to pay a higher judgment, the *Grinnell* factors suggest that the proposed settlement is fair, reasonable, and adequate.

## 2. Effectiveness of Proposed Method of Distributing Relief

A court must consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "A plan for allocating settlement funds 'need not be perfect[,]'" and "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Mikhlin*, 2021 WL 1259559, at *6 (internal quotations omitted).

The parties have outlined a proposed method of distributing relief to the class that is reasonably and rationally based upon gross wages earned by each class member during the relevant period. (*See* Agmt. ¶ 4.4.) The proposed notices describe the terms of the Settlement Agreement and provide clear explanations of how to make a claim, opt out of the class, or object. (*See* Class Notice; Collective Notice.) The distribution plan appears fair and equitable.

This factor, therefore, weighs in favor of preliminary approval.

### 3. **Terms of Proposed Award of Attorneys' Fees, Including Timing of Payment**

"When analyzing the proposed settlement agreement for final approval, this Court will review Plaintiffs' application for attorneys' fees, taking into account the interests of the class." *Hart v. BHH, LLC*, 334 F.R.D. 74, 79 (S.D.N.Y. 2020). One method for calculating attorneys' fees, which is the trend in this Circuit, is the "'percentage of the fund' method." *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 384 (S.D.N.Y. 2017). Under this method, the Court considers whether the requested fees are reasonable as compared to the settlement amount. *Id.* at 385. Factors to consider include fees awarded in similar cases, the risks to Class Counsel, and the lodestar calculation. *Id.* at 384 (citing *Goldberger*, 209 F.3d at 43).

Lead Plaintiffs seek preliminary approval of their attorneys' fees in the amount of $133,333.33, "not to exceed one-third of the gross settlement amount" (Pls. Mem. at 21–22.) Plaintiffs have submitted contemporaneous time records for 237.4 hours of work performed as of November 2024. (*See* "Fees and Costs Summary," Ex. F to Kaske Decl., Dkt. 75-8; "KM Fees," Ex. G to Kaske Decl., Dkt. 75-9; "Costin Fees," Ex. 1 to Declaration of Delmas Costin ("Costin Decl.," Ex. D to Kaske Decl., Dkt. 75-6), at 9–17.) Plaintiffs' lodestar total is $104,120, which results in a multiplier of 1.28. (Pls. Mem. at 22.) Counsels' hourly rates range from $700 for Troy Kessler, Esq., to $350 for associate attorneys and $100 for paralegals. (*Id.*) They have submitted materials to support the qualifications of some of the attorneys. (*See* Troy Kessler C.V., Ex. B to Kaske Decl., Dkt. 75-4; Garrett Kaske C.V., Ex. C to Kaske Decl., Dkt. 75-5; Costin Decl.)

Lead Plaintiffs acknowledge that some of the hourly rates they request "are on the high-end" of the range typically approved in this district but contend that prior rates awarded to these attorneys should be adjusted for inflation and that the award would still be approved under the standards in this

district even if the hourly rates were adjusted.  (Pls. Mem. at 24.)  The Court agrees and finds the total amount of attorneys' fees requested to be reasonable for purpose of preliminary approval.

Plaintiffs seek reimbursement for $3,162.62 in costs, which include the filing fee, service of process, mediation, postage, and research.  (Fees and Costs Summary.)  Plaintiffs have not submitted documentation of these costs.

"The fee applicant bears the burden of adequately documenting and itemizing the costs requested."  *Monge v. Glen Cove Mansion Hosp., LLC*, No. 18-CV-7229 (SJF)(SIL), 2020 WL 1666460, at *9 (E.D.N.Y. Apr. 2, 2020) (quoting *Volpe v. Nassau County*, No. 12-CV-2416 (JFB)(AKT), 2016 WL 6238525, at *10 (E.D.N.Y. Oct. 24, 2016)).  "Filing fees are recoverable without supporting documentation if verified by the docket."  *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 219 (E.D.N.Y. 2019).  "Process server fees are also recoverable but must be supported by documentation."  *Id.*

While "reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients" are typically approved by courts, *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987), Plaintiffs must submit documentation of any expenses for which they seek final approval.

