UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

BRIANNA CAMPBELL, SHAKEIM ROBINSON, and   :
KEVAUGHN ROBINSON on behalf of themselves and   :
others similarly situated,   : Case No. 22 Civ. 2813 (PK)

                    Plaintiffs,   :
  :
  - against -   :
  :

BUKHARI GROUP LLC, NAFEES BUKHARI, an   :
individual, ALI BUTT, an individual, 4399 BRONX   :
CHICKEN LLC, BAYCHESTER CHICKEN BG LLC.,   :
3555 WHITE PLAINS BG LLC, 3411 JEROME AVE   :
CORP., and CONEY FOOD OF NY LLC,   :
  :
                  Defendants.   :

------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

|  |  |
|---|---|
| KESSLER MATURA P.C. | THE LAW OFFICE OF |
| Troy L. Kessler | DELMAS A. COSTIN, JR., PC |
| Garrett Kaske | Delmas A. Costin, Jr. |
| 534 Broadhollow Rd., Ste 275 | 930 Grand Concourse, Suite 1B |
| Melville, NY 11747 | Bronx, NY 10451 |
| Phone: (631) 499-9100 | Telephone: (718) 618-0589 |
| tkessler@kesslermatura.com | dacostin@dacostinlaw.com |
| gkaske@kesslermatura.com | |

*Attorneys for Plaintiffs and the Settlement FLSA Collective and Class*

**TABLE OF CONTENTS**

Table of Authorities ............................................................................................................. iii

Glossary of Defined Terms .................................................................................................. vii

Introduction ...........................................................................................................................1

Factual and Procedural Background ......................................................................................1

I.      Overview of the Litigation and Negotiations .............................................................1

        A.  The Claims. ......................................................................................................1

        B.  Procedural Overview .......................................................................................2

                1.  Class Counsel's Investigation and Litigation of this Matter............................2

                2.  Preliminary Approval of the Agreement.........................................................3

                3.  Distribution of the Notice .............................................................................4

II.     The Settlement Agreement .........................................................................................4

        A.  The Settlement Payment ..................................................................................4

        B.  The Class and FLSA Collective Members........................................................4

        C.  Releases...........................................................................................................5

        D.  Allocation Formula .........................................................................................5

        E.  Attorneys' Fees and Costs ...............................................................................5

        F.  Service Payments.............................................................................................5

Argument ...............................................................................................................................6

I.      This Motion is the First Step of the Class Action Settlement Procedure. ....................6

II.     Final Approval of the Settlement is Warranted Under Rule 23 ...................................6

        A.  The Settlement Is Procedurally Fair (Rule 23(e)(2)(A)-(B)).........................7

        B.  The Settlement Allocation and Distribution Plan Satisfy the Rule 23 Factors..............7

                1.  Distribution of the Notice and Settlement Checks by Mail Is Reasonably
                    Calculated to Reach the Class Members (Rule 23(e)(2)(C)(ii)) and the Notices
                    Were Well Crafted and Informative (Rule 23(c)(2)(B))..................................8

2.  The Attorneys' Fees Sought Are Reasonable and There Are No Other Agreements Between the Parties (Rule 23(e)(2)(C)(iii)-(iv))............................8

3.  The Agreement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D)) and Otherwise Fairly Distributes the Funds................................9

C.  The Settlement Is Substantively Fair. ........................................................10

1.  Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1 & Rule 23(e)(2)(C)(i)) ..........................................................10

2.  The Class's Reaction is Positive (*Grinnell* Factor 2)......................................11

3.  Discovery Advanced Far Enough to Settle Dutifully (*Grinnell* Factor 3).......11

4.  Litigating for the Class Through Trial is Risky (*Grinnell* Factors 4 to 5).......12

5.  A Much Greater Judgment May Not Be Possible (*Grinnell* Factor 7) ............13

6.  The Settlement Fund Is Substantial, Even Considering the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)...13

III.  The Class and Collective Certification Should Continue.......................................14

A.  The Class Should be Finally Certified for Settlement Purposes................................14

B.  The Collective Should be Finally Certified for Settlement Purposes .........................15

IV.  The Settlement Meets the FLSA Approval Standard ..............................................15

V.  Xpand Legal's Fee Should Be Approved................................................................16

VI.  The Service Payments to Plaintiffs are Fair and Warrant Approval ......................................16

VII. Class Counsel's Attorneys' Fees and Costs are Reasonable, Appropriate, and Warrant Approval at this Final Stage ..................................................................17

A.  The Requested Attorneys' Fee of One Third is Consistent with Local Norms ...........17

B.  The Lodestar Cross-Check Demonstrates that the Fee is Reasonable.........................18

C.  The Fee's Reasonableness is Highlighted by Alternative Calculation Methods .........20

Conclusion .......................................................................................................20

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Almond v. PJ Far Rockaway, Inc.*,
   No. 15 Civ. 6792, 2018 WL 922184 (E.D.N.Y. Feb. 15, 2018) ................................................ 19

*Amigon v. Safeway Constr. Enters., LLC*,
   No. 20 Civ. 5222, 2024 WL 5040436 (E.D.N.Y. Dec. 9, 2024) ..................................... 9, 11, 14

*Ballinger v. Adv. Mag. Publishers, Inc.*,
   No. 13 Civ. 4036, 2014 WL 7495092 (S.D.N.Y. Dec. 29, 2014) .............................................. 13

*Baudin v. Resource Mktg. Corp., LLC*,
   No. 19 Civ. 386, 2020 WL 4732083 (N.D.N.Y. Aug. 13, 2020) ................................................ 7

*Bondi v. DeFalco*,
   No. 17 Civ. 5681, 2020 WL 2476006 (S.D.N.Y. May 13, 2020) .............................................. 17

*Burns v. FalconStor Software, Inc.*,
   No. 10 Civ. 4572, 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ............................................ 8

*Campbell v. Bukhari Grp. LLC*,
   No. 22 Civ. 2813, 2025 WL 1874485 (E.D.N.Y. July 8, 2025)........................................*passim*

*Cano v. Nineteen Twenty Four Inc.*,
   No. 15 Civ. 4082, 2017 WL 11507654 (E.D.N.Y. Apr. 24, 2017) .......................................... 15

*In re Canon U.S.A. Data Breach Litig.*,
   No. 20 Civ. 6239, 2024 WL 3650611 (E.D.N.Y. Aug. 5, 2024)............................................... 18

*Chavarria v. New York Airport Serv., LLC*,
   875 F. Supp. 2d 164 (E.D.N.Y. 2012)...................................................................................... 13

*Chodkowski v. Cnty. of Nassau*,
   No. 16 Civ. 5770, 2021 WL 3774187 (E.D.N.Y. Aug. 25, 2021)............................................ 20

*Cohan v. Columbia Sussex Mgmt., LLC*,
   No. 12 Civ. 3203, 2018 WL 4861391 (E.D.N.Y. Sept. 28, 2018) ............................... 16, 17, 18

*Cymbalista v. JPMorgan Chase Bank, N.A.*,
   No. 20 Civ. 456, 2021 WL 7906584 (E.D.N.Y. May 25, 2021) ................................................ 8

*Delijanin v. Wolfgang's Steakhouse Inc.*,
No. 18 Civ. 7854, 2021 WL 535635 (S.D.N.Y. Feb. 12, 2021)................................................ 16