This factor weighs in favor of preliminary approval.

### 4.  Equitable Treatment of Class Members Relative to Each Other

A court must consider whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  A court may consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

Other than the service awards sought for five plaintiffs, which are discussed in greater detail below, the proposed plan of allocation treats all claimants uniformly: each claimant will receive a *pro rata* distribution of the Net Settlement Amount based on a formula that accounts for each claimant's gross wages paid during the relevant period. (Agmt. ¶ 4.4(B)(2); *see* Kaske Decl. ¶ 30.) The method of distribution appears fair and reasonable.

This factor, therefore, weighs in favor of preliminary approval.

### D. Remaining Grinnell Factors

The *Grinnell* factors not covered by Rule 23(e)(2)(C)(i) are the reaction of the class to the settlement, the stage of the proceedings and the amount of discovery completed, the ability of the defendants to withstand a greater judgment, the range of the settlement fund in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. A court's consideration of the stage of the proceedings and the amount of discovery completed "is intended to assure the Court 'that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them.'" *In re Glob. Crossing*, 225 F.R.D. at 458 (quoting *Klein ex rel. Ira v. PDG Remediation, Inc.*, No. 95-CV-4954 (DAB), 1999 WL 38179, at *2–3 (S.D.N.Y. Jan. 28, 1999)).

The Court cannot consider the class's reaction to the proposed settlement until after notice has been provided to the class. The Court is, therefore, unable to consider this factor at this stage of the proceedings. *See Mikhlin*, 2021 WL 1259559, at *4 n.2; *Caballero ex rel. Tong v. Senior Health Partners, Inc.*, Nos. 16-CV-0326 (CLP), 18-CV-2380 (CLP), 2018 WL 4210136, at *11 (E.D.N.Y. Sept. 4, 2018).

With regard to the remaining factors, the parties have engaged in discovery, substantial investigation and prosecution of the claims, and lengthy informal and formal settlement negotiation. (Pls. Mem. at 13.) Plaintiffs state that while Defendants might be able to pay a larger settlement amount, "Class Counsel's review of Defendants' taxes and research into their business and assets"

was a factor in their decision to settle for this amount. (Pls. Mem. at 14.) In recent years, courts have granted approval to settlements whose awards constituted percentages of the best possible recovery similar to Lead Plaintiffs' estimate of ten percent. *See, e.g.*, *D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21-CV-3334 (JMW), 2023 WL 4838156, at *7–8 (E.D.N.Y. July 28, 2023) (granting final approval of a settlement fund of 5% of potential maximum damages); *Rosario v. EMZ Solutions LLC*, No. 18-CV-3297 (RPK)(CLP), 2020 WL 8413532, at *7 (E.D.N.Y. Aug. 7, 2020) (granting preliminary approval of a settlement fund representing approximately 22% of the maximum potential recovery, calculated without liquidated damages or statutory penalties but before removing attorneys' fees), *R&R adopted*, 2020 WL 7777955 (E.D.N.Y. Dec. 31, 2020).

As a result, the remaining *Grinnell* factors weigh in favor of preliminary approval.

## II.    Preliminary Certification of Rule 23 Settlement Class

Plaintiffs move to provisionally certify, for settlement purposes, a class comprised of "all individuals employed [by] Defendant New York 4399 Bronx Chicken LLC, Baychester Chicken BG LLC, 3555 White Plains BG LLC, 3411 Jerome Ave Corp., or Coney Food of NY LLC at any time during the Relevant Period, as non-exempt fast-food employees." (Agmt. ¶ 1.5.) Defendants consent to this request. (*Id.* ¶ 2.5(B).)

"The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement." Fed. R. Civ. P. 23 advisory committee's note to 2018 Amendment. The Court may, however, grant preliminary approval when it will "likely be able to . . . certify the class for purposes of judgment on the proposal." *In re Payment Card*, 330 F.R.D. at 50 (omission in original) (emphasis removed) (quoting Fed. R. Civ. P. 23(e)(1)(B)(ii)).