*Dupler v. Costco Wholesale Corp.*,
705 F. Supp. 2d 231 (E.D.N.Y. 2010) ..................................................................................... 17

*Fisher v. SD Prot. Inc.*,
948 F.3d 593 (2d Cir. 2020) .................................................................................................... 18

*Flores v. CGI Inc.*,
No. 22 Civ. 350, 2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) ........................................ 6, 11

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
104 F. Supp. 3d 290 (E.D.N.Y. 2015) ..................................................................................... 13

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005) ...................................................................................... 13, 16

*Gayle v. Harry's Nurses Registry, Inc.*,
No. 07 Civ 4672, 2020 WL 4381809 (E.D.N.Y. July 31, 2020)............................................. 19

*Grice v. Pepsi Bevs. Co.*,
No. 17 Civ. 8853, 2019 WL 340714 (S.D.N.Y. Jan. 28, 2019) ................................................ 9

*Guallpa v. N.Y. Pro Signs Inc.*,
No. 11 Civ. 3133, 2014 WL 2200393 (S.D.N.Y. May 27, 2014) .............................................. 9

*Guevoura Fund Ltd. v. Sillerman*,
No. 15 Civ. 7192, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ............................................. 7

*Hill v. Cnty. of Montgomery*,
2021 WL 2227796 (N.D.N.Y. June 2, 2021) .................................................................... 11, 15

*In re Namenda Direct Purchaser Antitrust Litig.*,
462 F. Supp. 3d 307 (S.D.N.Y. 2020) ...................................................................................... 9

*In re PPDAI Grp. Inc. Sec. Litig.*,
No. 18 Civ. 6716, 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) .............................................. 12

*Karic v. Major Auto. Cos.*,
No. 09 Civ. 5708, 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016) ...................................... 10, 13

*Kreisler v. Second Ave. Diner Corp.*,
No. 10 Civ. 7592, 2013 WL 3965247 (S.D.N.Y. July 31, 2013) ............................................ 19

iv

*Kurtz v. Kimberly-Clark Corp.*,
    No. 14 Civ. 1142, 2024 WL 184375 (E.D.N.Y. Jan. 17, 2024) .................................................. 19

*Kurtz v. Kimberly-Clark Corp.*,
    No. 14 Civ. 1142, 2026 WL 717909 (E.D.N.Y. Mar. 12, 2026) .................................................. 8

*McLaughlin v. IDT Energy*,
    No. 14 Civ. 4107, 2018 WL 3642627 (E.D.N.Y. July 30, 2018) .................................................. 20

*Meo v. Lane Bryant, Inc.*,
    No. 18 Civ. 6360, 2020 WL 4047897 (E.D.N.Y. July 17, 2020) .................................................. 18

*Merino v. Beverage Plus Am. Corp.*, No. 10 Civ.,
    No. 10 Civ. 706, 2012 WL 4468182 (S.D.N.Y. Sept. 25, 2012) .................................................. 10

*Mikhlin v. Oasmia Pharm. AB,*
    No. 19 Civ. 4349, 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ........................................... 7, 8

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) .................................................. 11

*Moses v. New York Times Co.*,
    79 F.4th 235 (2d Cir. 2023) .................................................. 7

*Muhammad v. Alto Pharma. LLC*,
    No. 23 Civ. 11315, 2024 WL 4042479 (S.D.N.Y. Sept. 4, 2024) .................................................. 14

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) .................................................. 12

*Nieto v. Izzo Constr. Corp.*,
    No. 15 Civ. 6958, 2018 WL 2227989 (E.D.N.Y. May 14, 2018) .................................................. 15

*Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*,
    No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) .................................................. 16

*Rasulev v. Good Care Agency, Inc.*,
    No. 16 Civ. 1993, 2017 WL 11507653 (E.D.N.Y. Apr. 19, 2017) .................................................. 10, 15

*Reyes v. Buddha-Bar NYC*,
    No. 08 Civ. 2494, 2010 WL 2545859 (S.D.N.Y. June 18, 2010) .................................................. 9

*Rosenfeld v. Lenich*,
    No. 18 Civ. 6720, 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) .................................................. 8

*Sajvin v. Singh Farm Corp.*,
No. 17 Civ. 4032, 2018 WL 4214335 (E.D.N.Y. Aug. 13, 2018).............................................. 19

*Sewell v. Bovis Lend Lease, Inc.*,
No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ............................................ 12

*Toribio v. Abreu*,
No. 18 Civ. 1827, 2018 WL 6363925 (E.D.N.Y. Nov. 15, 2018)............................................. 20

*Villa v. Highbury Concrete Inc.*,
No. 17 Civ. 984, 2022 WL 19073649 (E.D.N.Y. Nov. 25, 2022).................................... 9, 12, 15

*Zhu v. Wanrong Trading Corp.*,
No. 18 Civ. 417, 2024 WL 4351357 (E.D.N.Y. Sept. 30, 2024) .............................................. 17

**RULES**

Fed. R. Civ. P. 23(e) ................................................................................................................. 6

Fed. R. Civ. P. 23(e)(2)............................................................................................................. 7

## GLOSSARY OF DEFINED TERMS

Agreement: "Agreement" means the Settlement Agreement, including all exhibits.

Claim Form: "Claim Form" means the form attached as Exhibit 2, subject to Court approval, which each Putative FLSA Collective Member must complete by the close of the Notice Period, to recover the portion of the Individual Settlement Payment attributable to the FLSA as per the allocation formula.

Class Counsel: Class Counsel means Kessler Matura, P.C. ("KM"), 534 Broadhollow Road, Ste., 275, Melville, New York 11747, by Troy L. Kessler and Garrett Kaske, and the Law Office of Delmas A. Costin, Jr., PC ("DAC"), 930 Grand Concourse, Suite 1B, Bronx, New York 10451.

Class List: "Class List" means a manipulatable electronic list containing the following information for each Class Member: name, Social Security Number, dates of employment with Defendants, last known addresses, last known phone numbers, and total gross earnings paid by Defendants during the Relevant Period.

Class Members: "Class" and "Class Members" are defined as all individuals employed by Defendant New York 4399 Bronx Chicken LLC, Baychester Chicken BG LLC, 3555 White Plains BG LLC, 3411 Jerome Ave Corp., or Coney Food of NY LLC at any time during the Relevant Period, as non-exempt fast-food employees.

Defendants: "Defendants" are the Bukhari Group LLC, 4399 Bronx Chicken LLC, Baychester Chicken BG LLC, 3555 White Plains BG LLC, 3411 Jerome Ave Corp., and Coney Food of NY LLC, Nafees Bukhari, and Ali Butt.

Effective Date: "Effective Date" is the date on which this Agreement becomes effective, which means 31 days after the Court issues the Final Approval Order.

Fair Workweek Law: "Fair Workweek Law" means the New York City Fair Workweek Law, Title 20, Chapter 12 of the New York City Administrative Code.

Fairness Hearing: "Fairness Hearing" means a hearing before the Court, relating to the fairness and approval of the Settlement, which occurs after the close of the 75-day period to submit a Claim Form, object, or opt out of the Settlement.

Final Approval Order: "Final Approval Order" means the Order entered by the Court, which grants Plaintiffs' Final Approval Motion.