To qualify for certification, a class must meet the prerequisites set forth in Rule 23 of the Federal Rules of Civil Procedure. A plaintiff seeking certification under Rule 23 has the burden to establish (1) numerosity, (2) commonality, (3) typicality, (4) adequacy of representation, (5) superiority

of the class action over other procedures, and (6) predominance. *Mazzei v. Money Store*, 829 F.3d 260, 270 (2d Cir. 2016); *see* Fed. R. Civ. P. 23(a), (b)(3). The Second Circuit has also recognized an implied requirement of ascertainability. *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015) ("Like our sister Circuits, we have recognized an 'implied requirement of ascertainability' in Rule 23 of the Federal Rules of Civil Procedure." (citation omitted)); *see also Collins v. Anthem, Inc.*, No. 20-CV-01969 (SIL), 2024 WL 1172697, at *6 (E.D.N.Y. Mar. 19, 2024).

To certify a class, a district court must definitively assess each class certification element and find that each requirement is "established by at least a preponderance of the evidence." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013) (quoting *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010)).

### A. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The parties estimate that the class is composed of approximately 470 individuals. (Kaske Decl. ¶ 28.) Given that joinder of all 470 is presumptively impractical, the Court finds that numerosity is satisfied.

### B. Commonality

Under Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The questions must be capable of "class[-]wide resolution—which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (alteration in original) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

Plaintiffs contend that the Class Members "all share the common contentions that they were [fast-food workers] who were improperly denied lawful wages and compliant paystubs." (Pls. Mem.

at 17; *see also* Amended Compl. ¶¶ 210–40.) These types of common questions are sufficient to satisfy commonality. *See Lora v. To-Rise, LLC*, 452 F. Supp. 3d 5, 11 (E.D.N.Y. 2019) (commonality requirement satisfied where the class members shared the common issues of fact and law regarding whether the defendants failed to pay them wages in violation of state wage and hour laws).

### C. Typicality

The requirement for typicality is met "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997) (per curiam). "The commonality and typicality requirements often 'tend to merge into one another, so that similar considerations animate analysis' of both." *Brown*, 609 F.3d at 475 (quoting *Marisol A.*, 126 F.3d at 376). "The crux of both requirements is to ensure that maintenance of a class action is economical and that the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Kaye v. Amicus Mediation & Arb. Grp., Inc.*, 300 F.R.D. 67, 78 (D. Conn. 2014) (quoting *Marisol A.*, 126 F.3d at 376 (alterations and citations omitted)).

Lead Plaintiffs' claims, and those of each Class Member, arise from their allegations that Defendants did not pay lawful wages for all hours worked, including overtime premiums, as well as Defendants' alleged failure to provide accurate wage notices and wage statements and pay scheduling change premiums. (Pls. Mem. at 17.)

The Court finds that the claims are so interrelated that the class claims will be fairly and adequately protected by Lead Plaintiffs. The typicality requirement, therefore, is satisfied.

### D. Adequacy

In assessing adequacy, "the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'" *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F.

App'x 760, 764 (2d Cir. 2020) (quoting *Denney*, 443 F.3d at 268). "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997).

Having determined that Lead Plaintiffs are adequate representatives of the class, *supra* Discussion § I(A), the Court finds that the adequacy requirement is met.

### E.  Ascertainability

The implied requirement of ascertainability demands "only that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec. Litig.*, 862 F.3d 250, 264 (2d Cir. 2017). The parties have agreed that Defendants will provide a class list of the 470 Class Members. (Agmt. ¶ 3; Kaske Decl. ¶ 28.) The putative class, therefore, is easily ascertainable based on Defendants' records.

### F.  Rule 23(b)(3)

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 1.  Predominance

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and is achieved "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (quoting *Amchem*, 521 U.S. at 623).