FLSA: The "FLSA" means the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*

FLSA Collective: "FLSA Collective" or "FLSA Collective Members" means all Class Members employed by Defendants at any time from May 13, 2019, through the end of the Relevant Period who opt into the collective action by way of the Claim Form.

Putative FLSA Collective Member: "Putative FLSA Collective Members" means all Class Members employed by Defendants at any time from May 13, 2019, through the end of the Relevant Period who are eligible to opt into the collective action by way of the Claim Form.

Individual Settlement Payment: "Individual Settlement Payment" means the amount payable to each Qualified Class Member out of the Net Settlement Fund.

Net Settlement Amount: "Net Settlement Amount" means the remainder of the Settlement Amount after deductions for Court-approved attorneys' fees, costs, and expenses, Court approved Service Awards, the Settlement Administrator's fees, and all other Court-approved fees, costs, and expenses.

Notice: "Notice" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit.

NYLL: The "NYLL" means New York Labor Law, Articles 6 and 19.

Parties: The "Parties" are Plaintiffs and Defendants.

Plaintiffs: "Plaintiffs" are Brianna Campbell, Shakeim Robinson, and Kevaughn Robinson.

Preliminary Approval Order: "Preliminary Approval Order" means the Order entered by the Court, which grants the instant motion.

Qualified Class Member: "Qualified Class Member" is a Class Member who does not opt out pursuant to this Agreement.

Relevant Period: "Relevant Period" means May 13, 2016, through July 29, 2022.

Service Payment: "Service Payment" shall mean the amount of money Plaintiffs seek to compensate them and certain Class Members for the risks they incurred and services to the Class.

Settlement Administrator: "Settlement Administrator" shall refer to the third-party administrator, Xpand Legal Consulting LLC ("Xpand Legal").

Settlement Payment: "Settlement Payment" and "Gross Settlement Fund" and means the $400,000.00 that Defendants agree to pay to settle the instant matter.

**INTRODUCTION**

Plaintiffs submit this memorandum of law in support of their motion for final approval of the class-wide settlement they reached with Defendants.[1]   Because the proposed settlement satisfies all of the criteria for final approval, Plaintiffs respectfully request that the Court: grant final approval of the Agreement, attached as Exhibit A to the Declaration of Garrett Kaske; (2) confirm the certification of the settlement class, for settlement purposes only, under Federal Rule of Civil Procedure 23(b)(3) and the collective under 29 U.S.C. § 216(b); (3) approve the service awards for Service Payment Recipients; (4) approve Class Counsel's fees and costs; (5) approve the Settlement Administrator's fees; and (6) dismiss this action with prejudice.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.      Overview of the Litigation and Negotiations**

**A.  The Claims**

This is an action for violations of the FLSA, NYLL, and Fair Workweek Law.   *See* ECF No. 62 (3d. Am. Compl.) ¶¶ 4-10.   Plaintiffs and Class Members were hourly-paid fast-food workers ("FFWs") – employed as cashiers, prep workers, fryer workers, and low-level managers.

Plaintiffs allege that Defendants failed to pay the Class at the required overtime and minimum wage rates.   *Id*. ¶¶ 213-242.   Defendants avoided their overtime obligations by: (1) paying overtime hours at the FFWs' hourly rate (*id*. ¶¶ 218, 224, 226, 230); (2) paying FFWs only for their scheduled hours (*id*. ¶¶ 231-234); and (3) deducting for meal breaks even when FFWs worked through them (*id*. ¶¶ 235-238).   Because FFWs are primarily minimum wage workers, the failure to pay for any time resulted in minimum wage violations.   *Id*. ¶¶ 240-242.   FFWs were also not paid spread-of-hours pay when they worked shifts lasting over 10 hours.   *Id*. ¶¶ 243-247.

---

[1]   Consistent with the Agreement, capitalized terms are defined in the Glossary of Terms.

Plaintiffs also allege violations of the scheduling and recordkeeping requirements of the NYLL and Fair Workweek Law. That is, Defendants violated Sections 195(1) and 195(3) of the NYLL by failing to provide hiring notices and accurate paystubs. *Id.* ¶¶ 248-256. Plaintiff K. Robinson alleged that Defendants failed to issue schedules and changed the Class's hours without sufficient notice or premium pay in violation of the Fair Workweek Law. *Id.* ¶¶ 262-267.

Defendants, for their part, deny these allegations and contend that they paid all their employees consistent with the federal, state, and city wage-and-hour laws. Kaske Decl. ¶ 30.

**B. Procedural Overview.**

**1. Class Counsel's Investigation and Litigation of this Matter.**

After investigating the claims, Class Counsel sent Defendants a pre-suit demand letter in July 2021. Kaske Decl. ¶¶ 11-12. Class Counsel then engaged in settlement negotiations with Defendants' prior counsel. *Id.* Those discussions proved unsuccessful. *Id.* Thereafter, Plaintiffs filed the Complaint on May 13, 2022. *See* ECF No. 1 (Compl.). Although Defendants initially did not respond to the Complaint, the Parties agreed to vacate the default and permit Defendants to answer the Amended Complaint. *See* ECF No. 29 (Stip. Vacating Default).

After Defendants answered the Amended Complaint, the Parties started on the Court's FLSA discovery order dated May 13, 2022. Kaske Decl. ¶ 13. As a result, the Parties exchanged some preliminary documents and information before mediating with Adam J. Halper on January 6, 2023. *Id.* The Parties were not able to resolve this matter at that time, despite the ample assistance of mediator during and after the mediation. *Id.*

The Parties then started formal discovery following the February 2023 initial conference (ECF No. 45). While engaged in paper discovery, Plaintiffs moved for FLSA conditional certification and fully briefed it in May 2023. *See* ECF Nos. 51-53. Plaintiffs also amended the Complaint to add claims and a named plaintiff. *See* ECF No. 49 (2d Am. Compl.).

2

All throughout the discovery process, the Parties continued to negotiate and share information related to settlement. Kaske Decl. ¶¶ 17-18. In September 2023, the Parties reached a tentative settlement, which was formalized over the next several months. *Id.* ¶ 19. The Parties executed the "First Agreement" on February 14, 2024. *Id.* ¶ 20; ECF No. 66-3 (1st Agr.).

Plaintiffs also amended the Complaint a final time on February 7 and the Parties consented to Your Honor's jurisdiction. *See* ECF Nos. 61 (Stip.), 62 (3d Am. Compl.), 65 (Consent).

## 2. Preliminary Approval of the Agreement.

Plaintiffs moved for preliminary approval of the First Agreement on February 15, 2024. *See* ECF No. 66. Thereafter, on April 26, 2024, the Parties amended the First Agreement and supplemented the motion in response to the Court's request for information. *See* ECF No. 69.