Here, all members of the Settlement Class suffered the same alleged harms resulting from the same alleged practices, which are subject to generalized proof and applicable to the entire class. The class is thus sufficiently cohesive to meet the predominance requirement.

### 2. **Superiority**

Matters pertinent to superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). In assessing a settlement-only class certification, "a district court need not inquire whether the case, if tried, would present intractable management problems," because there will not be a trial. *Amchem*, 521 U.S. at 620.

Concentrating the adjudication of the claims in the Eastern District of New York is a logical and efficient use of judicial resources. A class action is superior to alternative forms of adjudicating these claims, which thus satisfies the superiority requirement.

*    *    *

For the foregoing reasons, the Court finds that preliminary certification of the Settlement Class is warranted under Federal Rules of Civil Procedure 23(a) and 23(b)(3) because the Court will likely be able to certify the class after the final approval hearing.

### III.    **Approval of FLSA Settlement**

Lead Plaintiffs seek approval of the settlement under the FLSA "because it meets the Rule 23 standard and respects the FLSA's remedial purposes." (Pls. Mem. at 18.) They contend that "[t]he release provided by the Class Members will be limited to the parties and claims at issue"; "the attorneys' fees sought are consistent with Circuit norms"; "the Agreement does not require

confidentiality, and the enhanced releases for the Service Payments adhere to Rule 23 and FLSA norms" (*id.*).

Courts routinely approve FLSA settlements where they satisfy the requirements for a Rule 23 settlement. *See, e.g.*, *Cano v. Nineteen Twenty Four, Inc.*, No. 15-CV-4082 (RER), 2017 WL 11507654, at *5 (E.D.N.Y. Apr. 24, 2017) ("Because the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." (internal quotation and citation omitted)); *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-CV-5669 (BMC), 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012). The Court finds that because the agreement satisfies the more rigorous standards of Rule 23 class certification, the FLSA settlement is approved.

## IV.     Appointment of Settlement Administrator

Plaintiffs seek approval of Xpand Legal ("Xpand") as settlement administrator because of Lead Counsel's "experience working with Xpand Legal and their principal, the reasonableness of their bid, and their reputation in the industry." (Pls. Mem. at 19.) Lead Plaintiffs "have allocated up to $12,500 for [Xpand's] services." (*Id.*)

The Court finds Xpand to be a suitable administrator and its estimated fees to be reasonable. *See, e.g.*, *Cano*, 2017 WL 11507654, at *8 (approving as reasonable administrator fee of $24,265); *Buchanan v. Pay-O-Matic Check Cashing Corp.*, No. 18-CV-885 (FB), 2021 WL 3008480, at *3 (E.D.N.Y. June 15, 2021) (approving as reasonable administrator fee of $49,578).

## V.     Service Awards to Plaintiffs

Lead Plaintiffs seek a total of $35,000 in service payments to the three Named Plaintiffs, one opt-in plaintiff, and class member Lakyra Lovell. (Agmt. ¶ 4.3(A).) Defendants do not oppose this request. (*Id.*)

The total requested amount of service awards constitutes 8.75% of the total fund, and the proposed awards range from $12,000 to $2,500. (Amgt. ¶ 4.3(A).) Plaintiffs state that they "faced significant risk by publicly filing claims against their former employer" and that they "worked diligently to achieve this class-wide recovery" by assisting Class Counsel. (Pls. Mem. at 20; *see also* Kaske Decl. ¶ 35.)

Courts routinely grant requests for service awards in federal class actions. *See, e.g.*, *In re Nassau Cnty. Strip Search Cases*, 12 F. Supp. 3d 485, 503 (E.D.N.Y. 2014) (collecting cases). "Service awards are common in class action cases . . . 'to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiff.'" *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12-CV-3203 (AKT), 2018 WL 4861391, at *6 (E.D.N.Y. Sept. 28, 2018) (collecting cases and quoting *Khait v. Whirlpool Corp.*, No. 06-CV-6381 (ALC), 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010)).

Finding that they fall within the range of reasonableness for class actions in this District, *see, e.g.*, *Cohan*, 2018 WL 4861391, at *6, the Court preliminarily approves the proposed service awards.