After holding a Preliminary Approval Hearing on June 21, 2024 (ECF No. 71 (Hr'g Tr.)), the Court denied Plaintiffs' motion for approval. *See* ECF No. 72 (Ord.). Immediately following receipt of the Order Denying the Preliminary Approval Motion, Class Counsel began revising the proposed Notices and Claim Forms and renegotiating the terms of the settlement to address the Court's concerns in the Order and expressed during the Preliminary Approval Hearing. Kaske Decl. ¶ 21. The Parties executed the instant Agreement on December 30, 2024. *Id.*

After Plaintiffs filed their renewed preliminary approval motion (ECF No. 75 (Mot.)) on January 3, 2025, the Court then held a second Preliminary Approval Hearing on April 23, 2025. *See* Min. Entry Ords., dated Apr. 28, 205. At the hearing, the Court reviewed several concerns with the Agreement, related to the allocation formula and the Notices. *See id.* Thereafter, the Parties negotiated an amendment to the Agreement and filed a stipulation to address the Court's concerns. *See* Kaske Decl. ¶ 23; ECF No. 79 (Stip.). The Court then issued the Preliminary Approval Order on July 8, 2025. *See Campbell v. Bukhari Grp. LLC*, No. 22 Civ. 2813, 2025 WL 1874485 (E.D.N.Y. July 8, 2025) (ECF No. 80).

3

### 3.  Distribution of the Notice.

The Parties experienced several delays in issuing the Notice due to issues in gathering the Class List data and gaps in the production.  Kaske Decl. ¶¶ 24-26; *see also* ECF Nos. 84-89 (updates to the Court explaining the issues with the class-list data); ECF No. 89-1 (Stip) at 2 (summarizing the delays and issues the Parties resolved).  After resolving most of the issues with the Class List information, the Parties submitted a proposal to the Court to address the outstanding gaps in the data by extrapolating from the existing information in the Parties possession.  *Id*.  The Court held a status conference to address the proposal on February 13, 2026, and, then So Ordered the Parties' stipulation.  *See* ECF No. 90 (Ord.).

Xpand issued the Notice to Class Members on February 27, resulting in a deadline to object or request exclusion of May 16, with a 30-day extension to June 2, for a second mailing.  *See* Ex. E (Paul Decl.) ¶ 5.  81 of the 374 Notices were returned as undeliverable, so Xpand ran skip traces to find new addresses.  *Id*.   In all, they located 57 updated address and remailed a packet.  *Id*. Only 24 Notices were totally undeliverable.  *Id*.  No one objected to settlement and one person opted out.  *See* ECF No. 92 (Notc).  40 individuals consented to join this action and receive payment for FLSA claims by submitting Claim Forms.  *Id*. ¶ 12.

## II.     The Settlement Agreement

### A.  The Settlement Payment

Defendants agree to pay the settlement amount of $400,000.00 to cover the payment to the Class, attorneys' fees and costs, the Settlement Administrator's costs, and the Service Payments. Ex. A (Agr.) §§ 1.16, 1.31.

### B.  The Class and FLSA Collective Members

Class Members include Plaintiffs and all individuals employed by Defendants between May 13, 2016, through July 29, 2022, as non-exempt employees.  *Id*. §§ 1.5, 1.27.  The FLSA

4

Collective Members, who were employed sometime between May 13, 2019, and July 29, 2022. *Id.* § 1.32. No Class Member, however, was actually employed prior to December 2018, as was confirmed during the notice-mailing process. *See* Kaske Decl. ¶ 26. There are 373 Class Members, after one opted out. Ex. E (Paul Decl.) ¶ 17; *see also* ECF No. 92 (Notc.).

### C.  Releases

All Class Members who did not exclude themselves from the settlement will release all wage-and-hour claims asserted in the Complaint, aside from FLSA claims. *Id.* § 6.1. FLSA Collective Members will release the FLSA claims asserted in the Complaint. *Id.*

### D.  Allocation Formula

The Agreement provides for Class Members to receive their proportionate share of the Net Settlement Fund based on their gross wages. *See id.* § 4.4(B); Ex. B (Amd. to Agr.) at 2 (amending Section 4.4(B)); *see also* Kaske Decl. ¶ 36. The 373 Class Members who did not opt out are deemed Qualified Class Members and will receive a share of the Net Settlement Fund. *Id.* §§ 1.24, 4.4; Ex. B (Amd. To Agr.) at 2. The unclaimed FLSA funds will be reallocated to the Qualified Class Members. *Id.* § 1.24. 4.4(B)(3); Ex. B (Amd. to Agr.) at 2.

### E.  Attorneys' Fees and Costs

Class Counsel seeks Court approval of one-third of the Gross Settlement Fund for their attorneys' fees (i.e., $133,333.33), plus up to $5,000 for their expenses and costs. *Id.* § 4.2(A).

### F.  Service Payments

Plaintiffs also seek Service Payments totaling $35,000, in recognition of the services Plaintiffs and two other Class Members rendered to the Class and in exchange for a broader release. Ex. A (Agr.) §§ 1.28, 4.3(A)-(B), 6.2; Ex. A-3 (Serv. Release Form).

5

**ARGUMENT**

**I.     This Motion is the First Step of the Class Action and FLSA Settlement Procedure.**

Rule 23's class action settlement procedure includes two steps: (1) preliminary approval of the proposed settlement, on written motion; and (2) final approval of the settlement, following a written motion and fairness hearing after notice is issued to the class. *See* Fed. R. Civ. P. 23(e); *Campbell*, 2025 WL 1874485, at *3.  Plaintiff now requests that the Court take the last step in the process, so the Parties can effectuate the Agreement in accordance with the following schedule:

| Event or Deadline | Due by Date or Date Certain |
|---|---|
| Effective Date of the Agreement. | 31 days after the Court issues the Final Approval Order.  *See* Ex. A. (Agr.) § 1.9. |
| Deadline for Settlement Administrator to distribute Settlement Checks. | 14 days after the Effective Date.  *Id.* §§ 4.1(E)-(F). |
| Deadline for Class Members to cash their Settlement Checks. | 120 days after their check date or 30 days from the reissuance of a check.  *Id.* § 4.4(F). |
| Donation to *cy pres* designee. | 21 days after close of check-cashing period.  *Id.* § 4.5. |

*See* Ex. J (Proposed Ord.).

**II.    Final Approval of the Settlement is Warranted Under Rule 23.**

Final approval requires the Court to determine that proposed settlement is "fair, reasonable, and adequate." *Flores v. CGI Inc.*, No. 22 Civ. 350, 2022 WL 13804077, at *2 (S.D.N.Y. Oct. 21, 2022).  To make this determination, Courts consider the factors set forth in Rule 23(e)(2) in tandem with the factors historically applied in the Second Circuit. *Campbell*, 2025 WL 1874485, at *4. Rule 23(e)(2) requires courts to consider:  (A) the adequacy of the class representatives and counsel; (B) the negotiations; (C) the value of the relief considering: (i) the costs, risks, and delay of trial and appeal; (ii) the methods used to distribute relief to the class; (iii) the attorney's fee

6

award; and (iv) any side agreements; and (D) the treatment of class members relative to each other. Fed. R. Civ. P. 23(e)(2). The Second Circuit's "*Grinnell* factors" are: (1) the case's complexity, expense, and likely duration; (2) the class's reaction to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of sustaining a class action; (7) the defendants' ability to withstand a greater judgment; and the settlement fund in light of (8) the best possible recovery and (9) litigation risks. *Campbell*, 2025 WL 1874485, at *4. For the reasons below, this settlement meets all the requisite factors.