## VI.    Distribution of the Class Notice and Notice Procedure

Once a court has determined that it will likely be able to approve the proposed settlement and certify the class, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ." Fed. R. Civ. P. 23(e)(1)(B).

For Rule 23(b)(3) classes, "the court must direct to class members the best notice that is practicable under the circumstances" which includes "individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice "must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude

from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. Civ. P. 23(c)(2)(B).

"There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements. . . . Notice is 'adequate if it may be understood by the average class member.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11:53, at 167 (4th ed. 2002)). At the same time, "[c]ourts in this Circuit have explained that a Rule 23 Notice will satisfy due process when it describes the terms of the settlement generally, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing." *Mikhlin*, 2021 WL 1259559, at *12 (quoting *In re Payment Card*, 330 F.R.D. at 58).

The Notices and Claim Form describe the settlement terms, including the allocation of attorneys' fees, and explain the ways that individuals can exclude themselves or object, opt in as collective members, or obtain more information. (*See* Notices and Claim Form.) Finding that they comply with the requirements of Rule 23(e), the Court thus approves for distribution the Notices and Claim Form.

## CONCLUSION

For the reasons stated above, the Motion is granted. Accordingly, it is hereby ORDERED that:

(1) Pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and for the purposes of settlement only, the Court preliminarily certifies a Settlement Class in this action, consisting of all individuals employed as non-exempt fast-food workers by the Corporate Defendants at any time during the Relevant Period;

(2)     For settlement purposes only, the prerequisites for a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) have been preliminarily satisfied in that: (a) the number of Settlement Class members is so numerous that joinder of all Settlement Class members is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Lead Plaintiffs are typical of the claims of the Settlement Class members they seeks to represent; (d) Lead Plaintiffs will fairly and adequately represent the interests of the Settlement Class; (e) questions of law and fact common to the Settlement Class predominate over any questions affecting only individual members of the Settlement Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of this action;

(3)     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, for the purposes of settlement only, (a) the Lead Plaintiffs are preliminarily certified as the class representatives on behalf of the Settlement Class; (b) Kessler Matura, P.C., and the Law Office of Delmas A. Costin, Jr., P.C., are preliminarily certified as Lead Counsel for the Settlement Class and are authorized to act on behalf of the Lead Plaintiffs and other Settlement Class members, with respect to all acts or consents required by or that may be given pursuant to the Settlement Agreement, including all acts that are reasonably necessary to effectuate the terms of the Settlement Agreement; (c) the Notices and Claim Form are approved for distribution to Class Members;

(4)     Collective certification pursuant to 29 U.S.C. § 216(b), is preliminarily approved, and the FLSA Collective is defined as all Class Members employed by Defendants at any time from May 13, 2019 through the end of the Relevant Period who opt in within 75 days of the mailing of the Claim Forms;

(5)   No later than seven days after the issuance of this Order, Defendants shall provide the Settlement Administrator with the Class List, in accordance with Sections 1.4 and 3.1(A) of the Settlement Agreement;

(6)   Within 10 days after the Settlement Administrator receives the Class List, the Settlement Administrator shall mail the approved Notices and Claim Forms to all Class Members, via First Class Mail, in accordance with Section 3.1(B) of the Settlement Agreement;

(7)   Class Members shall have 75 days from the date the Notices are mailed to participate in, exclude themselves from, or object to the settlement, in accordance with Sections 3.1(C), 3.2(A), and 3.3(A) of the Settlement Agreement;

(8)   The Court will hold a final fairness hearing before Magistrate Judge Peggy Kuo on **December 16, 2025 at 10:00 a.m.**, in Courtroom 11C South;

(9)   For purposes consistent with the Agreement, Defendants will disclose to the Settlement Administrator the Class Members' Social Security numbers; and

(10)   The Class Members are enjoined from filing any action against Defendants regarding those claims released in the Agreement unless and until such Class Members have filed valid requests to be excluded from the settlement.


**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         July 8, 2025