### A. The Settlement Is Procedurally Fair (Rule 23(e)(2)(A)-(B)).

Rules 23(e)(2)(A)-(B) control the procedural fairness inquiry. *Baudin v. Resource Mktg. Corp., LLC*, No. 19 Civ. 386, 2020 WL 4732083, at *6 (N.D.N.Y. Aug. 13, 2020). Arms-length negotiations are a positive factor. *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). While the use of an experienced mediator is also "strong evidence" of fairness. *Guevoura Fund Ltd. v. Sillerman*, No. 15 Civ. 7192, 2019 WL 6889901, *6 (S.D.N.Y. Dec. 18, 2019) (cleaned up).

Here, the settlement was reached between experienced counsel negotiating at arm's length, after a thorough investigation, motion practice, discovery, and unsuccessful mediation. Kaske Decl. ¶¶ 12-18; *see Campbell*, 2025 WL 1874485, at *6 ("[T]his settlement was . . . was reached through arm's-length negotiation between experienced counsel for all parties."). Moreover, Plaintiffs' interests are not at odds with the Class Members' interests. *Id*. ¶¶ 41-42. Class Counsel is also capable of continuing to adequately represent the Class's interests.

### B. The Settlement Allocation and Distribution Plan Satisfy the Rule 23 Factors.

#### 1. Distribution of the Notice and Settlement Checks by Mail Is Reasonably Calculated to Reach the Class Members (Rule 23(e)(2)(C)(ii)) and the Notices Were Well Crafted and Informative (Rule 23(c)(2)(B)).

The settlement distribution plan need not be perfect, it need only be reasonable and rational. *Mikhlin v. Oasmia Pharm. AB,* No. 19 Civ. 4349, 2021 WL 1259559, at *6 (E.D.N.Y. Jan. 6,

7

2021).  A reasonable plan will deter unjustified claims while not subjecting class members to an overly burdensome process to claim their settlement payments.  *Id*.

Here, Qualified Class Members will receive a payment proportionate to the value of their potential claim.  *See infra* § Arg. II(7).  Unjustified claims will be minimal because Defendants provided the Settlement Administrator with last known addresses and Social Security Numbers, so Class Members can be found.  *See* Ex. E (Paul Decl.) ¶ 5; *c.f. Rosenfeld v. Lenich,* No. 18 Civ. 6720, 2021 WL 508339, at *6 (E.D.N.Y. Feb. 11, 2021) (factor met where the parties merely had "a list of phone numbers" they were to use to fine the class members).

Moreover, the Notices complied with due process and Rule 23(c)(2)(B) requirements.  The Notices "describe[d] the terms of the Settlement Agreement and provide[d] clear explanations of how to make a claim, opt out of the class, or object."  *Campbell*, 2025 WL 1874485, at *8.

### 2.  The Attorneys' Fees Sought Are Reasonable and There Are No Other Agreements Between the Parties (Rule 23(e)(2)(C)(iii)-(iv)).

The Agreement provides for Class Counsel to apply for up to one third of Gross Settlement Fund for fees, paid out at the time of distribution.  Ex A. (Agr.) §§ 4.1(C), 4.2(A).  This is common. *See Burns v. FalconStor Software, Inc.*, No. 10 Civ. 4572, 2014 WL 12917621, at *8 (E.D.N.Y. Apr. 11, 2014) (collecting cases), *adopted* (E.D.N.Y. May 8, 2014); *see also Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20 Civ. 456, 2021 WL 7906584, at *8 (E.D.N.Y. May 25, 2021) (discussing disfavored "quick-pay provisions").  The fee, as compared to the Net Settlement Fund ($214,004.05), directly payable to the Class Members, represents a ratio of about 1.3 to 2.15, which is reasonable.  *See Kurtz v. Kimberly-Clark Corp.*, No. 14 Civ. 1142, 2026 WL 717909, at *9 (E.D.N.Y. Mar. 12, 2026) (approving fee under Rule 23(e) where the fee to class recovery ratio was 3:1).  The fees sought here, therefore, and for the reasons discussed in Section VII below, are reasonable. *See also Campbell*, 2025 WL 1874485, at *8 (finding Class Counsel's fee request to

be reasonable for preliminary approval purposes).  Additionally, approval is warranted as there are no other agreements between the Parties.  *See* Ex. A (Agr.) § 7.4; Kaske Decl. ¶ 29; *see Villa v. Highbury Concrete Inc.*, No. 17 Civ. 984, 2022 WL 19073649, at *6 (E.D.N.Y. Nov. 25, 2022) (Kuo, Mag.).

### 3. The Agreement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D)) and Otherwise Fairly Distributes the Funds.

The Agreement provides for a pro rata allocation based on the estimated value of the claims.  *See* Ex. A (Agr.) § 4.4(B); Kaske Decl. ¶ 30.  Such pro rata allocations are "uniformly approve[d] as equitable." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020); *see, e.g.*, *Amigon v. Safeway Constr. Enters., LLC*, No. 20 Civ. 5222, 2024 WL 5040436, at * (E.D.N.Y. Dec. 9, 2024) (formula accounted for rates of pay and workweeks).

Unclaimed settlement proceeds in a common fund settlement are generally passed on to (1) the defendant, (2) the class, (3) the state, or (4) a *cy pres* designee.  *See* ECF No. 72 (Ord.) at 9 (citing *Grice v. Pepsi Bevs. Co.*, No. 17 Civ. 8853, 2019 WL 340714, at *409 (S.D.N.Y. Jan. 28, 2019)).  The Agreement provides for unclaimed funds to be reallocated *pro rata* and uncashed checks will donated.  Ex. A (Agr.) § 4.4(B)(3), 4.5(A); Ex. B (Amd. to Agr.) at 2.  Relatedly, the Agreement provides that any unapproved fees, costs, or service payments will remain part of the Net Settlement Fund.  *See* Ex. A (Agr.) § 4.4(B), 4.4(B)(3); Ex. B (Amd. to Agr.) at 2.

Lastly, the monies from uncashed checks will be donated to *cy pres* designee Brandworkers International, Inc.  "Under the *cy pre* doctrine, the best application of unused settlement funds is to donate them to an organization whose purpose is closely related to the purpose of the lawsuit." *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2010 WL 2545859, at *1 (S.D.N.Y. June 18, 2010).  Brandworkers is a non-profit workers center committed to organizing and advocating for the food-industry workers of New York City.  *See, e.g.*, *Guallpa v. N.Y. Pro Signs Inc.*, No. 11 Civ. 3133,

9

2014 WL 2200393, at *10 (S.D.N.Y. May 27, 2014), *adopted*, 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014); *Merino v. Beverage Plus Am. Corp.*, No. 10 Civ. 706, 2012 WL 4468182 (S.D.N.Y. Sept. 25, 2012). Brandworkers' purpose is, therefore, sufficiently aligned with the purposes of this case, which is about improving the working conditions of workers in the New York City food-service industry. *See also Lucente v. EAD Entm't, LLC*, No. 23 Civ. 3560, ECF No. 34 (E.D.N.Y. Nov. 7, 2024) (approving settlement where Brandworkers was named the *cy pres* designee).

### C. The Settlement Is Substantively Fair.

#### 1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1 & Rule 23(e)(2)(C)(i)).

By reaching a settlement, Plaintiffs seek to avoid significant expense and delay, and instead ensure a recovery for the Class. "[C]lass actions, especially in the context of FLSA claims, are inherently complex." *Rasulev v. Good Care Agency, Inc.*, No. 16 Civ. 1993, 2017 WL 11507653, at *10 (E.D.N.Y. Apr. 19, 2017); *Karic v. Major Auto. Cos.*, No. 09 Civ. 5708, 2016 WL 1745037, at *5 (E.D.N.Y. Apr. 27, 2016). This case is no exception, with 373 Class Members, multiple defendants, and claims under federal, state, and city law.

Extensive class-wide discovery would be required to establish liability, damages, and class certification. This discovery would include further electronic and paper discovery of pay records and paystubs; electronic discovery into Defendants' communications about the pay policies at issue; depositions of Class Members and Defendants' corporate representatives. After completing discovery, the Parties would likely move for summary judgment on the merits of the claims and a trial would most likely be necessary. Any judgment would likely be appealed, further extending the Litigation. This settlement, on the other hand, provides significant relief to Class Members in a prompt and efficient manner. Therefore, these factors weigh in favor of approval.

### 2.    The Class's Reaction is Positive (*Grinnell* Factor 2).

A dearth of objectors and opt-outs weighs in favor of approval. *Hill v. Cnty. of Montgomery*, No. 14 Civ. 933, 2021 WL 2227796, at \*4 (N.D.N.Y. June 2, 2021).  Here, because no one objected and only one person opted out (ECF No. 72 (Notc.)), the settlement should be approved.  *See Flores*, 2022 WL 13804077, at \*7 ("The response to the settlement has been positive—[with two opt-outs and no objections]. This is a major indication of fairness.").

### 3.    Discovery Advanced Far Enough to Settle Dutifully (*Grinnell* Factor 3).

This factor assures the court that the plaintiffs' counsel adequately evaluated "their position based on a full consideration of the possibilities facing them." *Amigon*, 2024 WL 5040436, at \*6 (cleaned up).  Approval is warranted if the parties were able to weigh the strengths and weaknesses of their claims, including by way of informal discovery, interviews, and other discussions. *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012) (collecting cases).

The Parties meet this standard.  *See Campbell*, 2025 WL 1874485, at \*9 ("[T]he parties have engaged in discovery, substantial investigation and prosecution of the claims, and lengthy informal and formal settlement negotiation.")  Defendants answered Plaintiffs' interrogatories, produced time and payroll data in compliance with the Court's FLSA discovery order, provided information on the class size and weeks worked, and confidentially produced data. Kaske Decl. ¶ 15.  For their part, Plaintiffs produced over 900 pages of litigation files, payroll records, schedules, and workplace communications.  *Id*. ¶ 16.  Class Counsel also interviewed prospective class members and witnesses.  *Id.* ¶ 18.  Throughout negotiations, Class Counsel analyzed Defendants' time and payroll data to estimate damages.  *Id*.  Plaintiffs shared their estimates with Defendants. *Id*.  Counsel also debated the claims a at length informally and via mediation.  *Id.*

11

### 4. Litigating for the Class Through Trial is Risky (*Grinnell* Factors 4 to 6).

Although Plaintiffs believe the case is strong, it is subject to the "inherent" risks of litigation. *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012). In assessing the risk of establishing liability and damages, the court weighs the likelihood of success against the settlement's value. *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18 Civ. 6716, 2022 WL 198491, at *10 (E.D.N.Y. Jan. 21, 2022).

Here, a trial on the merits would involve significant risk as to both liability and damages. While Plaintiffs believe that they could ultimately defeat Defendants' defenses and establish liability, this would require significant factual development and favorable legal outcomes, which are all inherently uncertain. *See Villa*, 2022 WL 19073649, at *4 ("Given the fact-intensive nature of FLSA and NYLL claims, had this case progressed to trial, Plaintiffs would have experienced risk in proving liability and damages."). Plaintiffs would have to rebut the merits of Defendants' anticipated defenses, including that Class Members: (1) were paid for all their meals and unscheduled hours; (2) did not consistently work overtime, as many employees were part-time or worked less than 40 hours a week; (3) were paid overtime at the proper rate, were paid above the minimum wage, and received spread-of-hours pay; (4) lack standing to bring the Section 195 claims; (5) were provided schedules on a timely basis; and (6) were provided accurate wage notices and paystubs. Kaske Decl. ¶ 30. Defendants have unique defenses for various Class Members based on their circumstances, including the various job titles at issue, the differences between part-time and full-time employees, and the varying employment practices at the different restuarants and under different store managers. *Id*. ¶ 31. Thus, there is a significant risk that individualized factual inquiries would preclude class treatment. *See, e.g.*, *Myers v. Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming class certification denial where members' duties varied by location). The proposed settlement alleviates these uncertainties and warrants approval.

12

**5.  A Much Greater Judgment May Not Be Possible (*Grinnell* Factor 7).**

The "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015) (cleaned up).  Although Class Counsel believes Defendants could possibly afford a greater judgement, Class Counsel's review of Defendants' taxes and research into their business and assets weighed on the decision to settle for the Settlement Amount.  *See* Kaske Decl. ¶¶ 11, 15; *see also* ECF No 71 (Hr'g Tr.) 15:23-16:7 (noting that Defendants shared tax-return information with Class Counsel and are "paying out of pocket").  Therefore, considering the substantial value of the settlement fund (infra Arg. § II(C)(7), this factor supports approval.

**6.  The Settlement Fund Is Substantial, Considering the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**.

The $400,000 settlement amount represents substantial value given the risks of litigation, even though the recovery could be greater if Plaintiffs prevailed and maintained a class through trial and on appeal.  There is no magic number to determine a settlement amount is reasonable. *Chavarria v. New York Airport Serv., LLC*, 875 F. Supp. 2d 164, 174 (E.D.N.Y. 2012).  "Instead, there is a range of reasonableness with respect to a settlement[.]" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (cleaned up).  The issue is then "whether the settlement falls below the lowest point in the range of reasonableness." *Ballinger v. Adv. Mag. Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092, at *3 (S.D.N.Y. Dec. 29, 2014).  The agreement is reasonable if the settlement provides "a meaningful benefit to the [c]lass when considered against the obstacles to proving plaintiff's claims" and damages. *Karic*, 2016 WL 1745037, at *7.

Here, the settlement provides a substantial recovery.  By KM's estimation, the fund represents approximately 10% of the claims, assuming the average Class Member would be entitled to one additional hour of pay per shift, $75 per week under the Fair Workweek Law, up to

13

$10,000 per person under Section 195, spread-of-hours pay at the rate of 0.046 per shift, and full liquidated damages. Kaske Decl. ¶ 32. This also assumes significant success in the face of the uncertainties of litigation. *See supra* Arg. § II(B)(4). Moreover, the percentage of recovery would increase if the Court were to hold that Plaintiffs lack standing to bring the Section 195 claims. *See* Ex. I (*Lucente* Tr.) ¶¶ 2:20-25, 4:8-18 (discussing impact of standing issue on recovery in class settlement); *see, e.g.*, *Muhammad v. Alto Pharma. LLC*, No. 23 Civ. 11315, 2024 WL 4042479, at *6 (S.D.N.Y. Sept. 4, 2024) (Section 195 claims dismissed *sua sponte*). Weighing the benefits of the settlement against the evidence and litigation risks, the settlement is reasonable. *Id*. ¶¶ 33-34.

The percentage of recovery is also like those in other cases. *See Amigon*, 2024 WL 5040436, at *6 (citing case where the fund was "5% of potential maximum damages" in one case and "22%" – excluding liquidated damages and statutory penalties – in another). In *Amigon*, for example, the Court granted preliminary approval of a settlement fund of about "12.32% of the best possible recovery or approximately 28.38% of the alleged unpaid wages." *Id*. The settlement here represents a comparable 43.29% of the unpaid wages. *See* Kaske Decl. ¶ 32; *see also Campbell*, 2025 WL 1874485, at *7 ("The Court agrees that the settlement represents a favorable outcome").

III.    **The Class and Collective Certification Should Continue.**

A.  **The Class Should be Finally Certified for Settlement Purposes.**

Plaintiffs previously sought and received conditional class certification under Rule 23. This Court granted Plaintiff's motion to conditionally certify the class, appoint the firms as Class Counsel, and appoint Plaintiffs as the Class Representatives. *See Campbell*, 2025 WL 1874485, at *6, 12. The facts of this case and the scope of the Class have not changed since then. Kaske Decl. ¶ 44. That is, Plaintiffs and the other Class Members were subjected to a common wage-payment policy and the common questions needed to resolve their resulting claims predominate over any individualized issues. *See Campbell*, 2025 WL 1874485, at *11-12. Further, Plaintiffs,

14

KM, and DC have continued represented the Class's interests. *See* Kaske Decl. ¶¶ 38, 46; *see also Campbell*, 2025 WL 1874485, at \*11. Lastly, continuing to concentrate the claims in this District "is a logical and efficient use of judicial resources." *See Campbell*, 2025 WL 1874485, at \*11.

Thus, the Court should grant final certification for the same reasons preliminary class certification was granted. *See Hill*, 2021 WL 2227796, at \*2 (final certification granted where "no facts [were] presented to indicate that the preliminary determination was incorrect or erroneous").

### B. The Collective Should be Finally Certified for Settlement Purposes.

Plaintiff also seeks final certification of the FLSA collective for settlement purposes. Because FLSA certification is a lighter burden than under Rule 23, the proposed collective necessarily meets the applicable standard. *See Rasulev v. Good Care Agency, Inc.,* No. 16 Civ. 1993, 2017 WL 11507653, at \*8 (E.D.N.Y. Apr. 19, 2017).

### IV.    The Settlement Meets the FLSA Approval Standard.

Because the Rule 23 standard is more demanding than the standard applied to FLSA settlements, satisfying the above factors "necessarily" satisfies the FLSA approval standard. *Cano v. Nineteen Twenty Four Inc.*, No. 15 Civ. 4082, 2017 WL 11507654, at \*5 (E.D.N.Y. Apr. 24, 2017). Regardless, courts may still deny approval of a settlement if the terms conflict with the FLSA's remedial purpose. *See Nieto v. Izzo Constr. Corp.*, No. 15 Civ. 6958, 2018 WL 2227989, at \*2 (E.D.N.Y. May 14, 2018) (collecting a "greatest hit" of impermissible terms).

The Agreement should be approved because it meets the Rule 23 standard and respects the FLSA's remedial purpose. The release provided by the Class Members will be limited to the parties and claims at issue. *See* Ex. A (Agr.) § 6.1; *see Villa*, 2022 WL 19073649, at \*4 (E.D.N.Y. Nov. 25, 2022) ("[T]he releases are properly limited to wage-and-hour-related claims under the NYLL, FLSA, and related statutes."). As discussed below, the attorneys' fees sought are consistent with

15

Circuit norms (*infra* Arg. § VII), the Agreement does not require confidentiality, and the enhanced releases for the Service Payments adhere to Rule 23 and FLSA norms (*infra* Arg. § VI).

## V.    Xpand Legal's Fee Should Be Approved.

Xpand Legal has extensive experience administering class action settlements. *See* Ex. E (Paul Decl.) ¶ 2. Xpand Legal has drawn on its experience to administer the Notice. *See* Kaske Decl. ¶¶ 37-38. Xpand's fee, which was capped at $12,500.00 in the Agreement, is reasonable and should be approved. *Id.*; Ex. E (Paul Decl.) ¶ 18; s*ee also Campbell*, 2025 WL 1874485, at *12 ("The Court finds [Xpand's] estimated fees to be reasonable.").

## VI.    The Service Payments to Plaintiffs are Fair and Warrant Approval.

Plaintiffs' request for $35,000 in aggregate Service Payments should be approved. Ex. A (Agr.) § 4.3(a). Courts routinely award service payments in wage-and-hour class settlements. *See, e.g.*, *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 Civ. 3203, 2018 WL 4861391, at *6 (E.D.N.Y. Sept. 28, 2018) (collecting awards ranging from $5,000 to $30,000 per person). Service awards are "important to compensate plaintiffs" for their time and effort, and the risks incurred. *Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18 Civ. 7854, 2021 WL 535635, at *4 (S.D.N.Y. Feb. 12, 2021) (cleaned up). In examining service awards, courts consider the: (1) risks incurred; (2) effort expended in and value added to the case; and (3) recovery. *Frank*, 228 F.R.D. at 187.

First, Plaintiffs faced significant risk by publicly filing claims against their former employer. *See* Kaske Decl. ¶ 40. In situations like this, plaintiffs jeopardize "their ability to depend on the employer for references in connection with future employment." *Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010).

Second, the service award recipients worked diligently to achieve this class-wide recovery. *See* Kaske Decl. ¶ 41. They worked with Class Counsel to investigate the claims, draft the complaints, prepare Plaintiffs' motion for conditional certification, prepare for the Parties'

16

mediation, participated in discovery, and reviewed the Agreement. *Id*. As such, their contributions to the Class justify their awards. *See, e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245-46 (E.D.N.Y. 2010) (Bianco, J.) (approving enhancement awards of $25,000 to named plaintiff who participated in all phases litigation through settlement, and $5,000 to a second plaintiff who reviewed a complaint and discussed the facts with counsel).

As to the third factor, at 8.75% of the fund, the awards are within the range approved in this District in wage-and-hour class actions. *Campbell*, 2025 WL 1874485, at *13. *See, e.g.*, *Zhu v. Wanrong Trading Corp.*, No. 18 Civ. 417, 2024 WL 4351357, at *13 (E.D.N.Y. Sept. 30, 2024) ($30,000 to two individuals, amounting to 10.7% of the total $280,000 settlement).

Lastly, the Service Payments are consideration for enhanced releases. *See* Ex. A (Agr.) § 5.3. Although broad releases are generally not permitted in FLSA cases, they may be consideration for a service award in a class or collective action settlement. *Bondi v. DeFalco*, No. 17 Civ. 5681, 2020 WL 2476006, at *6 (S.D.N.Y. May 13, 2020).

## VII. Class Counsel's Attorneys' Fees and Costs are Reasonable, Appropriate, and Warrant Approval at this Final Stage.

The Parties have agreed that Class Counsel's attorneys' fees will not exceed one-third of the gross settlement amount. One-third of the gross settlement amount is reasonable considering the over 300 hours Class Counsel spent on this case and will spend administering the settlement. Kaske Decl. ¶ 46. Class Counsel also seeks to be reimbursed for expenses incurred litigating this case, which presently total $3,171.49. Ex. H (Costs); *see also Cohan*, 2018 WL 4861391, at *6 (approving comparable expenses).

### A. The Requested Attorneys' Fee of One Third is Consistent with Local Norms.

The "trend" in this Circuit is to award fees using the percentage of the fund method in common-fund settlements like this. *See Campbell*, 2025 WL 1874485, at *8. Counsel's request

17

for a one-third contingency fee is consistent with the norms in this district. *Meo v. Lane Bryant, Inc.*, No. 18 Civ. 6360, 2020 WL 4047897 at *2 (E.D.N.Y. July 17, 2020) (collecting cases).

### B. The Lodestar Cross-Check Demonstrates that the Fee is Reasonable.

Second Circuit practice is to crosscheck the proposed fee with the lodestar. *See, e.g., Meo*, 2020 WL 4047897, at *2 (courts need not inspect every hour for the crosscheck). Courts often approve fees that are "two to six times the lodestar." *Cohan*, 2018 WL 4861391, at *5 (cleaned up; collecting cases). A multiplier under two "would be at the lower end of the range of multipliers awarded by courts [for complex cases] within the Second Circuit." *In re Canon U.S.A. Data Breach Litig.*, No. 20 Civ. 6239, 2024 WL 3650611, at *8 (E.D.N.Y. Aug. 5, 2024) (cleaned up).

In analyzing the reasonableness of the fee request, including any multiplier, courts consider (1) time and labor expended; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Cohan*, 2018 WL 4861391, at *2; *see also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) ("Fee awards in wage and hour cases should encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." (cleaned up)).

Here, Class Counsel's proposed fee amounts to $133,333.33, which was about 1.28 times their lodestar amount of $104,120 at the time of preliminary approval (November 2024) and 1.06 times their lodestar amount of $126,260 at the time of this motion. Kaske Decl. ¶ 48; Ex. F (Summary); *see also* ECF No. 75-8 (Prelim. Appr. Summary). This lodestar estimate is reasonable because Class Counsel used (a) contemporaneous time records, (b) billing judgment to account for overstaffing and duplicative work, and (c) reasonable hourly rates regularly submitted to courts in this district and paid by their clients. *See* Kaske Decl. ¶¶ 47-50; Ex. D (Costin Decl.). ¶¶ 5, 12-18; *see, e.g., Meo*, 2020 WL 4047897, at *3 (finding KM's lodestar estimate and requested fees to be

18

reasonable, after it reviewed "the billing rates for the respective attorneys" at KM and "carefully reviewed the biographical information on each of the attorneys, along with their professional affiliations, publications and prior cases."). Given the risks involved in litigating this matter (*see supra* Arg. §§ II(C)(4), (5), (7)), the complexity of this case (*see id*. § II(C)(1)), the quality of Class Counsel's representation (*see id*. §§ II(A), II(B)(3), II(B)(7)), and the public policy considerations, Plaintiffs submit that the fee is reasonable.

Although the hourly rates Class Counsel used are at the high-end of what some courts have stated are typical in this district (*see, e.g.*, *Gayle v. Harry's Nurses Registry, Inc*., No. 07 Civ. 4672, 2020 WL 4381809, at *3 (E.D.N.Y. July 31, 2020) (adopting report and recommendation of Kuo, Mag.), attorney's fees "increase in cost with inflation." *Almond v. PJ Far Rockaway, Inc.*, No. 15 Civ. 6792, 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018). Courts may reassess the rates previously awarded to account for this. *See, e.g.*, *Kreisler v. Second Ave. Diner Corp*., No. 10 Civ. 7592, 2013 WL 3965247, at *2 (S.D.N.Y. July 31, 2013) ("[B]ecause the cases cited were decided five to eight years ago, the Court finds that, in light of ordinary inflation, an hourly rate of $400 is reasonable."); *accord. Sajvin v. Singh Farm Corp*., No. 17 Civ. 4032, 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018) ("The passage of time warrants an increase of attorney's fees."), *adopted*, 2018 WL 4211300 (E.D.N.Y. Sept. 4, 2018). Notably, the cases placing attorneys' rates within the ranges stated in *Gayle*, for instance, date back over a decade. *See Gayle*, 2020 WL 4381809, at *3 ("The hourly range for experienced labor and employment lawyers practicing in this district has held steady at least since . . . 2013."). "[C]ourts in more recent [complex] cases have awarded rates that have ranged from approximately $375 to $630 for partners, $200 to $400 for associates, and $100 to $125 for paralegals." *Kurtz v. Kimberly-Clark Corp*., No. 14 Civ. 1142, 2024 WL 184375, at *14 (E.D.N.Y. Jan. 17, 2024) (cleaned up; collecting

cases), *vacated on other grounds*, 142 F.4th 112 (2d Cir. 2025).  As a result, it is reasonable for Class Counsel's lodestar estimate to use rates at the higher end of the bracket's set forth in *Gayle*, given the passage of time.  *See McLaughlin v. IDT Energy*, No. 14 Civ. 4107, 2018 WL 3642627, at *17, n. 23 (E.D.N.Y. July 30, 2018) (recommending rates above 2014 rates, including $550 for partners with 30-plus years of experience and $450 an hour for partners with ten-plus years).

### C. The Fee's Reasonableness is Highlighted by Alternative Calculation Methods.

Even if the Court determines that Class Counsel over relied on partners and experienced associates in accumulating 275 in attorney-only hours (*see* Kaske Decl. ¶ 48), using a modest rate of $300 an hour shows that the fee is reasonable.  *See, e.g.*, *Chodkowski v. Cnty. of Nassau*, No. 16 Civ. 5770, 2021 WL 3774187, at *6 (E.D.N.Y. Aug. 25, 2021) ("Using a blended hourly rate of $272.40 an hour to determine that one-third fee in FLSA settlement was reasonable."); *Toribio v. Abreu*, No. 18 Civ. 1827, 2018 WL 6363925, at *10 (E.D.N.Y. Nov. 15, 2018) (recommending a blended rate for two attorneys in FLSA default judgment award at $350 an hour), *adopted*, 2018 WL 6335779 (E.D.N.Y. Dec. 4, 2018).  That is, 275 hours at $300 an hour results in a lodestar of $82,500 and a multiplier of 1.6.  And, even reducing the hours to 250, for duplicative billing and the like, the resulting lodestar of $75,000 is only a 1.78 multiplier – before final approval.

### CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant this motion and enter the Proposed Order (Ex. J).

Dated: Melville, New York
        June 18, 2026

                                        Respectfully submitted,

                                        By:_____
                                              Garrett Kaske

                                        Troy L. Kessler

20

Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, NY 11747
Telephone: (631) 499-9100
tkessler@kesslermatura.com
gkaske@kesslermatura.com

Delmas A. Costin, Jr.
**THE LAW OFFICE OF
DELMAS A. COSTIN, JR., PC**
930 Grand Concourse, Suite 1B
Bronx, NY 10451
Telephone: (718) 618-0589
dacostin@dacostinlaw.com

*Attorneys for Plaintiffs and the
Settlement FLSA Collective and Class*

21